# No. 25-2027

UNITED STATES OF AMERICA,

*Respondent-Appellant,*

v.

MARA MORILLO,

*Petitioner-Appellee.*

On Appeal from the United States District Court for the
District of New Hampshire, No. 1:15-cr-174
The Hon. Stephen A. McAuliffe

## APPENDIX

ERIN CREEGAN
*United States Attorney*
*District of New Hampshire*

MATTHEW VICINANZO
*Assistant U.S. Attorney*

A. TYSEN DUVA
*Assistant Attorney General*
*Criminal Division*

JOSHUA A. GOLDFOOT
*Deputy Assistant Attorney General*

MICHAEL A. ROTKER
*Attorney*
*Criminal Division, Appellate Section*
*United States Department of Justice*
*950 Pennsylvania Ave NW, Suite 1264*
*Washington, DC 20530*
*michael.rotker@usdoj.gov*

# INDEX TO APPENDIX

**Pages**

1.    District Court Docket Sheet .................................................... 1-44

2.    Indictment (9/23/15) (Dkt. 1)................................................. 45-50

3.    Plea Agreement (4/19/16) (Dkt. 84)....................................... 51-64

4.    Transcript Of Change-of-Plea Hearing (5/11/16)
      (Dkt. 266).................................................................... 65-85

5.    Sentencing Memorandum (5/1/17) (Dkt. 189) .................... 86-100

6.    Transcript of Sentencing (5/11/17) (Dkt. 267)................. 101-136

7.    Judgment of Conviction (5/11/17) (Dkt. 207).................... 137-143

8.    Government's Opposition To Coram Nobis Petition
      (7/22/25) (Dkt. 269) .............................................. 144-152

9.    Transcript of Evidentiary Hearing (9/25/25)
      (Dkt. 285)........................................................ 153-205

10.   Notice Of Appeal (10/23/25) (Dkt. 282) .................................. 206

11.   Notice Of Intent To Issue Final Administrative
      Removal Order (8/23/21)............................................... 207

12.   Final Order of Removal (9/7/21) .............................................. 208

CERTIFICATE OF SERVICE

# 1:15cr174, USA v. Morillo et al.

US District Court Criminal Docket

United States District Court, New Hampshire

(Concord)

**This case was retrieved on 02/26/2026**

## Header

**Date Filed:** 09/23/2015
**Other Docket:** None

**Class Code:** Closed
**Closed:** 06/07/2017

## Participants

### Defendant

**Name**

Mara Morillo
Appeals court case number: 25-2027 First Circuit Court of Appeals
*TERMINATED: 05/11/2017*

**Attorneys**

Stephanie Mcclure
LEAD ATTORNEY;PRO HAC VICE;ATTORNEY TO BE NOTICED;
S. Mc Clure Law Office
101 Avenue of the Americas, 9th Flr
New York, NY 10013
USA
stephanie@nycnjlawyer.com
646-417-8380Designation: Retained

Jonathan R. Saxe
Federal Defender's Office
The Ralph Pill Building 22 Bridge St
Concord, NH 03301
USA
jonathan_saxe@fd.org
603 226-7360Designation: Public Defender or Community Defender Appointment

Sandra A. Kuhn
ATTORNEY TO BE NOTICED
Family Legal Services
141 Airport Rd
Concord, NH 03301
USA
skuhn@familylegalservices.org
603-225-1114Fax: 855-272-4589

## Charges

**Complaints:** none

**Pending:** 21 U.S.C. § 846 Conspiracy to Distribute, and Possess with Intent to Distribute, Controlled Substances in

## Disposition

Defendant to be imprisoned for a total term of 84 months with court recommendations; 3 years supervised release with

violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C)(1)

**Offense Level (Opening):** Felony

**Terminated:** none

**Case Assigned To:** Judge Steven J. McAuliffe

**Case Referred To:** US Magistrate Judge Andrea K Johnstone

mandatory, standard and special conditions; $100.00 Special Assessment; Fine waived. Defendant remanded to the custody of the U.S. Marshal.

## Defendant

**Name**

Franklyn Morillo
Appeals court case number: 17-1506 CCA
*TERMINATED: 05/08/2017*

**Attorneys**

John V. Apruzzese
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
Apruzzese Law Office
81 Washington St, Ste 206
Salem, MA 01970
USA
jvapruzzeseesq@aol.com
978 745-4232Designation: CJA Appointment

James D. Gleason
09/22/2016
Gleason Law Office PLLC
PO Box 4300
Henniker, NH 03242
USA
jim@gleasonlawpllc.com
603 428-4300Designation: CJA Appointment

John T. Pendleton
02/02/2016
Dwyer Donovan & Pendleton
461 Middle St
Portsmouth, NH 03801
USA
jpendleton@granitestatelawyers.com
603 433-7040Fax: 603 431-2130Designation: CJA Appointment

## Charges

**Complaints:** none

**Pending:** 21 U.S.C. § 846 Conspiracy to Distribute, and Possess with Intent to Distribute, Controlled Substances in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C)(1)

**Offense Level (Opening):** Felony

**Terminated:** none

**Case Assigned To:** Judge Steven J. McAuliffe

## Disposition

Defendant to be imprisoned for a total term of 168 months, with Court recommendations; 3 years Supervised Release with mandatory, standard and special conditions; $100.00 Special Assessment; Fine waived. Defendant remanded to the custody of the U.S. Marshal.

## Defendant

**Name**

Juan Rojas

*TERMINATED: 06/07/2017*

**Attorneys**

Robert S. Carey
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
10/28/2015
Orr & Reno PA One Eagle Square
PO Box 3550
Concord, NH 03302-3550
USA
rcarey@orr-reno.com
603 224-2381Designation: CJA Appointment

Scott F. Gleason
LEAD ATTORNEY;PRO HAC VICE;ATTORNEY TO BE
NOTICED;
Gleason Law Offices PC
163 Merrimack St
Haverhill, MA 01830
USA
scott@gleasonlawoffices.com
978 521-4044Designation: Retained

Thomas J. Gleason
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
Gleason Law Offices PC
163 Merrimack St
Haverhill, MA 01830
USA
tom@gleasonlawoffices.com
978 521-4044Designation: Retained

## Charges

**Complaints:** none

**Pending:** 21 U.S.C. § 846 Conspiracy to Distribute, and
Possess with Intent to Distribute, Controlled Substances in
violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C)(1)

**Offense Level (Opening):** Felony

**Terminated:** 18 U.S.C. § 924(c)(1)(A) - Possession of a
Firearm in Furtherance of a Drug Trafficking Crime(3)
**Offense Level (Terminated):** Felony

**Case Assigned To:** Judge Steven J. McAuliffe

## Disposition

JUDGMENT as to Juan Rojas (1), Count 1: Defendant to be
imprisoned for a total term of 72 months in this case and 15-
cr-174-03-SM, both terms to be served concurrently, with
court recommendations; 3 years Supervised Release in this
case and 15-cr-174-03-SM, both such terms to run
concurrently, with Mandatory, Standard and Special
Conditions. Total Special Assessment: $200.00 ($100.00
each case). Fine waived. Defendant remanded to the custody
of the U.S. Marshal.

Dismissed upon oral motion of the government.

## Defendant

**Name**

Justin Bartimus

*TERMINATED: 03/23/2017*

**Attorneys**

Bruce E. Kenna
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
Kenna & Sharkey
200 Prospect Street
Manchester, NH 03104

**App. 3**

USA
attorney@kennasharkey.com
603-622-3222Designation: CJA Appointment

| Charges | Disposition |
|---|---|

**Complaints:** none

**Pending:** 21 U.S.C. § 846 Conspiracy to Distribute, and Possess with Intent to Distribute, Controlled Substances in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C)(1)

Defendant to be imprisoned for a total term of 18 months, on each of Counts 1 and 2, to be served concurrently; Three years supervised release on each of Counts 1 and 2, to run concurrently, with mandatory, standard and special conditions; Fine waived. Defendant to self-surrender to the institution designated by BOP on or before 2:00 p.m. on 4/21/2017.

21 U.S.C. §§ 841(a)(1) and (b)(1)(C) - Distribution of a Controlled Substance.(2)

Defendant to be imprisoned for a total term of 18 months, on each of Counts 1 and 2, to be served concurrently; Three years supervised release on each of Counts 1 and 2, to run concurrently, with mandatory, standard and special conditions; Fine waived. Defendant to self-surrender to the institution designated by BOP on or before 2:00 p.m. on 4/21/2017.

**Offense Level (Opening):** Felony

**Terminated:** none

**Case Assigned To:** Judge Steven J. McAuliffe

## Defendant

**Name**
Jorge Medina

*TERMINATED: 03/23/2017*

**Attorneys**
Martin K. Leppo
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
Leppo & Leppo
130 Liberty St
Brockton, MA 02301
USA
kim2leppo@aol.com
508 580-3733Designation: Retained

Charles J. Keefe
10/28/2015
Wilson Bush & Keefe PC
378 Main St
Nashua, NH 03060
USA
keefe@wbdklaw.com
603 595-0007Fax: 603 595-0070Designation: CJA Appointment

Laurence B. Cote
ATTORNEY TO BE NOTICED
Cote Law Offices
745 Atlantic Ave, 8th Flr
Boston, MA 02111
USA
lbcesq@mac.com
857 205-7172

**App. 4**

## Charges

**Complaints:** none

**Pending:** 21 U.S.C. § 846 Conspiracy to Distribute, and Possess with Intent to Distribute, Controlled Substances in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C)(1)

**Offense Level (Opening):** Felony

**Terminated:** none

**Case Assigned To:** Judge Steven J. McAuliffe

## Disposition

Defendant to be imprisoned for a total term of 24 months with court recommendation; 3 years Supervised Release with Mandatory, Standard, and Special Conditions; $100.00 Special Assessment; Fine waived. Defendant remanded to the custody of the U.S. Marshal.

## Defendant

**Name**

Michael Lally

*TERMINATED: 04/27/2016*

**Attorneys**

Jaye L. Rancourt
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
Brennan Lenehan Iacopino & Hickey
99 Hanover Street
Manchester, NH 03101
USA
jaye_rancourt@fd.org
603 668-8300Designation: CJA Appointment

Richard Guerriero
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
Lothstein Guerriero
39 Central Sq, Ste 202
Keene, NH 03431
USA
richard@nhdefender.com
603 352-5000Designation: CJA Appointment

## Charges

**Complaints:** none

**Pending:** 21 U.S.C. § 846 Conspiracy to Distribute, and Possess with Intent to Distribute, Controlled Substances in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C)(1)

**Offense Level (Opening):** Felony

**Terminated:** none

**Case Assigned To:** Judge Joseph N. Laplante

## Disposition

Deferral of Prosecution. Defendant accepted into LASER PROGRAM 4/27/16. Successful graduate from LASER. Imprisonment: Time Served. Supervised release: 2 years with standard and special conditions. Special Assessment: $100.00 due immediately.

## U.S. Attorneys

Aaron G. Gingrande

LEAD ATTORNEY;ATTORNEY TO BE NOTICED

DOJ-USAO MA

53 Pleasant St.

**App. 5**

Concord, NH 02199

USA

aaron.gingrande@jacksonlewis.com

603-230-2504

Heather A Cherniske

LEAD ATTORNEY;ATTORNEY TO BE NOTICED

US Attorney's Office (NH)

James C Cleveland Federal Bldg 53 Pleasant St, 4th Flr

Concord, NH 03301

USA

heather.cherniske@usdoj.gov

603-230-2538

John J. Farley

LEAD ATTORNEY;ATTORNEY TO BE NOTICED

US Attorney's Office (NH)

James C Cleveland Federal Bldg 53 Pleasant St, 4th Flr

Concord, NH 03301

USA

john.farley@usdoj.gov

603 225-1552Fax: 602 225-1470Designation: Assistant US Attorney

Seth R. Aframe

LEAD ATTORNEY;ATTORNEY TO BE NOTICED

US Attorney's Office (NH)

James C Cleveland Federal Bldg 53 Pleasant St, 4th Flr

Concord, NH 03301

USA

seth.aframe@usdoj.gov

603 230-2532Designation: Assistant US Attorney

Charles L. Rombeau

08/18/2016

US Attorney's Office (NH)

James C Cleveland Federal Bldg 53 Pleasant St, 4th Flr

Concord, NH 03301

USA

charles.rombeau@usdoj.gov

603 225-1552Fax: 603 225-1470Designation: Retained

Matthew Vicinanzo

ATTORNEY TO BE NOTICED

US Attorney's Office (NH)

James C Cleveland Federal Bldg 53 Pleasant St, 4th Flr

Concord, NH 03301

USA

matt.vicinanzo@usdoj.gov

603-230-2574

## Proceedings

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| 1 | 09/23/2015 | INDICTMENT as to Mara Morillo (1) - Count 1; Franklyn Morillo (2) - Count 1; Juan Rojas (3) - Counts 1 and 3; Justin Bartimus (4) - Count 1 and 2; Jorge Medina (5) - Count 1; and Michael Lally (6) - Count 1. Original document available in clerks office.(jbw) (Entered: 09/25/2015) | |
| 3 | 09/23/2015 | MOTION to Seal Case at Level I until the defendants are taken into custody by USA as to Mara Morillo, Franklyn Morillo, Juan Rojas, Justin Bartimus, Jorge Medina and Michael Lally. (jbw) (Entered: 09/25/2015) | |
| | 09/23/2015 | ENDORSED ORDER granting 3 Motion to Seal Case at Level I as to Mara Morillo (1), Franklyn Morillo (2), Juan Rojas (3), Justin Bartimus (4), Jorge Medina (5), and Michael Lally (6). Text of Order: Granted. So Ordered by Magistrate Judge Andrea K. Johnstone. Sealed Document deadline 12/15/2015. (jbw) (Entered: 09/25/2015) | |
| 4 | 09/23/2015 | Praecipe for Warrant by USA as to Mara Morillo. (jbw) (Entered: 09/25/2015) | |
| 5 | 09/23/2015 | Praecipe for Warrant by USA as to Franklyn Morillo. (jbw) (Entered: 09/25/2015) | |
| 6 | 09/23/2015 | Praecipe for Warrant by USA as to Juan Rojas. (jbw) (Entered: 09/25/2015) | |
| 7 | 09/23/2015 | Praecipe for Warrant by USA as to Justin Bartimus. (jbw) (Entered: 09/25/2015) | |
| 8 | 09/23/2015 | Praecipe for Warrant by USA as to Jorge Medina. (jbw) (Entered: 09/25/2015) | |
| 9 | 09/23/2015 | Praecipe for Warrant by USA as to Michael Lally. (jbw) (Entered: 09/25/2015) | |
| | 09/25/2015 | Arrest WarranSt Issued as to Mara Morillo, Franklyn Morillo, Juan Rojas, Justin Bartimus, Jorge Medina, and Michael Lally. Original warrant and copies to US Marshal and US Probation.(jbw) (Entered: 09/25/2015) | |
| | 10/01/2015 | Arrest of Mara Morillo.(kad) (Entered: 10/01/2015) | |
| | 10/01/2015 | Arrest of Franklyn Morillo.(kad) (Entered: 10/01/2015) | |
| | 10/01/2015 | Arrest of Justin Bartimus.(kad) (Entered: 10/01/2015) | |
| | 10/01/2015 | Arrest of Jorge Medina.(kad) (Entered: 10/01/2015) | |
| | 10/01/2015 | Arrest of Michael Lally.(kad) (Entered: 10/01/2015) | |
| | 10/01/2015 | NOTICE to Attorneys of Record: Defendants Mara Morillo, Franklyn Morillo, Justin Bartimus, Jorge Medina and Michael Lally taken into custody. The case has been unsealed. All future | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | pleadings shall be filed in accordance with this district's Supplemental Rules for Electronic Case Filing. (kad) (Entered: 10/01/2015) | |
| | 10/01/2015 | NOTICE OF HEARING as to Mara Morillo. Interpreter Edwin Mosquera has been scheduled. Initial Appearance/Arraignment set for 10/1/2015 02:30 PM before Magistrate Judge Andrea K. Johnstone. (kad) (Entered: 10/01/2015) | |
| | 10/01/2015 | NOTICE OF HEARING as to Franklyn Morillo. Initial Appearance/Arraignment set for 10/1/2015 04:00 PM before Magistrate Judge Andrea K. Johnstone. (kad) (Entered: 10/01/2015) | |
| | 10/01/2015 | NOTICE OF HEARING as to Justin Bartimus. Initial Appearance/Arraignment set for 10/1/2015 02:45 PM before Magistrate Judge Andrea K. Johnstone. (kad) (Entered: 10/01/2015) | |
| | 10/01/2015 | NOTICE OF HEARING as to Jorge Medina. Initial Appearance/Arraignment set for 10/1/2015 03:00 PM before Magistrate Judge Andrea K. Johnstone. (kad) (Entered: 10/01/2015) | |
| | 10/01/2015 | NOTICE OF HEARING as to Michael Lally. Initial Appearance/Arraignment set for 10/1/2015 02:30 PM before Magistrate Judge Andrea K. Johnstone. (kad) (Entered: 10/01/2015) | |
| 10 | 10/01/2015 | MOTION to Appoint Counsel with Financial Declaration by Mara Morillo. (Attachments: # 1 Financial Declaration) Document available in clerks office. (kad) (Entered: 10/02/2015) | |
| | 10/01/2015 | ENDORSED ORDER approving 10 Motion to Appoint Counsel. Jonathan Saxe appointed in the case as to Mara Morillo (1). Text of Order: Request approved. Appoint counsel. So Ordered by Magistrate Judge Andrea K. Johnstone. (kad) (Entered: 10/02/2015) | |
| | 10/01/2015 | Minute Entry for proceedings held before Magistrate Judge Andrea K. Johnstone: INITIAL APPEARANCE and ARRAIGNMENT as to Mara Morillo (1) Count 1 held on 10/1/2015. Defendant does not require an interpreter. Interpreter excused. Defendant advised of rights & charges, waived reading of indictment, and pled not guilty. Court approves financial affidavit. Trial Date: 12/8/2015, 1-2 weeks. The government requests that the case be designated complex. Interpreter: Edwin Mosquera. (Tape #2:38) (Govt Atty: John Farley) (Defts Atty: Jonathan Saxe) (USP: Riaka McCormick)(Total Hearing Time: 6 min.) (kad) Modified on 10/2/2015 to add: "Defendant does not require an interpreter. Interpreter excused." (kad). (Entered: 10/02/2015) | |
| 11 | 10/01/2015 | ORDER OF TEMPORARY DETENTION as to Mara Morillo. Detention Hearing set for 10/5/2015 02:30 PM before Magistrate Judge Andrea K. Johnstone. So Ordered by Magistrate Judge Andrea K. Johnstone. (kad) (Entered: 10/02/2015) | |
| 12 | 10/01/2015 | MOTION to Appoint Counsel with Financial Declaration by Franklyn Morillo. (Attachments: # 1 Financial Declaration) Document available in clerks office. (kad) (Entered: 10/02/2015) | |
| | 10/01/2015 | ENDORSED ORDER approving 12 Motion to Appoint Counsel. John Pendleton appointed in the case as to Franklyn Morillo (2). Assignment accepted on 10/1/2015. Text of Order: Request approved. Appoint counsel. So Ordered by Magistrate Judge Andrea K. Johnstone. (kad) (Entered: 10/02/2015) | |
| | 10/01/2015 | Minute Entry for proceedings held before Magistrate Judge Andrea K. Johnstone: INITIAL APPEARANCE and ARRAIGNMENT as to Franklyn Morillo (2) Count 1 held on | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
|  |  | 10/1/2015. Defendant advised of rights & charges, waived reading of indictment, and pled not guilty. Court approves financial affidavit. Trial Date: 12/8/2015, 1-2 weeks. The government requests the case be designated complex. Upon motion of the government, with the assent of defendant, defendant ordered temporarily detained pending a detention hearing set for 10/7/2015 at 2:00 p.m. (Tape #4:18) (Govt Atty: John Farley) (Defts Atty: John Pendelton) (USP: Janice Benard)(Total Hearing Time: 5 min.)(CJA Time: 23 min.) (kad) (Entered: 10/02/2015) |  |
| 13 | 10/01/2015 | ORDER OF TEMPORARY DETENTION as to Franklyn Morillo. Detention Hearing set for 10/7/2015 02:00 PM before Magistrate Judge Andrea K. Johnstone. So Ordered by Magistrate Judge Andrea K. Johnstone. (kad) (Entered: 10/02/2015) |  |
| 14 | 10/01/2015 | MOTION to Appoint Counsel with Financial Declaration by Justin Bartimus. (Attachments: # 1 Financial Declaration) Document available in clerks office. (kad) (Entered: 10/02/2015) |  |
|  | 10/01/2015 | ENDORSED ORDER approving 14 Motion to Appoint Counsel. Bruce Kenna appointed in the case as to Justin Bartimus (4). Assignment accepted on 10/1/2015. Text of Order: Request approved. Appoint counsel. So Ordered by Magistrate Judge Andrea K. Johnstone. (kad) (Entered: 10/02/2015) |  |
|  | 10/01/2015 | Minute Entry for proceedings held before Magistrate Judge Andrea K. Johnstone: INITIAL APPEARANCE and ARRAIGNMENT as to Justin Bartimus (4) Count 1,2 held on 10/1/2015. Defendant advised of rights & charges, waived reading of indictment, and pled not guilty. Court approves financial affidavit. Trial Date: 12/8/2015, 1-2 weeks. Government requests the case be designated complex. Upon motion of the government, with the assent of defendant, defendant ordered temporarily detained pending a detention hearing set for 10/6/2015 at 11:30 a.m. (Tape #3:09) (Govt Atty: John Farley) (Defts Atty: Bruce Kenna) (USP: Riaka McCormick)(Total Hearing Time: 4 min.)(CJA Time: 28 min.) (kad) (Entered: 10/02/2015) |  |
| 15 | 10/01/2015 | ORDER OF TEMPORARY DETENTION as to Justin Bartimus. Detention Hearing set for 10/6/2015 11:30 AM before Magistrate Judge Andrea K. Johnstone. So Ordered by Magistrate Judge Andrea K. Johnstone. (kad) (Entered: 10/02/2015) |  |
| 16 | 10/01/2015 | MOTION to Appoint Counsel with Financial Declaration by Jorge Medina. (Attachments: # 1 Financial Declaration) Document available in clerks office. (kad) (Entered: 10/02/2015) |  |
|  | 10/01/2015 | ENDORSED ORDER approving 16 Motion to Appoint Counsel. Charles Keefe appointed in the case as to Jorge Medina (5). Assignment accepted on 10/1/2015. Text of Order: Request approved. Appoint counsel. So Ordered by Magistrate Judge Andrea K. Johnstone. (kad) (Entered: 10/02/2015) |  |
|  | 10/01/2015 | Minute Entry for proceedings held before Magistrate Judge Andrea K. Johnstone: INITIAL APPEARANCE and ARRAIGNMENT as to Jorge Medina (5) Count 1 held on 10/1/2015. Defendant advised of rights & charges, waived reading of indictment, and pled not guilty. Court approves financial affidavit. Trial Date: 12/8/2015, 1-2 weeks. The government requests that the case be designated complex. Upon motion of the defendant, with the assent of defendant, defendant ordered temporarily detained pending a detention hearing set for 10/6/2015 at 2:00 p.m. (Tape #3:17) (Govt Atty: John Farley) (Defts Atty: Charles Keefe) (USP: Riaka McCormick)(Total Hearing Time: 4 min.)(CJA Time: 21 min.) (kad) (Entered: 10/02/2015) |  |
| 17 | 10/01/2015 | ORDER OF TEMPORARY DETENTION as to Jorge Medina. |  |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | Detention Hearing set for 10/6/2015 02:00 PM before Magistrate Judge Andrea K. Johnstone. So Ordered by Magistrate Judge Andrea K. Johnstone. (kad) (Entered: 10/02/2015) | |
| 18 | 10/01/2015 | MOTION to Appoint Counsel with Financial Declaration by Michael Lally. (Attachments: # 1 Financial Declaration) Document available in clerks office. (kad) (Entered: 10/02/2015) | |
| | 10/01/2015 | ENDORSED ORDER approving 18 Motion to Appoint Counsel. Richard Guerriero appointed in the case as to Michael Lally (6). Assignment accepted on 10/1/2015.  Text of Order: Request approved. Appoint counsel. So Ordered by Magistrate Judge Andrea K. Johnstone. (kad) (Entered: 10/02/2015) | |
| | 10/01/2015 | Minute Entry for proceedings held before Magistrate Judge Andrea K. Johnstone: INITIAL APPEARANCE and ARRAIGNMENT as to Michael Lally (6) Count 1 held on 10/1/2015. Defendant advised of rights & charges, waived reading of indictment, and pled not guilty. Court approves financial affidavit. Attorney Richard Guerriero appointed to represent defendant. Trial Date: 12/8/2015, 1-2 weeks. The government requests that the case be designated complex. Upon motion of the government defendant ordered temporarily detained pending a detention hearing set for 10/5/2015 at 3:00 p.m. (Tape #2:54) (Govt Atty: John Farley) (Defts Atty: Theodore Lothstein) (USP: Riaka McCormick)(Total Hearing Time: 6 min.)(CJA Time: 30 min.) (kad) (Entered: 10/02/2015) | |
| 19 | 10/01/2015 | ORDER OF TEMPORARY DETENTION as to Michael Lally. Detention Hearing set for 10/5/2015 03:00 PM before Magistrate Judge Andrea K. Johnstone. So Ordered by Magistrate Judge Andrea K. Johnstone. (kad) (Entered: 10/02/2015) | |
| | 10/02/2015 | Corrective Entry to Minute Entry Initial Appearance and Arraignment. Entry corrected to add text "Defendant does not require an interpreter. Interpreter excused." (kad) (Entered: 10/02/2015) | |
| 20 | 10/02/2015 | Arrest Warrant Returned Executed on 10/1/2015 as to Mara Morillo.(jbw) (Entered: 10/02/2015) | |
| 21 | 10/02/2015 | Arrest Warrant Returned Executed on 10/1/2015 as to Franklyn Morillo.(jbw) (Entered: 10/02/2015) | |
| 22 | 10/02/2015 | Arrest Warrant Returned Executed on 10/1/2015 as to Justin Bartimus.(jbw) (Entered: 10/02/2015) | |
| 23 | 10/02/2015 | Arrest Warrant Returned Executed on 10/1/2015 as to Jorge Medina.(jbw) (Entered: 10/02/2015) | |
| 24 | 10/02/2015 | Arrest Warrant Returned Executed on 10/1/2015 as to Michael Lally.(jbw) (Entered: 10/02/2015) | |
| | 10/02/2015 | TRIAL NOTICE: Final Pretrial Conference set for 11/24/2015 03:00 PM before Judge Steven J. McAuliffe. JERS Statement due 12/1/2015. Jury Selection/Trial set for two week period beginning 12/8/2015 09:30 AM before Judge Steven J. McAuliffe. (jbw) (Entered: 10/02/2015) | |
| | 10/05/2015 | NOTICE OF HEARING as to Juan Rojas. Initial Appearance/Arraignment set for 10/8/2015 02:30 PM before Magistrate Judge Andrea K. Johnstone. (kad) (Entered: 10/05/2015) | |
| 25 | 10/05/2015 | Petition for Writ of Habeas Corpus ad Prosequendum as to Juan Rojas for October 8, 2015 @ 2:30 pm. for Arraignment (Farley, John) (Entered: 10/05/2015) | |
| | 10/05/2015 | Writ of Habeas Corpus ad Prosequendum Issued as to Juan Rojas for 10/8/2015.(jbw) (Entered: 10/05/2015) | |
| 26 | 10/05/2015 | Petition for Writ of Habeas Corpus ad Prosequendum as to Juan Rojas for October 8, 2015 @ 2:30 pm. for Arraignment (Farley, | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | John) (Entered: 10/05/2015) | |
| | 10/05/2015 | Writ of Habeas Corpus ad Prosequendum Issued as to Juan Rojas for 10/8/2015 - defendant to be transported by the Drug Enforcement Administration.(jbw) (Entered: 10/05/2015) | |
| | 10/05/2015 | Minute Entry for proceedings held before Magistrate Judge Andrea K. Johnstone: DETENTION HEARING as to Mara Morillo held on 10/5/2015. Defendant detained, order to issue. (Tape #2:59) (Govt Atty: John Farley) (Defts Atty: Jonathan Saxe) (USP: Jodi Gauvin)(Total Hearing Time: 30 min.) (kad) (Entered: 10/06/2015) | |
| | 10/05/2015 | Minute Entry for proceedings held before Magistrate Judge Andrea K. Johnstone: DETENTION HEARING as to Michael Lally held on 10/5/2015. Defendant detained, order to issue. (Tape #3:38) (Govt Atty: John Farley) (Defts Atty: Richard Guerriero) (USP: Jodi Gauvin)(Total Hearing Time: 28 min.)(CJA Time: 1 hr. 6 min.) (kad) (Entered: 10/06/2015) | |
| 27 | 10/06/2015 | ORDER OF DETENTION PENDING TRIAL as to Mara Morillo. So Ordered by Magistrate Judge Andrea K. Johnstone. (jbw) (Entered: 10/06/2015) | |
| 28 | 10/06/2015 | ORDER OF DETENTION PENDING TRIAL as to Michael Lally. So Ordered by Magistrate Judge Andrea K. Johnstone. (jbw) (Entered: 10/06/2015) | |
| | 10/06/2015 | Minute Entry for proceedings held before Magistrate Judge Andrea K. Johnstone: DETENTION HEARING as to Justin Bartimus held on 10/6/2015. Defendant detained, order to issue. (Tape #11:41) (Govt Atty: John Farley) (Defts Atty: Bruce Kenna) (USP: Scott Davidson)(Total Hearing Time: 31 min.)(CJA Time: 42 min.) (kad) (Entered: 10/06/2015) | |
| | 10/06/2015 | Minute Entry for proceedings held before Magistrate Judge Andrea K. Johnstone: DETENTION HEARING as to Jorge Medina held on 10/6/2015. Defendant detained, order to issue. (Tape #2:23) (Govt Atty: John Farley) (Defts Atty: Charles Keefe) (USP: Sean Buckley)(Total Hearing Time: 44 min.)(CJA Time: 1 hr. 7 min.) (kad) (Entered: 10/07/2015) | |
| 29 | 10/07/2015 | ORDER OF DETENTION PENDING TRIAL as to Jorge Medina. So Ordered by Magistrate Judge Andrea K. Johnstone. (jbw) (Entered: 10/07/2015) | |
| 30 | 10/07/2015 | ORDER OF DETENTION PENDING TRIAL as to Justin Bartimus. So Ordered by Magistrate Judge Andrea K. Johnstone. (jbw) (Entered: 10/07/2015) | |
| | 10/07/2015 | Minute Entry for proceedings held before Magistrate Judge Andrea K. Johnstone: DETENTION HEARING as to Franklyn Morillo held on 10/7/2015. Defendant stipulated to detention without prejudice. Defendant's request for a judicial recommendation to participate in the TC program approved. (Tape #2:14) (Govt Atty: John Farley) (Defts Atty: John Pendelton) (USP: Riaka McCormick)(Total Hearing Time: 4 min.)(CJA Time: 18 min.) (kad) (Entered: 10/13/2015) | |
| 34 | 10/07/2015 | STIPULATION TO DETENTION and WAIVER of Detention Hearing without prejudice as to Franklyn Morillo. To the extent consistent, and presuming the defendant qualifies for admission, the Court makes a recommendation that defendant be allowed entrance into the Therapeutic Community program at the Strafford County Department of Corrections. Approved by Magistrate Judge Andrea K. Johnstone. (kad) (Entered: 10/13/2015) | |
| 31 | 10/08/2015 | MOTION to Appoint Counsel with Financial Declaration by Juan Rojas. (Attachments: # 1 Financial Declaration) Document available in clerks office. (kad) (Entered: 10/09/2015) | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
|  | 10/08/2015 | ENDORSED ORDER approving 31 Motion to Appoint Counsel. Robert Carey appointed in the case as to Juan Rojas (3). Assignment accepted on 10/8/2015. Text of Order: Request approved. Appoint counsel. So Ordered by Magistrate Judge Andrea K. Johnstone. (kad) (Entered: 10/09/2015) |  |
|  | 10/08/2015 | Minute Entry for proceedings held before Magistrate Judge Andrea K. Johnstone: INITIAL APPEARANCE and ARRAIGNMENT as to Juan Rojas (3) Count 1,3 held on 10/8/2015. Interpreter sworn. Defendant advised of rights & charges, waived reading of indictment, and pled not guilty. Court approves financial affidavit. Defendant stipulated to detention without prejudice. Trial Date: 12/8/2015, 1-2 weeks. Interpreter: Edwin Mosquera. (Tape #2:47) (Govt Atty: John Farley) (Defts Atty: Robert Carey) (USP: Janice Benard)(Total Hearing Time: 9 min.)(CJA Time: 26 min.) (kad) (Entered: 10/09/2015) |  |
| 32 | 10/08/2015 | STIPULATION TO DETENTION and WAIVER of Detention Hearing without prejudice as to Juan Rojas. Approved by Magistrate Judge Andrea K. Johnstone. (kad) (Entered: 10/09/2015) |  |
| 33 | 10/09/2015 | MOTION Revoke & Modify Detention Order re 30 Order of Detention by Justin Bartimus. HEARING REQUESTED. Follow up on Objection on 10/26/2015. (Kenna, Bruce) (Entered: 10/09/2015) |  |
|  | 10/13/2015 | TRIAL NOTICE as to Juan Rojas: Final Pretrial Conference set for 11/24/2015 at 3:00 PM before Judge Steven J. McAuliffe. JERS Statement due 12/1/2015. Jury Selection/Trial set for two week period beginning 12/8/2015 09:30 AM before Judge Steven J. McAuliffe. (dae) (Entered: 10/13/2015) |  |
| 35 | 10/13/2015 | MOTION for the Revocation/Modification of Detention Order Pursuant to 18 U.S.C. sec 3145(B) by Jorge Medina. HEARING REQUESTED. Follow up on Objection on 10/30/2015. (Keefe, Charles) (Entered: 10/13/2015) |  |
| 36 | 10/13/2015 | Arrest Warrant Returned Executed on 10/8/15 as to Juan Rojas.(dae) (Entered: 10/13/2015) |  |
|  | 10/14/2015 | NOTICE OF Complex Case Status Conference as to Mara Morillo, Franklyn Morillo, Juan Rojas, Justin Bartimus, Jorge Medina, Michael Lally. Complex Case Status Conference set for 10/21/2015 10:00 AM before Judge Steven J. McAuliffe. (jbw) (Entered: 10/14/2015) |  |
|  | 10/14/2015 | ***Remark as to Mara Morillo, Franklyn Morillo, Juan Rojas, Justin Bartimus, Jorge Medina, Michael Lally: Atty Carey informed the court that the 10/21/2015 Complex Status Conf date was not good for him as he was in depositions. He will contact all parties to see if 10/22/2015 @ 4:00 p.m. will work and get back to me. (jbw) (Entered: 10/16/2015) |  |
|  | 10/16/2015 | RESCHEDULING NOTICE OF HEARING as to Mara Morillo, Franklyn Morillo, Juan Rojas, Justin Bartimus, Jorge Medina, Michael Lally. Complex Case Status Conference rescheduled for 10/22/2015 04:00 PM before Judge Steven J. McAuliffe. (jbw) (Entered: 10/16/2015) |  |
|  | 10/16/2015 | NOTICE OF HEARING as to Justin Bartimus. Motion Hearing set for 10/22/2015 02:30 PM before Judge Steven J. McAuliffe re: 33 Motion for Revocation/Modification of Detention Order Pursuant to 18 USC § 3145(B). (jbw) (Entered: 10/16/2015) |  |
|  | 10/16/2015 | NOTICE OF HEARING as to Jorge Medina. Motion Hearing set for 10/22/2015 03:00 PM before Judge Steven J. McAuliffe re: 35 Motion for Revocation/Modification of Detention Order Pursuant to 18 USC § 3145(B). (jbw) (Entered: 10/16/2015) |  |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| 39 | 10/19/2015 | OBJECTION by USA as to Justin Bartimus re 33 MOTION Revoke & Modify Detention Order re 30 Order of Detention . (Farley, John) (Entered: 10/19/2015) | |
| 40 | 10/19/2015 | OBJECTION by USA as to Jorge Medina re 35 MOTION for the Revocation/Modification of Detention Order Pursuant to 18 U.S.C. sec 3145(B) . (Farley, John) (Entered: 10/19/2015) | |
| 41 | 10/20/2015 | MOTION Revocation of Detention Order by Michael Lally. HEARING REQUESTED. Follow up on Objection on 11/6/2015. (Guerriero, Richard) (Entered: 10/20/2015) | |
| | 10/22/2015 | Minute Entry for proceedings held before Judge Steven J. McAuliffe: MOTION HEARING as to Justin Bartimus held on 10/22/2015 re 33 MOTION Revoke & Modify Detention Order re 30 Order of Detention. Oral argument heard. Court releases defendant on terms and conditions recommended by USPO Davidson. (Court Reporter: Susan Bateman) (Govt Atty: John Farley) (Defts Atty: Bruce Kenna) (USP: Scott Davidson)(Total Hearing Time: 13 minutes)(CJA Time: 29 minutes) (jbw) (Entered: 10/22/2015) | |
| | 10/22/2015 | Minute Entry for proceedings held before Judge Steven J. McAuliffe: STATUS CONFERENCE as to Mara Morillo, Franklyn Morillo, Juan Rojas, Justin Bartimus, Jorge Medina, Michael Lally held on 10/22/2015. Order to issue. (Govt Atty: John Farley) (Defts Atty: Charles Keefe, Jonathan Saxe, John Pendleton, Robert Carey, Bruce Kenna and Richard Guerriero)(Total Hearing Time: 10 minutes) (jbw) (Entered: 10/22/2015) | |
| | 10/22/2015 | Oral ORDER granting 33 MOTION Revoke & Modify Detention Order re 30 Order of Detention as to Justin Bartimus (4). So Ordered by Judge Steven J. McAuliffe. (jbw) (Entered: 10/23/2015) | |
| 43 | 10/22/2015 | ORDER Setting Conditions of Release as to Justin Bartimus. So Ordered by Judge Steven J. McAuliffe. (jbw) (Entered: 10/23/2015) | |
| | 10/22/2015 | Minute Entry for proceedings held before Judge Steven J. McAuliffe: MOTION HEARING as to Jorge Medina held on 10/22/2015 re 35 MOTION for the Revocation/Modification of Detention Order Pursuant to 18 U.S.C. sec 3145(B). Oral argument heard on defendant's motion. Court denies defendant's motion for the reasons set forth on the record (Court Reporter: Susan Bateman) (Govt Atty: John Farley) (Defts Atty: Charles Keefe) (USP: Scott Davidson)(Total Hearing Time: 20 minutes)(CJA Time: 39 minutes) (jbw) (Entered: 10/23/2015) | |
| | 10/22/2015 | Oral ORDER as to Jorge Medina denying 35 MOTION for the Revocation/Modification of Detention Order Pursuant to 18 U.S.C. sec 3145(B). So Ordered by Judge Steven J. McAuliffe. (jbw) (Entered: 10/23/2015) | |
| | 10/23/2015 | NOTICE OF HEARING ON MOTION as to Michael Lally re: 41 MOTION Revocation of Detention Order . Motion Hearing set for 10/27/2015 02:30 PM before Judge Steven J. McAuliffe. (jbw) (Entered: 10/23/2015) | |
| 44 | 10/23/2015 | Order re: Complex Status Conference pursuant to LR Crim P 10.2. Trial continued to May 17, 2016, in the interests of justice, and resetting all pertinent discovery and trial-related deadlines. So Ordered by Judge Steven J. McAuliffe. (jbw) (Entered: 10/23/2015) | |
| | 10/23/2015 | TRIAL NOTICE: Final Pretrial Conference reset for 5/3/2016 10:00 AM before Judge Steven J. McAuliffe. JERS Statement due 5/10/2016.Jury Selection/Trial reset for two week period beginning 5/17/2016 09:30 AM before Judge Steven J. McAuliffe. (jbw) (Entered: 10/23/2015) | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| 45 | 10/26/2015 | OBJECTION by USA as to Michael Lally re 41 MOTION Revocation of Detention Order . (Farley, John) (Entered: 10/26/2015) | |
| 46 | 10/26/2015 | Refiled: See Document No. 49. Assented to MOTION to Substitute Attorney by Jorge Medina. Attorney Laurence B. Cote added to party Jorge Medina(pty:dft). (Cote, Laurence) Modified on 11/12/2015 to add refiled text to docket entry. (jbw) (Entered: 10/26/2015) | |
| | 10/27/2015 | NOTICE of ECF Filing Error re: 46 Assented to MOTION to Substitute Attorney filed by Jorge Medina. Filer used wrong event. Filer shall refile using the Other Filings/Notices/Attorney Appearance - Defendant event and enter in docket text: Replaces document no. 46. If the filing party has any questions concerning this notice, please contact the judge's case manager at 603-225-1587. Notice of Compliance Deadline set for 11/6/2015. (jbw) (Entered: 10/27/2015) | |
| 47 | 10/27/2015 | NOTICE OF ATTORNEY APPEARANCE: Thomas J. Gleason appearing for Juan Rojas . Attorney Thomas J. Gleason added to party Juan Rojas(pty:dft).(Gleason, Thomas) (Entered: 10/27/2015) | |
| | 10/27/2015 | Minute Entry for proceedings held before Judge Steven J. McAuliffe: MOTION HEARING as to Michael Lally held on 10/27/2015 re 41 MOTION Revocation of Detention Order. Oral argument heard. Court releases defendant on terms and conditions recommended by SUSPO Gauvin for the reasons set forth on the record. (Court Reporter: Sandra Bailey) (Govt Atty: John Farley) (Defts Atty: Richard Guerriero) (USP: Jodi Gauvin)(Total Hearing Time: 14 minutes)(CJA Time: 20 minutes) (jbw) (Entered: 10/27/2015) | |
| 48 | 10/27/2015 | ORDER Setting Conditions of Release as to Michael Lally. So Ordered by Judge Steven J. McAuliffe. (jbw) (Entered: 10/27/2015) | |
| | 10/27/2015 | Oral Order granting 41 MOTION for Revocation of Detention Order and Request a Hearing as to Michael Lally (6). Text of Order: Granted. So Ordered by Judge Steven J. McAuliffe. (jbw) (Entered: 10/27/2015) | |
| 49 | 10/28/2015 | NOTICE OF ATTORNEY APPEARANCE: Laurence B. Cote appearing for Jorge Medina Replaces document no. 46. (Cote, Laurence) (Entered: 10/28/2015) | |
| 50 | 10/28/2015 | NOTICE of Attorney Withdrawal by Charles J. Keefe as to Jorge Medina. Attorney Charles J. Keefe added to party Jorge Medina(pty:dft), Attorney Charles J. Keefe added to party Jorge Medina(pty:dft), Attorney Charles J. Keefe added to party Jorge Medina(pty:dft).(Keefe, Charles) (Entered: 10/28/2015) | |
| 51 | 10/28/2015 | NOTICE of Attorney Withdrawal by Robert S. Carey as to Juan Rojas. Attorney Robert S. Carey added to party Juan Rojas(pty:dft), Attorney Robert S. Carey added to party Juan Rojas(pty:dft), Attorney Robert S. Carey added to party Juan Rojas(pty:dft).(Carey, Robert) (Entered: 10/28/2015) | |
| 52 | 10/30/2015 | COLLATERAL RECEIPT no. 420 as to Michael Lally for US Passport #441619195 issued to Michael Lally. (Miscellaneous Deadline set for 10/14/2016.) (jbw) (Entered: 10/30/2015) | |
| 53 | 11/05/2015 | WAIVER of Speedy Trial by Justin Bartimus. (jbw) (Entered: 11/05/2015) | |
| 54 | 11/12/2015 | MOTION FOR A CONFLICT OF INTEREST INQUIRY by USA as to Juan Rojas. Follow up on Objection on 11/30/2015. (Farley, John) (Entered: 11/12/2015) | |
| 55 | 11/18/2015 | MOTION for Martin K. Leppo to Appear Pro Hac Vice (Filing fee $ | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | 100, receipt number 0102-1301767.) by Jorge Medina. HEARING REQUESTED. Follow up on Objection on 12/7/2015. (Attachments: # 1 Exhibit (Affidavit) Affidavit Martin Leppo, # 2 Memorandum of Law) (Cote, Laurence) (Entered: 11/18/2015) | |
| 56 | 11/20/2015 | WAIVER of Speedy Trial by Michael Lally. (jbw) (Entered: 11/20/2015) | |
| 59 | 12/02/2015 | RESPONSE to Motion by USA as to Jorge Medina re 55 MOTION for Martin K. Leppo to Appear Pro Hac Vice  (Filing fee $ 100, receipt number 0102-1301767.) . (Farley, John) (Entered: 12/02/2015) | |
| 60 | 12/02/2015 | Assented to MOTION FOR A CONFLICT OF INTEREST INQUIRY  by USA as to Jorge Medina. (Farley, John) (Entered: 12/02/2015) | |
| | 12/02/2015 | ENDORSED ORDER granting 60 Assented to MOTION FOR A CONFLICT OF INTEREST INQUIRY  as to Jorge Medina (5). Text of Order: Granted. So Ordered by Judge Steven J. McAuliffe. (jbw) (Entered: 12/02/2015) | |
| | 12/02/2015 | NOTICE OF HEARING ON MOTION as to Jorge Medina re: 55 MOTION for Martin K. Leppo to Appear Pro Hac Vice. Motion Hearing set for 12/16/2015 10:00 AM before Judge Steven J. McAuliffe. (jbw) (Entered: 12/02/2015) | |
| 61 | 12/15/2015 | Emergency Assented to MOTION to Continue hearing/inquiry re Pro Hac Vice Admission  by Jorge Medina. (Cote, Laurence) (Entered: 12/15/2015) | |
| | 12/15/2015 | ENDORSED ORDER granting 61 Emergency Assented to MOTION to Continue hearing/inquiry re Pro Hac Vice Admission as to Jorge Medina (5). Text of Order: Granted. So Ordered by Judge Steven J. McAuliffe. (The hearing to be rescheduled to some time in the beginning of January, 2016.) (jbw) (Entered: 12/15/2015) | |
| | 12/29/2015 | NOTICE OF HEARING ON MOTION as to Jorge Medina re: 55 MOTION for Martin K. Leppo to Appear Pro Hac Vice . Motion Hearing set for 1/13/2016 10:00 AM before Judge Steven J. McAuliffe. (jbw) (Entered: 12/29/2015) | |
| | 01/13/2016 | Minute Entry for proceedings held before Judge Steven J. McAuliffe: Conflict of Interest Inquiry as to Jorge Medina held on 1/13/2016 re 55 MOTION for Martin K. Leppo to Appear Pro Hac Vice. Court's voir dire with counsel and defendant to determine if a third party is paying attorney fees. Defendant requests an extension of ten days to file Motions to Suppress - no objection by the government; granted by the court. Court grants Defendant's Motion for Atty Leppo to appear pro hac vice. (Court Reporter: Sandra Bailey) (Govt Atty: John Farley) (Defts Atty: Lawrence Cote, Martin K. Leppo)(Total Hearing Time: 30 minutes) (jbw) (Entered: 01/13/2016) | |
| | 01/13/2016 | Oral ORDER granting 55 Motion for Martin K. Leppo to Appear Pro Hac Vice (Attorney Martin K. Leppo for Jorge Medina added) as to Jorge Medina (5). So Ordered by Judge Steven J. McAuliffe. Persons filing electronically are strongly encouraged to complete the interactive training modules available on the courts website. To access these modules, click HERE.(jbw) (Entered: 01/13/2016) | |
| | 01/13/2016 | Oral MOTION to Extend time to file motions to suppress for ten days by Jorge Medina. (jbw) (Entered: 01/13/2016) | |
| | 01/13/2016 | Oral ORDER granting Defendant's Oral Motion to Extend Time to file motions to suppress for ten days as to Jorge Medina (5). Text of Order: Granted. So Ordered by Judge Steven J. McAuliffe. (jbw) (Entered: 01/13/2016) | |
| | 01/13/2016 | CJA 20 Payment Information as to Jorge Medina. Authorization | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | given to pay counsel for representation under the Criminal Justice Act in the following amount. Charles Keefe: $2,310.09. (mp) (Entered: 01/13/2016) | |
| 63 | 01/14/2016 | Assented to MOTION to Extend Time Deadline for Suppression Motions by Michael Lally. (Guerriero, Richard) (Entered: 01/14/2016) | |
| | 01/14/2016 | ENDORSED ORDER granting 63 Assented to Motion to Extend Deadline for Suppression Motions until 1/25/2016 as to Michael Lally (6). Text of Order: Granted. So Ordered by Judge Steven J. McAuliffe. (jbw) (Entered: 01/14/2016) | |
| 64 | 01/25/2016 | Emergency Assented to MOTION to Extend Time Motions to Suppress to January 27, 2016 for conventional filing by Jorge Medina. (Cote, Laurence) (Entered: 01/25/2016) | |
| 65 | 01/25/2016 | Assented to MOTION to Extend Time Deadline for Suppression Motions by Michael Lally. (Guerriero, Richard) (Entered: 01/25/2016) | |
| | 01/25/2016 | ENDORSED ORDER granting 64 Assented to Motion to Extend Time to file Motions to Suppress to January 27, 2016 for conventional filing as to Jorge Medina (5). Text of Order: Granted. So Ordered by Judge Steven J. McAuliffe. (jbw) (Entered: 01/25/2016) | |
| 68 | 01/27/2016 | Assented to MOTION to Exceed Page Limit by Jorge Medina. (Cote, Laurence) (Entered: 01/27/2016) | |
| | 01/27/2016 | ENDORSED ORDER granting 68 Assented to MOTION to Exceed Page Limit as to Jorge Medina (5). Text of Order: Granted. So Ordered by Magistrate Judge Andrea K. Johnstone. (jbw) (Entered: 01/27/2016) | |
| 70 | 01/27/2016 | MOTION to Suppress Title III Wiretaps & Request for a Franks Hearing at Level I by Jorge Medina. Served on 1/27/2016. HEARING REQUESTED. Follow up on Objection on 2/16/2016. (Attachments: # 1 Exhibit (Affidavit) of Attorney Martin Leppo in support of Motion to Suppress, # 2 Memorandum of Law, # 3 Exhibit A-1: Application for Interception of Wire and Electronic Communications, # 4 Exhibit A-2: Affidavit in Support of Application (pgs. 1-44), # 5 Exhibit A-2: Affidavit in Support of Application (pgs. 45-89), # 6 Exhibit A-3: Order for Interception of Wire/Electronic Communications, # 7 Exhibit B: DEA-6's) (jbw) Modified on 8/21/2017 to unseal document, there being no objection or response filed to 222 Order re: Disposition of Sealed Documents. (jbw). (Entered: 01/31/2016) | |
| 71 | 01/27/2016 | Assented to MOTION to File Defendant's Suppression Motions Under Seal at Level I re 70 SEALED MOTION to Suppress Title III Wiretaps & Request for a Franks Hearing and 72 SEALED MOTION to Suppress Photo Identification and in Court Identification & Request for Hearing at Level I by Jorge Medina. (jbw) Modified on 1/31/2016 to add 2nd suppression motion which was filed after motion to seal. (jbw). Modified on 8/21/2017 to unseal document, there being no objection or response filed to 222 Order re: Disposition of Sealed Documents. (jbw). (Entered: 01/31/2016) | |
| 72 | 01/29/2016 | MOTION to Suppress Photo Identification and in Court Identification & Request for Hearing at Level I by Jorge Medina. Served on 1/27/2016. HEARING REQUESTED. Follow up on Objection on 2/16/2016. (Attachments: # 1 Exhibit (Affidavit) of Attorney Martin Leppo in support of Motion to Suppress, # 2 Memorandum of Law, # 3 Exhibit A: DEA-6's, # 4 Exhibit B: Photos, # 5 Cover Letter) (jbw) Modified on 8/21/2017 to unseal document, there being no objection or response filed to 222 Order re: Disposition of Sealed Documents. (jbw). (Entered: 01/31/2016) | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| 69 | 01/30/2016 | Assented to MOTION for John Pendleton to Withdraw as Attorney and Appoint Replacement Counsel by Franklyn Morillo. (Pendleton, John) (Entered: 01/30/2016) | |
| | 02/01/2016 | ENDORSED ORDER granting 69 Assented to Motion for John Pendleton to Withdraw as Attorney as to Franklyn Morillo (2). Text of Order: Granted. So Ordered by Judge Steven J. McAuliffe. (jbw) (Entered: 02/01/2016) | |
| | 02/01/2016 | ENDORSED ORDER granting 71 Sealed Assented to MOTION to File Defendant's Suppression Motions Under Seal at Level I as to Jorge Medina (5). Text of Order: Granted. So Ordered by Judge Steven J. McAuliffe. (jbw) Modified on 8/25/2017 to unseal document, there being no objection or response filed to 222 Order re: Disposition of Sealed Documents. (jab) (Entered: 02/01/2016) | |
| | 02/02/2016 | NOTICE of Appointment of Counsel. Attorney James Gleason appointed in the case as to Franklyn Morillo. (kad) (Entered: 02/02/2016) | |
| 73 | 02/10/2016 | Assented to MOTION to Extend Time to Object/Respond to March 1, 2016 to Motions to Suppress by USA as to Jorge Medina. (Farley, John) (Entered: 02/10/2016) | |
| | 02/11/2016 | ENDORSED ORDER granting 73 Motion to Extend Time to Object/Respond to Motions to Suppress as to Jorge Medina (5). Text of Order: Granted. So Ordered by Judge Steven J. McAuliffe. Follow up on Objections on 3/1/2016. (dae) (Entered: 02/11/2016) | |
| 74 | 03/01/2016 | OBJECTION by USA as to Jorge Medina re 72 SEALED MOTION to Suppress Photo Identification and in Court Identification & Request for Hearing at Level I. (Attachments: # 1 Exhibit 1 - Haverhill (MA) PD Report, # 2 Exhibit 2 - DEA Report, # 3 Exhibit 3 - Photo Array)(jbw) Modified on 8/21/2017 to unseal document, there being no objection or response filed to 222 Order re: Disposition of Sealed Documents. (jbw). (Entered: 03/01/2016) | |
| 75 | 03/01/2016 | Assented to MOTION to Seal Document 74 Objection to Motion to Suppress Identification at Level Iby USA as to Jorge Medina. (jbw) Modified on 3/3/2016 to add "sealed" to the docket text. (jbw). Modified on 8/21/2017 to unseal document, there being no objection or response filed to 222 Order re: Disposition of Sealed Documents. (jbw). (Entered: 03/01/2016) | |
| 76 | 03/01/2016 | OBJECTION by USA as to Jorge Medina re 70 SEALED MOTION to Suppress Title III Wiretaps & Request for a Franks Hearing at Level I. (Attachments: # 1 Exhibit 1 - Affidavit in Support of Application, pgs. 1-30, # 2 Exhibit 1 - Affidavit in Support of Application, pgs. 31-60, # 3 Exhibit 1 - Affidavit in Support of Application, pgs 61-89)(jbw) Modified on 8/21/2017 to unseal document, there being no objection or response filed to 222 Order re: Disposition of Sealed Documents. (jbw). (Entered: 03/01/2016) | |
| 77 | 03/01/2016 | Assented to MOTION to Seal Document 76 Objection to Motion to Suppress Wiretaps at Level I by USA as to Jorge Medina. (jbw) Modified on 3/3/2016 to add "sealed" to docket text. (jbw). Modified on 8/21/2017 to unseal document, there being no objection or response filed to 222 Order re: Disposition of Sealed Documents. (jbw). (Entered: 03/01/2016) | |
| | 03/04/2016 | ENDORSED ORDER granting 75 Assented to Motion to Seal Document: 74 Objection to Motion, at Level I by USA as to Jorge Medina (5). Text of Order: Granted. So Ordered by Magistrate Judge Andrea K. Johnstone. Sealed Document deadline 3/30/2017. (jbw) Modified on 8/25/2017 to unseal document, there being no objection or response filed to 222 Order re: Disposition of Sealed Documents. (jab) (Entered: 03/04/2016) | |
| | 03/04/2016 | ENDORSED ORDER granting 77 Assented to Motion to Seal Document: 76 Objection to Motion, at Level I by USA as to Jorge | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | Medina (5). Text of Order: Granted. So Ordered by Magistrate Judge Andrea K. Johnstone. Sealed Document deadline 3/30/2017. (jbw) Modified on 8/25/2017 to unseal document, there being no objection or response filed to 222 Order re: Disposition of Sealed Documents. (jab) (Entered: 03/04/2016) | |
| 78 | 03/08/2016 | PLEA AGREEMENT as to Michael Lally. (jbw) (Entered: 03/09/2016) | |
| | 03/09/2016 | NOTICE OF HEARING as to Michael Lally. Change of Plea Hearing set for 3/22/2016 10:00 AM before Judge Steven J. McAuliffe. NOTICE: For cost containment purposes, the court prefers that the USPO conduct the PSR interview immediately following the COP hearing. Thus, prior to the COP hearing, a USPO may contact counsel for the purpose of scheduling the PSR interview after the COP hearing.(jbw) (Entered: 03/09/2016) | |
| | 03/22/2016 | Minute Entry for proceedings held before Judge Steven J. McAuliffe: CHANGE OF PLEA HEARING held on 3/22/2016 as to Michael Lally (6): Defendant sworn and advised of rights/charge. No objection to offer of proof. Defendant entered a plea of Guilty to Count 1. Court accepts guilty plea. Defendant continues to be released on bail conditions as previously set. (Court Reporter: Liza Dubois) (Govt Atty: John Farley) (Defts Atty: Richard Guerriero) (USP: Matt DiCarlo, Sean Buckley)(Total Hearing Time: 23 minutes)(CJA Time: 38 minutes) (jbw) (Entered: 03/22/2016) | |
| | 03/22/2016 | NOTICE OF HEARING as to Michael Lally. Sentencing set for 6/29/2016 10:00 AM before Judge Steven J. McAuliffe.The court has allotted 1 hour for the hearing. Please contact the court immediately if you anticipate the hearing will exceed the allotted time. Any motion seeking a departure or variance, as well as any sentencing memorandum, shall be filed 10 days prior to the sentencing date. Any response shall be filed 4 days prior to sentencing date.(jbw) (Entered: 03/22/2016) | |
| | 03/24/2016 | NOTICE OF HEARING ON MOTIONS as to Jorge Medina re: 72 (SEALED) MOTION to Suppress Photo Identification and in Court Identification & Request for Hearing at Level I, 70 (SEALED) MOTION to Suppress Title III Wiretaps & Request for a Franks Hearing at Level I. Motion Hearing set for 4/15/2016 10:00 AM before Judge Steven J. McAuliffe. (jbw) (Entered: 03/24/2016) | |
| | 03/26/2016 | RESCHEDULING NOTICE OF HEARING as to Mara Morillo, Franklyn Morillo, Juan Rojas, Justin Bartimus, Jorge Medina. Final Pretrial Conference rescheduled for 5/6/2016 01:30 PM before Judge Steven J. McAuliffe. (jbw) (Entered: 03/26/2016) | |
| 79 | 04/13/2016 | MOTION for Detention Hearing by Juan Rojas. Follow up on Objection on 5/2/2016. (Gleason, Thomas) Modified on 4/22/2016 to add "Hearing" to docket text. (jbw) (Entered: 04/13/2016) | |
| 80 | 04/14/2016 | FINAL WITNESS LIST by USA as to Jorge Medina.(Farley, John) (Entered: 04/14/2016) | |
| | 04/15/2016 | Minute Entry for proceedings held before Judge Steven J. McAuliffe: MOTION HEARING as to Jorge Medina held on 4/15/2016 re: 70 SEALED Motion to Suppress Title III Wiretaps and 72 SEALED MOTION to Suppress Photo Identification and in Court Identification. Court's colloquy with counsel re: whether or not hearing should be sealed; parties agree that the hearing does not need to be sealed. Government's Exhibits 1-6 are agreed upon (Atty Leppo does not agree that the voice in the recorded telephone call (Exh. 4) is that of the defendant). Government presents evidence. Closing arguments. Court denies both Motions to Suppress for the reasons set forth on the record. Witnesses Appearing: Joel Johnson. (Court Reporter: Liza Dubois) (Govt | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | Atty: John Farley) (Defts Atty: Lawrence Cote, Martin K. Leppo)(Total Hearing Time: 2 hrs 35 minutes) (jbw) (Entered: 04/15/2016) | |
| 81 | 04/15/2016 | EXHIBIT LIST For Suppression Hearing 4/15/2016 by USA as to Jorge Medina.(jbw) (Entered: 04/15/2016) | |
| 82 | 04/15/2016 | FINAL WITNESS LIST For Suppression Hearing 4/15/2016 by USA as to Jorge Medina.(jbw) (Entered: 04/15/2016) | |
| | 04/15/2016 | ORAL ORDER denying 70 SEALED MOTION to Suppress Title III Wiretaps for the reasons set forth on the record as to Jorge Medina (5). So Ordered by Judge Steven J. McAuliffe. (jbw) (Entered: 04/15/2016) | |
| | 04/15/2016 | ORAL ORDER denying 72 SEALED MOTION to Suppress Photo Identification and in Court Identification for the reasons set forth on the record as to Jorge Medina (5). So Ordered by Judge Steven J. McAuliffe. (jbw) (Entered: 04/15/2016) | |
| | 04/18/2016 | NOTICE OF HEARING as to Justin Bartimus. Change of Plea Hearing set for 5/4/2016 02:00 PM before Judge Steven J. McAuliffe. NOTICE: For cost containment purposes, the court prefers that the USPO conduct the PSR interview immediately following the COP hearing. Thus, prior to the COP hearing, a USPO may contact counsel for the purpose of scheduling the PSR interview after the COP hearing.(jbw) (Entered: 04/18/2016) | |
| 84 | 04/19/2016 | PLEA AGREEMENT as to Mara Morillo. (jbw) (Entered: 04/20/2016) | |
| | 04/20/2016 | NOTICE OF HEARING as to Mara Morillo. Change of Plea Hearing set for 5/11/2016 10:00 AM before Judge Steven J. McAuliffe. NOTICE: For cost containment purposes, the court prefers that the USPO conduct the PSR interview immediately following the COP hearing. Thus, prior to the COP hearing, a USPO may contact counsel for the purpose of scheduling the PSR interview after the COP hearing.(jbw) (Entered: 04/20/2016) | |
| 85 | 04/22/2016 | RESPONSE to Motion by USA as to Juan Rojas re 79 MOTION for Detention . (Farley, John) (Entered: 04/22/2016) | |
| | 04/25/2016 | NOTICE OF HEARING as to Juan Rojas. Detention Hearing set for 4/27/2016 11:30 AM before Magistrate Judge Andrea K. Johnstone. (kad) (Entered: 04/25/2016) | |
| | 04/25/2016 | NOTICE OF HEARING ON MOTION as to Juan Rojas re: 54 MOTION FOR A CONFLICT OF INTEREST INQUIRY. Motion Hearing set for 4/27/2016 11:30 AM before Magistrate Judge Andrea K. Johnstone. (kad) (Entered: 04/25/2016) | |
| 86 | 04/25/2016 | Petition for Writ of Habeas Corpus ad Prosequendum as to Juan Rojas for April 27, 2016 at 11:30 a.m.. Attorney Charles L. Rombeau added to party USA(pty:pla).(Rombeau, Charles) (Entered: 04/25/2016) | |
| | 04/25/2016 | Writ of Habeas Corpus ad Prosequendum Issued as to Juan Rojas for 4/27/2016.(jbw) (Entered: 04/25/2016) | |
| 87 | 04/26/2016 | Assented to MOTION to Continue Trial to 9/20/16 (Waiver of Speedy Trial to be filed conventionally) by Franklyn Morillo. Waiver of Speedy Trial due 5/6/2016. (Gleason, James) (Entered: 04/26/2016) | |
| 88 | 04/26/2016 | Assented to MOTION for Scott F. Gleason to Appear Pro Hac Vice (Filing fee $ 100, receipt number 0102-1359096.) by Juan Rojas. (Gleason, Thomas) (Entered: 04/26/2016) | |
| 89 | 04/26/2016 | ADDENDUM re: 88 Assented to MOTION for Scott F. Gleason to Appear Pro Hac Vice (Filing fee $ 100, receipt number 0102-1359096.) by Juan Rojas. (Gleason, Thomas) (Entered: 04/26/2016) | |
| 90 | 04/26/2016 | AFFIDAVIT re 88 Assented to MOTION for Scott F. Gleason to | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | Appear Pro Hac Vice (Filing fee $ 100, receipt number 0102-1359096.) filed by Juan Rojas (Gleason, Thomas) (Entered: 04/26/2016) | |
| | 04/26/2016 | NOTICE of ECF Filing Error re: 90 Affidavit filed by Juan Rojas. Consistent with the Supplemental Rules for Electronic Case Filing, affidavits prepared in the context of the litigation shall be filed in electronically converted PDF format and shall contain a /s/ signature for both the signator and the notary/jurat. NO ACTION REQUIRED - FOR INFORMATIONAL PURPOSES ONLY AND MERELY INTENDED TO EDUCATE ALL PARTIES IN THE CASE. If the filing party has any questions concerning this notice, please contact the judge's case manager at 603-225-1587. (jbw) (Entered: 04/26/2016) | |
| 91 | 04/26/2016 | ORDER granting 87 Assented to Motion to Continue Trial to 9/20/2016 in the interest of justice as to Franklyn Morillo (2). So Ordered by Judge Steven J. McAuliffe. (Final Pretrial Conference reset for 9/7/2016 10:00 AM before Judge Steven J. McAuliffe. JERS Statement due 9/13/2016. Jury Selection/Trial set for two week period beginning 9/20/2016 09:30 AM before Judge Steven J. McAuliffe. Waiver of Speedy Trial due 5/6/2016.). (jbw) (Entered: 04/27/2016) | |
| | 04/26/2016 | ENDORSED ORDER granting 88 Assented to Motion for Scott F. Gleason to Appear Pro Hac Vice as to Juan Rojas (3). Text of Order: Granted. Local counsel shall comply with all obligations required by L.R. 83.2(b) absent order of the court. So Ordered by Magistrate Judge Andrea K. Johnstone. Persons filing electronically are strongly encouraged to complete the interactive training modules available on the courts website. To access these modules, click HERE.(jbw) (Entered: 04/27/2016) | |
| 92 | 04/27/2016 | PLEA AGREEMENT as to Justin Bartimus. (jbw) (Entered: 04/27/2016) | |
| | 04/27/2016 | Minute Entry for proceedings held before Magistrate Judge Andrea K. Johnstone: MOTION HEARING as to Juan Rojas held on 4/27/2016 re 54 MOTION FOR A CONFLICT OF INTEREST INQUIRY . Interpreter: Edwin Mosquera. Defendant advised the court that he does not require an interpreter. Interpreter excused. Based on defendant's counsel's representations regarding the third party payment of fees the government is satisfied that no conflict of interest exists. The court finds there is no basis to move forward. (Court Reporter: Susan Bateman) (Govt Atty: John Farley) (Defts Atty: Scott Gleason, Thomas Gleason) (USP: Sean Buckley)(Total Hearing Time: 6 min.) (kad) (Entered: 04/28/2016) | |
| | 04/27/2016 | Minute Entry for proceedings held before Magistrate Judge Andrea K. Johnstone: DETENTION HEARING as to Juan Rojas held on 4/27/2016. Interpreter: Edwin Mosquera. Defendant advised he does not require an interpreter. Interpreter excused. Defendant detained, order to issue. (Court Reporter: Susan Bateman) (Govt Atty: John Farley) (Defts Atty: Scott Gleason, Thomas Gleason) (USP: Sean Buckley)(Total Hearing Time: 1:06) (kad) (Entered: 04/28/2016) | |
| 95 | 04/27/2016 | NOTICE of Acceptance into LASER Docket Program as to Michael Lally. (cmp) (Entered: 05/04/2016) | |
| | 04/27/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: In Chambers LASER Conference as to Michael Lally held on 4/27/2016 (Govt Atty: Don Feith, AUSA) (Defts Atty: Richard Gurierro, Esq., Jaye Rancourt, Esq.) (USP: Tim Brown & (Service Provider))(Total Hearing Time: 8 minutes)(CJA Time: 20 minutes) (cmp) (Entered: 05/04/2016) | |
| | 04/27/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | Laplante: PRELIMINARY LASER HEARING as to Michael Lally held on 4/27/2016. (Govt Atty: Don Feith, AUSA) (Defts Atty: Richard Guerriero, Esq., Jaye Rancourt, Esq.) (USP: Tim Brown, Kevin Lavigne & (Service Provider))(Total Hearing Time: 8 minutes)(CJA Time: 16 minutes) (cmp) (Entered: 05/04/2016) | |
| | 04/27/2016 | Case as to Michael Lally reassigned to Chief Judge Joseph N. Laplante. Reason for Reassignment: Michael Lally reassigned to Chief Judge Laplante for LASER Docket. (cmp) (Entered: 05/04/2016) | |
| 97 | 04/27/2016 | MOTION to Appoint LASER Counsel with Financial Declaration by Michael Lally. (Attachments: # 1 Financial Declaration) Document available in clerks office. (cmp) (Entered: 05/04/2016) | |
| | 04/27/2016 | ADMINISTRATIVE CLOSURE as to Michael Lally (6) Counts closed: Count 1. DEFENDANT ACCEPTED INTO LASER PROGRAM. PROSECUTION DEFERRED. (cmp) (Entered: 05/13/2016) | |
| 93 | 04/28/2016 | ORDER OF DETENTION PENDING TRIAL as to Juan Rojas. So Ordered by Magistrate Judge Andrea K. Johnstone. (jbw) (Entered: 04/28/2016) | |
| 94 | 05/02/2016 | WAIVER of Speedy Trial by Franklyn Morillo. (jbw) (Entered: 05/02/2016) | |
| | 05/04/2016 | Minute Entry for proceedings held before Judge Steven J. McAuliffe: CHANGE OF PLEA HEARING held on 5/4/2016 as to Justin Bartimus (4): Defendant sworn and advised of rights/charge(s). No objection to offer of proof. Defendant enters guilty pleas to Counts 1 and 2. Court accepts guilty pleas. Bail continued as previously set. (Court Reporter: Liza Dubois) (Govt Atty: John Farley) (Defts Atty: Bruce Kenna) (USP: Jennafer McNutt)(Total Hearing Time: 23 minutes)(CJA Time: 32 minutes) (jbw) (Entered: 05/04/2016) | |
| | 05/04/2016 | NOTICE OF HEARING as to Justin Bartimus. Sentencing set for 8/30/2016 11:00 AM before Judge Steven J. McAuliffe.The court has allotted 1 hour for the hearing. Please contact the court immediately if you anticipate the hearing will exceed the allotted time. Any motion seeking a departure or variance, as well as any sentencing memorandum, shall be filed 10 days prior to the sentencing date. Any response shall be filed 4 days prior to sentencing date.(jbw) (Entered: 05/04/2016) | |
| | 05/04/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: In Chambers LASER Conference as to Michael Lally held on 5/4/2016 (Govt Atty: Seth Aframe, AUSA) (Defts Atty: Jaye Rancourt, Esq.) (USP: Tim Brown, Kevin Lavigne & (Service Provider))(Total Hearing Time: 9 minutes)(CJA Time: 30 minutes) (jb) (Entered: 05/05/2016) | |
| | 05/04/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: PRELIMINARY LASER HEARING as to Michael Lally held on 5/4/2016. (Govt Atty: Seth Aframe, AUSA) (Defts Atty: Jaye Rancourt, Esq.) (USP: Tim Brown, Kevin Lavigne & (Service Provider))(Total Hearing Time: 11 minutes)(CJA Time: 39 minutes) (jb) (Entered: 05/05/2016) | |
| | 05/05/2016 | ENDORSED ORDER granting 97 Motion to Appoint Counsel. Jaye Rancourt appointed in the case as to Michael Lally (6). Assignment accepted on 5/5/2016. Appointment Nunc Pro Tunc to 4/27/2016. Text of Order: Granted. So Ordered by Chief Judge Joseph N. Laplante. (kad) (Entered: 05/09/2016) | |
| | 05/11/2016 | Minute Entry for proceedings held before Judge Steven J. McAuliffe: CHANGE OF PLEA HEARING held on 5/11/2016 as to Mara Morillo (1): Defendant sworn and advised of rights/charge. No objection to offer of proof. Defendant enters a guilty plea to | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | Count 1. Court accepts guilty plea. Court defers acceptance of binding stipulation as to base offense level until time of sentencing. Defendant continues to be detained pending sentencing. (Court Reporter: Liza Dubois) (Govt Atty: John Farley) (Defts Atty: Jonathan Saxe) (USP: Jennafer McNutt)(Total Hearing Time: 22 minutes) (jbw) (Entered: 05/11/2016) | |
| | 05/11/2016 | NOTICE OF HEARING as to Mara Morillo. Sentencing set for 8/30/2016 10:00 AM before Judge Steven J. McAuliffe.The court has allotted 1 hour for the hearing. Please contact the court immediately if you anticipate the hearing will exceed the allotted time. Any motion seeking a departure or variance, as well as any sentencing memorandum, shall be filed 10 days prior to the sentencing date. Any response shall be filed 4 days prior to sentencing date.(jbw) (Entered: 05/11/2016) | |
| | 05/11/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: In Chambers LASER Conference as to Michael Lally held on 5/11/2016 (Govt Atty: Seth Aframe, AUSA) (Defts Atty: Jaye Rancourt, Esq. for Kevin Sharkey, Esq.) (USP: Kevin Lavigne, Tim Brown & Service Provider)(Total Hearing Time: 10 minutes)(CJA Time: 14 minutes) (cmp) (Entered: 05/18/2016) | |
| | 05/11/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: PRELIMINARY LASER HEARING as to Michael Lally held on 5/11/2016. (Govt Atty: Seth Aframe, AUSA) (Defts Atty: Jaye Rancourt, Esq. for Kevin Sharkey, Esq.) (USP: Kevin Lavigne, Tim Brown & Service Provider)(Total Hearing Time: 9 minutes)(CJA Time: 11 minutes) (cmp) (Entered: 05/18/2016) | |
| 99 | 05/12/2016 | Assented to MOTION to Modify Conditions of Release  by Michael Lally. (Rancourt, Jaye) (Entered: 05/12/2016) | |
| | 05/13/2016 | ENDORSED ORDER granting 99 Motion to Modify Conditions of Release as to Michael Lally (6). Text of Order: Granted. So Ordered by Chief Judge Joseph N. Laplante. (cmp) (Entered: 05/13/2016) | |
| | 05/17/2016 | ENDORSED ORDER granting 65 Assented to Motion to Extend Time as to Michael Lally (6). Text of Order: Granted. So Ordered by Judge Steven J. McAuliffe. (jbw) (Entered: 05/17/2016) | |
| | 05/18/2016 | Minute Entry for proceedings held on behalf of Chief Judge Joseph N. Laplante: In Chambers LASER Conference (& Session) as to Michael Lally held on 5/18/2016 (Govt Atty: Seth Aframe, AUSA, Helen Fitzgibbon, AUSA) (Defts Atty: Jaye Rancourt, Esq.) (USP: Tim Brown, Kevin Lavigne & (Service Provider))(Total Hearing Time: 30 minutes)(CJA Time: 1 hour) (cmp) Modified on 5/18/2016 to add'on behalf of' (cmp). (Entered: 05/18/2016) | |
| | 05/25/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: In Chambers LASER Conference as to Michael Lally held on 5/25/2016 (Govt Atty: Robert Veiga, AUSA) (Defts Atty: Jaye Rancourt, Esq.) (USP: Tim Brown, Dan Gildea & (Service Provider)(Total Hearing Time: 12 minutes)(CJA Time: 28 minutes) (cmp) (Entered: 06/07/2016) | |
| | 05/25/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: PRELIMINARY LASER HEARING as to Michael Lally held on 5/25/2016. (Govt Atty: Robert Veiga, AUSA) (Defts Atty: Jaye Rancourt, Esq.) (USP: Tim Brown, Dan Gildea & (Service Provider)(Total Hearing Time: 12 minutes)(CJA Time: 28 minutes) (cmp) (Entered: 06/07/2016) | |
| | 06/01/2016 | Minute Entry for proceedings held on behalf of Chief Judge Joseph N. Laplante: In Chambers LASER Conference(& Session) as to Michael Lally held on 6/1/2016 (Govt Atty: Seth Aframe, AUSA) (Defts Atty: Jaye Rancourt, Esq.) (USP: Tim Brown & (Service Provider))(Total Hearing Time: 20 minutes)(CJA Time: 30 | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | minutes) (cmp) (Entered: 06/07/2016) | |
| | 06/08/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: In Chambers LASER Conference as to Michael Lally held on 6/8/2016 (Govt Atty: Helen Fitzgibbon, AUSA) (Defts Atty: Jaye Rancourt, Esq.) (USP: Kevin Lavigne & Service Provider)(Total Hearing Time: 13 minutes)(CJA Time: 1 hour) (cmp) (Entered: 06/08/2016) | |
| | 06/08/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: PRELIMINARY LASER HEARING as to Michael Lally held on 6/8/2016. PARTICIPANT RECEIVED PHASE I COMPLETION CERTIFICATE. (Govt Atty: Helen Fitzgibbon, AUSA) (Defts Atty: Jaye Rancourt, Esq.) (USP: Kevin Lavigne & Service Provider)(Total Hearing Time: 13 minutes)(CJA Time: 45 minutes) (cmp) (Entered: 06/08/2016) | |
| | 06/15/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: In Chambers LASER Conference as to Michael Lally held on 6/15/2016 (Govt Atty: Seth Aframe, AUSA) (Defts Atty: Jaye Rancourt, Esq.) (USP: Dan Gildea, USPO + Service Provider)(Total Hearing Time: 11 minutes)(CJA Time: 40 minutes) (cmp) (Entered: 06/15/2016) | |
| | 06/15/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: PRELIMINARY LASER HEARING as to Michael Lally held on 6/15/2016. (Govt Atty: Seth Aframe, AUSA) (Defts Atty: Jaye Rancourt, Esq.) (USP: Dan Gildea, USPO and Service Provider)(Total Hearing Time: 11 minutes)(CJA Time: 30 minutes) (cmp) (Entered: 06/15/2016) | |
| | 06/22/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: In Chambers LASER Conference as to Michael Lally held on 6/22/2016 (Govt Atty: Seth Aframe, AUSA) (Defts Atty: Jaye Rancourt, Esq.) (USP: Kevin Lavigne, Tim Brown & Service Provider)(Total Hearing Time: 14 minutes)(CJA Time: 70 minutes) (cmp) (Entered: 06/29/2016) | |
| | 06/22/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: PRELIMINARY LASER HEARING as to Michael Lally held on 6/22/2016. (Govt Atty: Seth Aframe, AUSA) (Defts Atty: Jaye Rancourt, Esq.) (USP: Kevin Lavigne, Tim Brown & Service Provider)(Total Hearing Time: 12 minutes)(CJA Time: 45 minutes) (cmp) (Entered: 06/29/2016) | |
| | 07/06/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: In Chambers LASER Conference as to Michael Lally held on 7/6/2016 (Govt Atty: Helen Fitzgibbon, AUSA) (Defts Atty: Jaye Rancourt, Esq.) (USP: Kevin Lavigne, Tim Brown & Service Provider)(Total Hearing Time: 13 minutes)(CJA Time: 70 minutes) (cmp) (Entered: 07/12/2016) | |
| | 07/06/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: PRELIMINARY LASER HEARING as to Michael Lally held on 7/6/2016. (Govt Atty: Helen Fitzgibbon, AUSA) (Defts Atty: Jaye Rancourt, Esq.) (USP: Kevin Lavigne, Tim Brown & Service Provider)(Total Hearing Time: 12 minutes)(CJA Time: 50 minutes) (cmp) (Entered: 07/12/2016) | |
| | 07/13/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: In Chambers LASER Conference as to Michael Lally held on 7/13/2016 (Govt Atty: Seth Aframe, AUSA) (Defts Atty: Jeff Levin, AFD (for Jaye Rancourt)) (USP: Tim Brown & (Service Provider)(Total Hearing Time: 15 minutes) (cmp) (Entered: 07/14/2016) | |
| | 07/13/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: PRELIMINARY LASER HEARING as to Michael Lally held on 7/13/2016. (Govt Atty: Seth Aframe, AUSA) (Defts Atty: | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | Jeff Levin, AFD (for Jaye Rancourt) (USP: Tim Brown & (Service Provider))(Total Hearing Time: 13 minutes) (cmp) (Entered: 07/14/2016) | |
| | 07/20/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: In Chambers LASER Conference as to Michael Lally held on 7/20/2016 (Govt Atty: Seth Aframe, AUSA) (Defts Atty: Jaye Rancourt, Esq.) (USP: Tim Brown & (Service Provider))(Total Hearing Time: 17 minutes)(CJA Time: 65 minutes) (cmp) (Entered: 07/20/2016) | |
| | 07/20/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: PRELIMINARY LASER HEARING as to Michael Lally held on 7/20/2016. (Govt Atty: Seth Aframe, AUSA) (Defts Atty: Jaye Rancourt, Esq.) (USP: Tim Brown & (Service Provider))(Total Hearing Time: 14 minutes)(CJA Time: 45 minutes) (cmp) (Entered: 07/20/2016) | |
| 112 | 07/26/2016 | Assented to MOTION to Continue Sentencing Hearing by Justin Bartimus. (Kenna, Bruce) (Entered: 07/26/2016) | |
| | 07/27/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: In Chambers LASER Conference as to Michael Lally held on 7/27/2016 (Govt Atty: Seth Aframe,AUSA) (Defts Atty: Jaye Rancourt, Esq.) (USP: Kevin Lavigne, Tim Brown & Service Provider)(Total Hearing Time: 13 minutes)(CJA Time: 46 minutes) (cmp) (Entered: 08/09/2016) | |
| | 07/27/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: PRELIMINARY LASER HEARING as to Michael Lally held on 7/27/2016. Mr. Lally received Phase II Completion certificate. (Govt Atty: Seth Aframe, AUSA) (Defts Atty: Jaye Rancourt, Esq.) (USP: Kevin Lavigne, Tim Brown & Service Provider)(Total Hearing Time: 18 minutes)(CJA Time: 35 minutes) (cmp) (Entered: 08/09/2016) | |
| | 07/29/2016 | ENDORSED ORDER granting 112 Assented to MOTION to Continue Sentencing Hearing as to Justin Bartimus (4). Text of Order: Granted. So Ordered by Judge Steven J. McAuliffe. Sentencing reset for 11/1/2016 10:00 AM before Judge Steven J. McAuliffe.The court has allotted 1 hour for the hearing. Please contact the court immediately if you anticipate the hearing will exceed the allotted time. Any motion seeking a departure or variance, as well as any sentencing memorandum, shall be filed 10 days prior to the sentencing date. Any response shall be filed 4 days prior to sentencing date.(jbw) (Entered: 07/29/2016) | |
| | 08/10/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: In Chambers LASER Conference as to Michael Lally held on 8/10/2016 (Govt Atty: Seth Aframe, AUSA) (Defts Atty: Jaye Rancourt, Esq.) (USP: Kevin Lavigne, Tim Brown & Service Provider)(Total Hearing Time: 8 minutes)(CJA Time: 50 minutes) (cmp) (Entered: 08/23/2016) | |
| | 08/10/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: PRELIMINARY LASER HEARING as to Michael Lally held on 8/10/2016. (Govt Atty: Seth Aframe, AUSA) (Defts Atty: Jaye Rancourt, Esq.) (USP: Kevin Lavigne, Tim Brown & Service Provider)(Total Hearing Time: 10 minutes)(CJA Time: 45 minutes) (cmp) (Entered: 08/23/2016) | |
| | 08/12/2016 | NOTICE OF HEARING as to Mara Morillo. Sentencing reset for 11/3/2016 at 10:00 AM (from 8/30/16) before Judge Steven J. McAuliffe.The court has allotted 1 hour for the hearing. Please contact the court immediately if you anticipate the hearing will exceed the allotted time. Any motion seeking a departure or variance, as well as any sentencing memorandum, shall be filed 10 days prior to the sentencing date. Any response shall be filed 4 | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | days prior to sentencing date.(dae) (Entered: 08/12/2016) | |
| 117 | 08/18/2016 | NOTICE of Attorney Withdrawal by Charles L. Rombeau as to Mara Morillo, Franklyn Morillo, Juan Rojas, Justin Bartimus, Jorge Medina, Michael Lally. (Rombeau, Charles) (Entered: 08/18/2016) | |
| | 08/24/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: In Chambers LASER Conference as to Michael Lally held on 8/24/2016 (Govt Atty: Helen Fitzgibbon) (Defts Atty: Jaye Rancourt) (USP: Kevin Lavigne, Daniel Gildea & Service Provider)(Total Hearing Time: 13 minutes)(CJA Time: 1 hour) (jb) Modified on 8/25/2016 to add service provider (jb). (Entered: 08/25/2016) | |
| | 08/24/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: PRELIMINARY LASER HEARING as to Michael Lally held on 8/24/2016. (Govt Atty: Helen Fitzgibbon) (Defts Atty: Jaye Rancourt) (USP: Kevin Lavigne, Daniel Gildea & Service Provider)(Total Hearing Time: 12 minutes)(CJA Time: 40 minutes) (jb) Modified on 8/25/2016 to add service provider (jb). (Entered: 08/25/2016) | |
| 118 | 08/25/2016 | Assented to MOTION to Continue Trial (Waiver of Speedy Trial to be filed conventionally) by Franklyn Morillo. Waiver of Speedy Trial due 9/6/2016. (Gleason, James) (Entered: 08/25/2016) | |
| 119 | 08/29/2016 | WAIVER of Speedy Trial by Franklyn Morillo. (jbw) (Entered: 08/29/2016) | |
| 120 | 08/29/2016 | ORDER granting 118 Assented to Motion to Continue Trial in the interest of justice as to Franklyn Morillo (2), Juan Rojas (3) and Jorge Medina (5). So Ordered by Judge Steven J. McAuliffe.(Final Pretrial Conference reset for 10/26/2016 02:00 PM before Judge Steven J. McAuliffe. JERS Statement due 11/1/2016. Jury Selection/Trial set for two week period beginning 11/8/2016 09:30 AM before Judge Steven J. McAuliffe.) (jbw) (Entered: 08/30/2016) | |
| 121 | 08/31/2016 | MOTION to Appoint New Counsel (for the Replacement of Retained Counsel for Good Cause) by Franklyn Morillo. Follow up on Objection on 9/19/2016. Document available in clerks office. (jbw) (Entered: 08/31/2016) | |
| | 09/07/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: PRELIMINARY LASER HEARING as to Michael Lally held on 9/7/2016. (Govt Atty: Seth Aframe, AUSA) (Defts Atty: Jaye Rancourt, Esq.) (USP: Tim Brown, USPO (& Service Provider))(Total Hearing Time: 14 minutes)(CJA Time: 50 minutes) (cmp) (Entered: 09/13/2016) | |
| | 09/07/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: PRELIMINARY LASER HEARING as to Michael Lally held on 9/7/2016. (Govt Atty: Seth Aframe, AUSA) (Defts Atty: Jaye Rancourt, Esq.) (USP: Tim Brown & (Service Provider))(Total Hearing Time: 12)(CJA Time: 40 minutes) (cmp) (Entered: 09/13/2016) | |
| | 09/08/2016 | NOTICE OF HEARING ON MOTION as to Franklyn Morillo re: 121 MOTION to Appoint Counsel. Motion Hearing set for 9/21/2016 10:00 AM before Judge Steven J. McAuliffe. (jbw) (Entered: 09/08/2016) | |
| | 09/21/2016 | Minute Entry for proceedings held before Judge Steven J. McAuliffe: MOTION HEARING as to Franklyn Morillo held on 9/21/2016 re 121 MOTION to Appoint Counsel. Court excuses AUSA Farley from this hearing. Court's colloquy with the defendant and Atty Gleason. Court grants the defendant's motion, and the clerk's office will appoint new counsel for Mr. Morillo. (Court Reporter: Liza Dubois) (Govt Atty: John Farley) (Defts Atty: James Gleason)(Total Hearing Time: 16 minutes)(CJA Time: 26 | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | minutes) (jbw) (Entered: 09/21/2016) | |
| | 09/21/2016 | ENDORSED ORDER granting 121 Motion to Appoint New Counsel. John Apruzzese appointed as substitute counsel for James Gleason in the case. Assignment accepted on 9/22/2016. Counsel withdrawing from the case shall submit a completed CJA-20 through the CJA eVoucher system within 45 days from the date of substitution. The voucher will be held until the disposition of the case. Should counsel have grounds to justify payment prior to the final disposition of the case, such a request should be made as part of the CJA-20 voucher submission in eVoucher as to Franklyn Morillo (2). Text of Order: Granted after hearing. So Ordered by Judge Steven J. McAuliffe. (kad) (Entered: 09/22/2016) | |
| | 09/21/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: In Chambers LASER Conference as to Michael Lally held on 9/21/2016 (Govt Atty: Helen Fitzgibbon) (Defts Atty: Jaye Rancourt) (USP: Tim Brown & Service Provider)(Total Hearing Time: 11 minutes)(CJA Time: 54 minutes) (jb) (Entered: 09/23/2016) | |
| | 09/21/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: PRELIMINARY LASER HEARING as to Michael Lally held on 9/21/2016. (Govt Atty: Helen Fitzgibbon) (Defts Atty: Jaye Rancourt) (USP: Tim Brown & Service Provider)(Total Hearing Time: 9 minutes)(CJA Time: 26 minutes) (jb) (Entered: 09/23/2016) | |
| | 10/05/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: In Chambers LASER Conference as to Michael Lally held on 10/5/2016 (Govt Atty: Nick Abramson) (Defts Atty: Jaye Rancourt) (USP: Tim Brown, Kevin Lavigne & Service Provider)(Total Hearing Time: 9 minutes)(CJA Time: 27 minutes) (jb) (Entered: 10/06/2016) | |
| | 10/05/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: PRELIMINARY LASER HEARING as to Michael Lally held on 10/5/2016. (Govt Atty: Nick Abramson) (Defts Atty: Jaye Rancourt) (USP: Tim Brown, Kevin Lavigne & Service Provider)(Total Hearing Time: 9 minutes)(CJA Time: 17 minutes) (jb) (Entered: 10/06/2016) | |
| 127 | 10/11/2016 | Assented to MOTION to Excuse Counsel by Jorge Medina. (Leppo, Martin) (Entered: 10/11/2016) | |
| | 10/12/2016 | NOTICE OF HEARING as to Jorge Medina. Change of Plea Hearing set for 10/13/2016 11:30 AM before Judge Steven J. McAuliffe. NOTICE: For cost containment purposes, the court prefers that the USPO conduct the PSR interview immediately following the COP hearing. Thus, prior to the COP hearing, a USPO may contact counsel for the purpose of scheduling the PSR interview after the COP hearing.(jbw) (Entered: 10/12/2016) | |
| | 10/12/2016 | ENDORSED ORDER granting 127 Assented to MOTION to Excuse Local Counsel from Change of Plea Hearing as to Jorge Medina (5). Text of Order: Granted. So Ordered by Judge Steven J. McAuliffe. (jbw) (Entered: 10/12/2016) | |
| | 10/13/2016 | Cancelled: Change of Plea Hearing 10/13/2016 as to Jorge Medina. Hearing to be rescheduled. (jbw) (Entered: 10/13/2016) | |
| 128 | 10/13/2016 | Assented to MOTION to Continue Sentencing Hearing by Justin Bartimus. (Kenna, Bruce) (Entered: 10/13/2016) | |
| 129 | 10/17/2016 | PLEA AGREEMENT as to Franklyn Morillo. (jbw) (Entered: 10/17/2016) | |
| | 10/17/2016 | NOTICE OF HEARING as to Franklyn Morillo. Change of Plea Hearing set for 10/28/2016 10:00 AM before Judge Steven J. McAuliffe. NOTICE: For cost containment purposes, the court prefers that the USPO conduct the PSR interview immediately | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
|   |      | following the COP hearing. Thus, prior to the COP hearing, a USPO may contact counsel for the purpose of scheduling the PSR interview after the COP hearing.(jbw) (Entered: 10/17/2016) |  |
|   | 10/17/2016 | ENDORSED ORDER granting 128 Assented to MOTION to Continue Sentencing Hearing as to Justin Bartimus (4). Text of Order: Granted. So Ordered by Judge Steven J. McAuliffe. Sentencing reset for 1/4/2017 11:00 AM before Judge Steven J. McAuliffe.The court has allotted 1 hour for the hearing. Please contact the court immediately if you anticipate the hearing will exceed the allotted time. Any motion seeking a departure or variance, as well as any sentencing memorandum, shall be filed 10 days prior to the sentencing date. Any response shall be filed 4 days prior to sentencing date.(jbw) (Entered: 10/18/2016) |  |
| 135 | 10/25/2016 | REFILED. See Corrected Filing, doc. no. 136. MOTION to Continue pretrial and trial by Juan Rojas. Follow up on Objection on 11/14/2016. (Gleason, Thomas) Modified on 11/3/2016 to add refiled language to docket text. (jbw). (Entered: 10/25/2016) |  |
| 136 | 10/25/2016 | Assented to MOTION to Continue pretrial and trial by Juan Rojas. (Gleason, Thomas) (Entered: 10/25/2016) |  |
|   | 10/25/2016 | NOTICE of ECF Filing Error re: 136 Assented to MOTION to Continue pretrial and trial filed by Juan Rojas. Filer used the wrong event. Filer should have used motion/to continue trial. NO ACTION REQUIRED - FOR INFORMATIONAL PURPOSES ONLY AND MERELY INTENDED TO EDUCATE ALL PARTIES IN THE CASE. If the filing party has any questions concerning this notice, please contact the judge's case manager at 603-225-1587. (jbw) (Entered: 10/25/2016) |  |
| 137 | 10/25/2016 | ORDER granting 136 Assented to MOTION to Continue pretrial and trial in the interests of justice as to Juan Rojas (3). So Ordered by Judge Steven J. McAuliffe. (Final Pretrial Conference reset for 1/5/2017 10:00 AM before Judge Steven J. McAuliffe. JERS Statement due 1/11/2017. Jury Selection/Trial reset for two week period beginning 1/18/2017 09:30 AM before Judge Steven J. McAuliffe.) (jbw) (Entered: 10/28/2016) |  |
|   | 10/26/2016 | RESCHEDULING NOTICE OF HEARING as to Mara Morillo. Sentencing rescheduled for 1/11/2017 02:00 PM before Judge Steven J. McAuliffe.The court has allotted 1 hour for the hearing. Please contact the court immediately if you anticipate the hearing will exceed the allotted time. Any motion seeking a departure or variance, as well as any sentencing memorandum, shall be filed 10 days prior to the sentencing date. Any response shall be filed 4 days prior to sentencing date.(jbw) (Entered: 10/26/2016) |  |
|   | 10/27/2016 | RESCHEDULING NOTICE OF HEARING as to Courtroom Location only as to Franklyn Morillo. Change of Plea Hearing set for 10/28/2016 10:00 AM before Judge Steven J. McAuliffe in Courtroom No. 2. (jbw) (Entered: 10/27/2016) |  |
|   | 10/28/2016 | Minute Entry for proceedings held before Judge Steven J. McAuliffe: CHANGE OF PLEA HEARING held on 10/28/2016 as to Franklyn Morillo (2): Defendant sworn and advised of rights/charge. No objection to offer of proof w/clarification as set forth on the record. Defendant enters guilty plea to Count 1. Court accepts guilty plea. Court defers acceptance the stipulation as to the applicable Base Offense Level until the time of sentencing. Defendant continues to be detained pending sentencing. (Court Reporter: Susan Bateman) (Govt Atty: John Farley) (Defts Atty: John Appruzzese) (USP: Jennafer McNutt)(Total Hearing Time: 23 minutes)(CJA Time: 33 minutes) (jbw) (Entered: 10/28/2016) |  |
|   | 10/28/2016 | NOTICE OF HEARING as to Franklyn Morillo. Sentencing set for 3/7/2017 02:00 PM before Judge Steven J. McAuliffe.The court |  |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | has allotted 1 hour for the hearing. Please contact the court immediately if you anticipate the hearing will exceed the allotted time. Any motion seeking a departure or variance, as well as any sentencing memorandum, shall be filed 10 days prior to the sentencing date. Any response shall be filed 4 days prior to sentencing date.(jbw) (Entered: 10/28/2016) | |
| 138 | 10/28/2016 | ACKNOWLEDGMENT AND WAIVER OF RIGHTS re: Guilty Plea by Jorge Medina. (jbw) (Entered: 10/28/2016) | |
| | 10/28/2016 | NOTICE OF HEARING as to Jorge Medina. Change of Plea Hearing set for 11/1/2016 03:00 PM before Judge Steven J. McAuliffe. NOTICE: For cost containment purposes, the court prefers that the USPO conduct the PSR interview immediately following the COP hearing. Thus, prior to the COP hearing, a USPO may contact counsel for the purpose of scheduling the PSR interview after the COP hearing.(jbw) (Entered: 10/28/2016) | |
| 139 | 10/31/2016 | Assented to MOTION to Excuse Counsel by Jorge Medina. (Leppo, Martin) (Entered: 10/31/2016) | |
| | 10/31/2016 | ENDORSED ORDER granting 139 Assented to MOTION to Excuse Counsel as to Jorge Medina (5). Text of Order: Granted. So Ordered by Judge Steven J. McAuliffe. (jbw) (Entered: 10/31/2016) | |
| | 11/01/2016 | Minute Entry for proceedings held before Judge Steven J. McAuliffe: CHANGE OF PLEA HEARING held on 11/1/2016 as to Jorge Medina (5): Defendant sworn and advised of rights/charge(s). No objection to offer of proof. Defendant entered a guilty plea to Count 1. Court accepts guilty plea. Defendant continues to be detained pending sentencing. (Court Reporter: Susan Bateman) (Govt Atty: John Farley) (Defts Atty: Martin Leppo) (USP: Jennafer McNutt)(Total Hearing Time: 18 minutes) (jbw) (Entered: 11/01/2016) | |
| | 11/01/2016 | NOTICE OF HEARING as to Jorge Medina. Sentencing set for 3/8/2017 10:00 AM before Judge Steven J. McAuliffe.The court has allotted 1 hour for the hearing. Please contact the court immediately if you anticipate the hearing will exceed the allotted time. Any motion seeking a departure or variance, as well as any sentencing memorandum, shall be filed 10 days prior to the sentencing date. Any response shall be filed 4 days prior to sentencing date.(jbw) (Entered: 11/01/2016) | |
| | 11/16/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: In Chambers LASER Conference as to Michael Lally held on 11/16/2016 (Govt Atty: Seth Aframe) (Defts Atty: Jeffrey Levin) (USP: Tim Brown & Service Provider)(Total Hearing Time: 6 minutes) (jb) (Entered: 11/22/2016) | |
| | 11/16/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: PRELIMINARY LASER HEARING as to Michael Lally held on 11/16/2016. (Govt Atty: Seth Aframe) (Defts Atty: Jeffrey Levin) (USP: Tim Brown)(Total Hearing Time: 11 minutes) (jb) (Entered: 11/22/2016) | |
| | 11/30/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: In Chambers LASER Conference as to Michael Lally held on 11/30/2016 (Govt Atty: Nick Abramson, AUSA) (Defts Atty: Jaye Rancourt, Esq.) (USP: Kevin Lavigne, Tim Brown, Steven Seero & Service Provider)(Total Hearing Time: 15 minutes)(CJA Time: 25 minutes) (cmp) (Entered: 12/08/2016) | |
| | 11/30/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: PRELIMINARY LASER HEARING as to Michael Lally held on 11/30/2016. RECEIVED PHASE III Completion Certificate. (Govt Atty: Nick Abramson, AUSA) (Defts Atty: Jaye Rancourt, Esq.) (USP: Kevin Lavigne, Tim Brown, Steven Seero & Service | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | Provider)(Total Hearing Time: 10 minutes)(CJA Time: 17 minutes) (cmp) (Entered: 12/08/2016) | |
| | 12/20/2016 | TRIAL REMINDER: There is an upcoming trial in this case. Any Motion to Continue shall be filed 1 week before the Final Pretrial Conference, which is scheduled for 1/5/2017 @ 10:00 a.m. (jbw) (Entered: 12/20/2016) | |
| | 12/22/2016 | TRIAL REMINDER re: United States v. Juan Rojas: There is an upcoming trial in this case. Any Motion to Continue shall be filed 1 week before the Final Pretrial Conference, which is scheduled for 1/5/2017. (jbw) (Entered: 12/22/2016) | |
| | 12/22/2016 | RESCHEDULING NOTICE OF HEARING as to Juan Rojas. Final Pretrial Conference reset for 1/5/2017  at 02:30 PM before Judge Steven J. McAuliffe. (jbw) (Entered: 12/22/2016) | |
| 148 | 12/27/2016 | Assented to MOTION Motion to Consolidate  by USA as to Juan Rojas. (Farley, John) (Entered: 12/27/2016) | |
| | 12/28/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: In Chambers LASER Conference as to Michael Lally held on 12/28/2016 (Govt Atty: Shane Kelbley, AUSA) (Defts Atty: Jaye Rancourt, Esq.) (USP: Tim Brown, Steven Seero & (Service Provider))(Total Hearing Time: 11 minutes)(CJA Time: 1 hour) (cmp) (Entered: 01/04/2017) | |
| | 12/28/2016 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: PRELIMINARY LASER HEARING as to Michael Lally held on 12/28/2016. (Govt Atty: Shane Kelbley, AUSA) (Defts Atty: Jaye Rancourt, Esq.) (USP: Tim Brown, Steven Seero & (Service Provider))(Total Hearing Time: 12 minutes)(CJA Time: 50 minutes) (cmp) (Entered: 01/04/2017) | |
| | 12/29/2016 | ENDORSED ORDER granting 148 Assented to MOTION Motion to Consolidate this case as to Defendant Juan Rojas (03) with 15-cr-173-01-SM, USA v. Juan Rojas . Text of Order: Granted. So Ordered by Judge Steven J. McAuliffe. (jbw) (Entered: 12/29/2016) | |
| | 12/29/2016 | NOTICE OF HEARING as to Justin Bartimus. Sentencing rescheduled for 3/9/2017 10:00 AM before Judge Steven J. McAuliffe.The court has allotted 1 hour for the hearing. Please contact the court immediately if you anticipate the hearing will exceed the allotted time. Any motion seeking a departure or variance, as well as any sentencing memorandum, shall be filed 10 days prior to the sentencing date. Any response shall be filed 4 days prior to sentencing date.(jbw) (Entered: 12/29/2016) | |
| | 12/30/2016 | NOTICE OF HEARING as to Juan Rojas. Interpreter Jean Pepper has been scheduled. Change of Plea Hearing set for 1/5/2017 02:00 PM before Judge Steven J. McAuliffe. NOTICE: For cost containment purposes, the court prefers that the USPO conduct the PSR interview immediately following the COP hearing. Thus, prior to the COP hearing, a USPO may contact counsel for the purpose of scheduling the PSR interview after the COP hearing.(jbw) (Entered: 12/30/2016) | |
| 150 | 01/03/2017 | PLEA AGREEMENT as to Juan Rojas. (ko) (Entered: 01/03/2017) | |
| 151 | 01/04/2017 | Petition for Writ of Habeas Corpus ad Prosequendum as to Juan Rojas for January 5, 2017 @ 2:00 pm. for Change of Plea (Farley, John) (Entered: 01/04/2017) | |
| | 01/04/2017 | Writ of Habeas Corpus ad Prosequendum Issued as to Juan Rojas for 1/5/2017(jbw) (Entered: 01/04/2017) | |
| | 01/05/2017 | Minute Entry for proceedings held before Judge Steven J. McAuliffe: CHANGE OF PLEA HEARING held on 1/5/2017 as to Juan Rojas (3): Atty Gleason informs the court that the defendant does not need an interpreter. Court's colloquy with defendant re: | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | the need for an interpreter. Court has the interpreter stay for the hearing on a stand-by basis. Defendant sworn and advised of rights/charge(s). No objection to offer of proof. Defendant enters a guilty plea to Count 1. Court accepts guilty plea. Court defers acceptance of the stipulation to a specific sentencing and the dismissal of charges until time of sentencing. Defendant continues to be detained pending sentencing. Interpreter: Jean Pepper. (Court Reporter: Liza Dubois) (Govt Atty: John Farley) (Defts Atty: Scott Gleason) (USP: Jennafer McNutt)(Total Hearing Time: 27 minutes) (jbw) (Entered: 01/05/2017) | |
| | 01/05/2017 | NOTICE OF HEARING as to Juan Rojas. Sentencing set for 5/10/2017 11:00 AM before Judge Steven J. McAuliffe.The court has allotted 1 hour for the hearing. Please contact the court immediately if you anticipate the hearing will exceed the allotted time. Any motion seeking a departure or variance, as well as any sentencing memorandum, shall be filed 10 days prior to the sentencing date. Any response shall be filed 4 days prior to sentencing date.(jbw) (Entered: 01/05/2017) | |
| | 01/10/2017 | RESCHEDULING NOTICE OF HEARING as to Mara Morillo. Sentencing rescheduled for 5/11/2017 10:00 AM before Judge Steven J. McAuliffe.The court has allotted 1 hour for the hearing. Please contact the court immediately if you anticipate the hearing will exceed the allotted time. Any motion seeking a departure or variance, as well as any sentencing memorandum, shall be filed 10 days prior to the sentencing date. Any response shall be filed 4 days prior to sentencing date.(jbw) (Entered: 01/10/2017) | |
| | 01/25/2017 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: In Chambers LASER Conference as to Michael Lally held on 1/25/2017 (Govt Atty: Shane Kelbley) (Defts Atty: Jaye Rancourt) (USP: Kevin Lavigne, Tim Brown, Steven Seero & Service Provider)(Total Hearing Time: 5 minutes)(CJA Time: 31 minutes) (jb) (Entered: 01/31/2017) | |
| | 01/25/2017 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: PRELIMINARY LASER HEARING as to Michael Lally held on 1/25/2017. (Govt Atty: Shane Kelbley) (Defts Atty: Jaye Rancourt) (USP: Kevin Lavigne, Tim Brown, Service Provider)(Total Hearing Time: 8 minutes)(CJA Time: 13 minutes) (jb) (Entered: 01/31/2017) | |
| 157 | 01/30/2017 | Assented to MOTION to Extend Time 30 days by Franklyn Morillo. (Apruzzese, John) (Entered: 01/30/2017) | |
| | 02/01/2017 | ENDORSED ORDER granting 157 Assented to Motion to Extend Time as to Franklyn Morillo (2). Text of Order: Granted. The clerk's office shall reschedule the sentencing on or after the requested 30 day extension, at a date/time to be determined by the clerk's office. So Ordered by Magistrate Judge Andrea K. Johnstone. (jbw) (Entered: 02/01/2017) | |
| | 02/01/2017 | RESCHEDULING NOTICE OF HEARING as to Franklyn Morillo. Sentencing rescheduled for 5/8/2017 02:00 PM before Judge Steven J. McAuliffe.The court has allotted 1 hour for the hearing. Please contact the court immediately if you anticipate the hearing will exceed the allotted time. Any motion seeking a departure or variance, as well as any sentencing memorandum, shall be filed 10 days prior to the sentencing date. Any response shall be filed 4 days prior to sentencing date.(jbw) (Entered: 02/01/2017) | |
| | 02/22/2017 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: In Chambers LASER Conference as to Michael Lally held on 2/22/2017 (Govt Atty: Seth Aframe, AUSA) (Defts Atty: Jaye Rancourt, Esq.) (USP: Tim Brown, Kevin Lavigne)(Total Hearing Time: 35 minutes)(CJA Time: 55 minutes) (cmp) | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | (Entered: 03/10/2017) | |
| | 02/22/2017 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: PRELIMINARY LASER HEARING as to Michael Lally held on 2/22/2017. (Govt Atty: Seth Aframe, AUSA) (Defts Atty: Jaye Rancourt, Esq.) (USP: Tim Brown, Kevin Lavigne)(Total Hearing Time: 30 minutes)(CJA Time: 35 minutes) (cmp) (Entered: 03/10/2017) | |
| 163 | 02/28/2017 | SENTENCING MEMORANDUM by Jorge Medina. (Leppo, Martin) (Entered: 02/28/2017) | |
| 164 | 03/02/2017 | Assented to MOTION to Continue Sentencing Hearing by Justin Bartimus. (Kenna, Bruce) (Entered: 03/02/2017) | |
| 165 | 03/02/2017 | NOTICE of Letters of Recommendation by Jorge Medina. (Attachments: # 1 Exhibit)(Leppo, Martin) (Entered: 03/02/2017) | |
| | 03/03/2017 | ENDORSED ORDER granting 164 Assented to MOTION to Continue Sentencing Hearing as to Justin Bartimus (4). Text of Order: Granted. So Ordered by Judge Steven J. McAuliffe. (The deputy clerk with contact counsel re: rescheduled date for sentencing hearing.) (jbw) (Entered: 03/03/2017) | |
| 166 | 03/06/2017 | OBJECTION by USA as to Jorge Medina re 163 Sentencing Memorandum . (Farley, John) (Entered: 03/06/2017) | |
| 167 | 03/06/2017 | Assented to MOTION to Excuse Counsel by Jorge Medina. (Leppo, Martin) (Entered: 03/06/2017) | |
| 168 | 03/07/2017 | Assented to MOTION to Continue Sentencing by Jorge Medina. (Leppo, Martin) (Entered: 03/07/2017) | |
| | 03/07/2017 | ENDORSED ORDER granting 167 Assented to MOTION to Excuse Local Counsel as to Jorge Medina (5). Text of Order: Granted. So Ordered by Judge Steven J. McAuliffe. (jbw) (Entered: 03/07/2017) | |
| | 03/07/2017 | ENDORSED ORDER granting 168 Assented to MOTION to Continue March 8, 2017 Sentencing Hearing as to Jorge Medina (5). Text of Order: Granted. So Ordered by Judge Steven J. McAuliffe. Sentencing reset for 3/23/2017 11:00 AM before Judge Steven J. McAuliffe.The court has allotted 1 hour for the hearing. Please contact the court immediately if you anticipate the hearing will exceed the allotted time. (jbw) (Entered: 03/07/2017) | |
| | 03/10/2017 | RESCHEDULING NOTICE OF HEARING as to Justin Bartimus. Sentencing reset for 3/23/2017 10:00 AM before Judge Steven J. McAuliffe.The court has allotted 1 hour for the hearing. Please contact the court immediately if you anticipate the hearing will exceed the allotted time. Any motion seeking a departure or variance, as well as any sentencing memorandum, shall be filed 10 days prior to the sentencing date. Any response shall be filed 4 days prior to sentencing date.(jbw) (Entered: 03/10/2017) | |
| 171 | 03/21/2017 | Assented to MOTION to File Untimely Response to Defendant's Variance Motion by USA as to Justin Bartimus. (Farley, John) (Entered: 03/21/2017) | |
| | 03/22/2017 | ENDORSED ORDER granting 171 Assented to MOTION to File Untimely Response to Defendant's Variance Motion as to Justin Bartimus (4). Text of Order: Granted. So Ordered by Judge Steven J. McAuliffe. (jbw) (Entered: 03/22/2017) | |
| | 03/22/2017 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: In Chambers LASER Conference as to Michael Lally held on 3/22/2017 (Govt Atty: Helen Fitzgibbon) (Defts Atty: Jaye Rancourt) (USP: Kevin Lavigne, Tim Brown, Steven Seero & Service Provider)(Total Hearing Time: 10 minutes)(CJA Time: 18 minutes) (jb) (Entered: 03/22/2017) | |
| | 03/22/2017 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: PRELIMINARY LASER HEARING as to Michael Lally | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | held on 3/22/2017. (Govt Atty: Helen Fitzgibbon) (Defts Atty: Jaye Rancourt) (USP: Kevin Lavigne, Tim Brown, Steven Seero & Service Provider)(Total Hearing Time: 12 minutes)(CJA Time: 19 minutes) (jb) (Entered: 03/22/2017) | |
| | 03/23/2017 | Minute Entry for proceedings held before Judge Steven J. McAuliffe: SENTENCING held on 3/23/2017 for Justin Bartimus (4): Defendant sentenced on Counts 1 and 2 of the Indictment. Oral argument heard re: sentencing recommendations. Court grants government's motion, and defendant's motion for a variant sentence. Fine waived due to inability to pay. Appeal rights to defendant. Defendant remains on bail pending self-surrender on 4/24/2017 to the institution designated by the BOP. (Court Reporter: Liza DuBois) (Govt Atty: John Farley) (Defts Atty: Bruce Kenna) (USP: Jennafer McNutt)(Total Hearing Time: 41 minutes)(CJA Time: 56 minutes) (jbw) (Entered: 03/23/2017) | |
| 173 | 03/23/2017 | ACKNOWLEDGMENT of Sentencing Options by Justin Bartimus. (jbw) (Entered: 03/23/2017) | |
| | 03/23/2017 | Minute Entry for proceedings held before Judge Steven J. McAuliffe: SENTENCING held on 3/23/2017 for Jorge Medina (5): Defendant sentenced on Count 1 of the Indictment. Oral argument heard on defendant's 163 Sentencing Memorandum/Motion for a Sentence Variance. Court grants the defendant's motion. Fine waived due to inability to pay. Appeal rights to defendant. Defendant remanded to the custody of the U.S. Marshal. (Court Reporter: Liza DuBois) (Govt Atty: John Farley) (Defts Atty: Martin Leppo and Lawrence Cote) (USP: Jennafer McNutt)(Total Hearing Time: 17 minutes) (jbw) (Entered: 03/24/2017) | |
| 174 | 03/23/2017 | ACKNOWLEDGMENT of Sentencing Options by Jorge Medina. (jbw) (Entered: 03/24/2017) | |
| 175 | 03/23/2017 | JUDGMENT as to Jorge Medina (5), Count 1: Defendant to be imprisoned for a total term of 24 months with court recommendation; 3 years Supervised Release with Mandatory, Standard, and Special Conditions; $100.00 Special Assessment; Fine waived. Defendant remanded to the custody of the U.S. Marshal. So Ordered by Judge Steven J. McAuliffe. (jbw) (Entered: 03/24/2017) | |
| 176 | 03/23/2017 | JUDGMENT as to Justin Bartimus (4), Counts 1, 2: Defendant to be imprisoned for a total term of 18 months, on each of Counts 1 and 2, to be served concurrently; Three years supervised release on each of Counts 1 and 2, to run concurrently, with mandatory, standard and special conditions; Fine waived. Defendant to self-surrender to the institution designated by BOP on or before 2:00 p.m. on 4/21/2017. So Ordered by Judge Steven J. McAuliffe. (jbw) (Entered: 03/24/2017) | |
| 180 | 04/03/2017 | NOTICE of Mail Returned- Not Deliverable as Addressed - Unable to forward re 175 Judgment, sent to Attorney Martin K. Leppo. (jbw) (Entered: 04/11/2017) | |
| | 04/26/2017 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: In Chambers LASER Conference as to Michael Lally held on 4/26/2017 (Govt Atty: Seth Aframe, AUSA) (Defts Atty: Kevin E. Sharkey for Jaye Rancourt) (USP: Tim Brown, Kevin Lavigne, Stephen Seero & Service Provider)(Total Hearing Time: 15 minutes)(CJA Time: 25 minutes) (cmp) (Entered: 05/08/2017) | |
| | 04/26/2017 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: PRELIMINARY LASER HEARING as to Michael Lally held on 4/26/2017. (Govt Atty: Seth Aframe, AUSA) (Defts Atty: Kevin E. Sharkey for Jaye Rancourt) (USP: Tim Brown, Kevin Lavigne, Stephen Seero & Service Provider)(Total Hearing Time: 20 minutes)(CJA Time: 25 minutes) (cmp) (Entered: 05/08/2017) | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| 186 | 04/27/2017 | Assented to MOTION to Continue sentencing by Juan Rojas. (Gleason, Scott) (Entered: 04/27/2017) | |
| | 04/27/2017 | ENDORSED ORDER granting 186 Assented to MOTION to Continue sentencing as to Juan Rojas (3). Text of Order: Granted. So Ordered by Judge Steven J. McAuliffe. Sentencing reset for 6/6/2017 11:00 AM before Judge Steven J. McAuliffe.The court has allotted 1 hour for the hearing. Please contact the court immediately if you anticipate the hearing will exceed the allotted time. Any motion seeking a departure or variance, as well as any sentencing memorandum, shall be filed 10 days prior to the sentencing date. Any response shall be filed 4 days prior to sentencing date.(jbw) (Entered: 04/27/2017) | |
| | 04/28/2017 | CJA 20 Payment Information as to Justin Bartimus. Authorization given to pay counsel for representation under the Criminal Justice Act in the following amount. Bruce Kenna: $12,811.45. (mp) (Entered: 04/28/2017) | |
| 188 | 04/28/2017 | SENTENCING MEMORANDUM by Franklyn Morillo. (Attachments: # 1 Exhibit Morillo Sentencing Exhibits 1-3, # 2 Exhibit Morillo Sentencing Exhibits 4-5, # 3 Exhibit Morillo Sentencing Exhibits 6-7, # 4 Exhibit Morillo Sentencing Exhibits 8-9)(Apruzzese, John) (Entered: 04/29/2017) | |
| 189 | 05/01/2017 | SENTENCING MEMORANDUM and request for a variance by Mara Morillo. (Attachments: # 1 Exhibit certificates)(Saxe, Jonathan) (Entered: 05/01/2017) | |
| 192 | 05/03/2017 | SENTENCING MEMORANDUM Supplemental Sentencing Memo and Request for Variance by Franklyn Morillo. (Apruzzese, John) (Entered: 05/03/2017) | |
| 193 | 05/04/2017 | SENTENCING MEMORANDUM supplemental sentencing memorandum by Mara Morillo. (Saxe, Jonathan) (Entered: 05/04/2017) | |
| 194 | 05/04/2017 | SENTENCING MEMORANDUM by USA as to Franklyn Morillo. (Farley, John) (Entered: 05/04/2017) | |
| 197 | 05/05/2017 | SENTENCING MEMORANDUM by USA as to Mara Morillo. (Farley, John) (Entered: 05/05/2017) | |
| | 05/08/2017 | Minute Entry for proceedings held before Judge Steven J. McAuliffe: SENTENCING held on 5/8/2017 for Franklyn Morillo (2). Defendant sentenced on Count 1. Defendant states objections to PSR. Argument heard on those objections. Court overrules defendant's objections to PSR. Defendant's request for a variant sentence; argument heard. Court denies request for a variant sentence. Fine waived due to inability to pay. Appeal rights to defendant. Defendant remanded to the custody of the U.S. Marshal. (Court Reporter: Sandra Bailey) (Govt Atty: John Farley) (Defts Atty: John Apruzzese) (USP: Jennafer McNutt)(Total Hearing Time: 30 minutes)(CJA Time: 35 minutes) (jbw) (Entered: 05/08/2017) | |
| 202 | 05/08/2017 | ACKNOWLEDGMENT of Sentencing Options by Franklyn Morillo. (jbw) (Entered: 05/08/2017) | |
| 203 | 05/08/2017 | JUDGMENT as to Franklyn Morillo (2), Count 1: Defendant to be imprisoned for a total term of 168 months, with Court recommendations; 3 years Supervised Release with mandatory, standard and special conditions; $100.00 Special Assessment; Fine waived. Defendant remanded to the custody of the U.S. Marshal. So Ordered by Judge Steven J. McAuliffe. (jbw) (Entered: 05/09/2017) | |
| 204 | 05/11/2017 | ACKNOWLEDGMENT of Sentencing Options by Mara Morillo. (jbw) (Entered: 05/11/2017) | |
| | 05/11/2017 | Minute Entry for proceedings held before Judge Steven J. | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | McAuliffe: SENTENCING held on 5/11/2017 for Mara Morillo (1): Defendant sentenced on Count 1. Oral argument heard on defendant's two objections to the PSR. Court overrules both objections. Oral arguments heard on defendant's request for a variant sentence; request denied by the court. Fine waived due to inability to pay. Appeal rights to defendant. Defendant remanded to the custody of the U.S. Marshal. (Court Reporter: Susan Bateman) (Govt Atty: John Farley) (Defts Atty: Jonathan Saxe) (USP: Jennafer McNutt)(Total Hearing Time: 58 minutes) (jbw) (Entered: 05/12/2017) | |
| 207 | 05/11/2017 | VACATED - See 9/26/2025 Order. JUDGMENT as to Mara Morillo (1), Count 1: Defendant to be imprisoned for a total term of 84 months with court recommendations; 3 years supervised release with mandatory, standard and special conditions; $100.00 Special Assessment; Fine waived. Defendant remanded to the custody of the U.S. Marshal. So Ordered by Judge Steven J. McAuliffe. (jbw) Modified on 9/26/2025 to add: vacated text (lw). (Entered: 05/12/2017) | |
| 205 | 05/12/2017 | NOTICE OF APPEAL by Franklyn Morillo. (No fee paid, USA or IFP.). [NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the Forms & Notices section of the First Circuit website at www.ca1.uscourts.gov, MUST be completed and submitted to the U.S. Court of Appeals for the First Circuit.]NOTICE TO COUNSEL: Counsel should register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf/. Counsel should also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf (Apruzzese, John) (Entered: 05/12/2017) | |
| 206 | 05/12/2017 | Assented to MOTION for John V. Apruzzese to Withdraw as Attorney by Franklyn Morillo. (Apruzzese, John) (Entered: 05/12/2017) | |
| 208 | 05/15/2017 | Appeal Cover Sheet as to Franklyn Morillo re 205 Notice of Appeal. (jbw) (Entered: 05/15/2017) | |
| 209 | 05/15/2017 | Clerk's Certificate transmitting Record on Appeal to US Court of Appeals, documents numbered 203, 205, and 208, as to Franklyn Morillo to USCA re 205 Notice of Appeal. A copy of the Notice of Appeal mailed to all parties this date. (jbw) (Entered: 05/15/2017) | |
| | 05/15/2017 | Appellate Case Number: CCA 17-1506 for 205 Notice of Appeal, filed by Franklyn Morillo. (jbw) (Entered: 05/16/2017) | |
| | 05/16/2017 | ENDORSED ORDER denying without prejudice 206 Assented to Motion for John V. Apruzzese to Withdraw as Attorney as to Franklyn Morillo (2). Text of Order: Denied, without prejudice to filing the motion in the United States Court of Appeals for the First Circuit. See First Circuit Local Rule 46.6. So Ordered by Judge Steven J. McAuliffe. (jbw) (Entered: 05/16/2017) | |
| 210 | 05/17/2017 | Judgment Returned Executed as to Jorge Medina on 5/5/2017.(jbw) (Entered: 05/17/2017) | |
| 211 | 05/17/2017 | NOTICE of CERTIFICATE OF COMPLETION OF THE LASER DOCKET PROGRAM as to Michael Lally. (cmp) (Entered: 05/25/2017) | |
| | 05/25/2017 | NOTICE OF HEARING as to Michael Lally. Sentencing set for 7/12/2017 AT 11:00 AM before Chief Judge Joseph N. Laplante.The court has allotted 1 hour for the hearing. Please contact the court immediately if you anticipate the hearing will exceed the allotted time. Any motion seeking a departure or variance, as well as any sentencing memorandum, shall be filed 10 days prior to the sentencing date. Any response shall be filed 4 days prior to sentencing date.(cmp) (Entered: 05/25/2017) | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| 212 | 06/01/2017 | Petition for Writ of Habeas Corpus ad Prosequendum as to Juan Rojas for June 6, 2017 @ 11:00 am. for Sentencing (Farley, John) (Entered: 06/01/2017) | |
| | 06/01/2017 | Writ of Habeas Corpus ad Prosequendum Issued as to Juan Rojas for June 6, 2017.(jbw) (Entered: 06/01/2017) | |
| | 06/06/2017 | Minute Entry for proceedings held before Judge Steven J. McAuliffe: SENTENCING held on 6/6/2017 for Juan Rojas (3): defendant sentenced on Count 1. Counsel request the court adopt the 11(c)(1)(C) binding stipulation as to a specific sentence as set for in the plea agreement; defendant also requests that the court recommend that the defendant be placed in the RDAP program and in a facility located in the Northeast Region. The Court finds the binding stipulation to be reasonable and will sentence the defendant accordingly. Fine waived due to inability to pay. Appeal rights to defendant. Court granted oral motion by government to dismiss count 3. Defendant remanded to the custody of the US Marshal. (Court Reporter: Susan Bateman) (Govt Atty: John Farley) (Defts Atty: Scott Gleason and Thomas Gleason) (USP: Jennafer McNutt)(Total Hearing Time: 10 minutes) (jbw) (Entered: 06/06/2017) | |
| 215 | 06/06/2017 | ACKNOWLEDGMENT of Sentencing Options by Juan Rojas. (jbw) (Entered: 06/06/2017) | |
| 216 | 06/07/2017 | JUDGMENT as to Juan Rojas (3), Count 1: Defendant to be imprisoned for a total term of 72 months in this case and 15-cr-173-01-SM, both terms to be served concurrently, with court recommendations; 3 years Supervised Release in this case and 15-cr-173-01-SM, both such terms to run concurrently, with Mandatory, Standard and Special Conditions. Total Special Assessment: $200.00 ($100.00 each case). Fine waived. Count 3: Dismissed upon oral motion of the government. Defendant remanded to the custody of the U.S. Marshal. So Ordered by Judge Steven J. McAuliffe. (jbw) (Entered: 06/08/2017) | |
| 217 | 06/13/2017 | Judgment Returned Executed as to Franklyn Morillo on 6/1/2017.(jbw) (Entered: 06/14/2017) | |
| 218 | 06/13/2017 | Receipt of the Government's Suppression Hearing Exhibits listed on 81 Exhibit List filed by USA are hereby acknowledged. (jbw) (Entered: 06/14/2017) | |
| | 07/10/2017 | RESCHEDULING NOTICE OF HEARING as to Michael Lally. Sentencing reset for 7/17/2017 at 02:00 PM before Chief Judge Joseph N. Laplante.The court has allotted 1 hour for the hearing. Please contact the court immediately if you anticipate the hearing will exceed the allotted time. Any motion seeking a departure or variance, as well as any sentencing memorandum, shall be filed 10 days prior to the sentencing date. Any response shall be filed 4 days prior to sentencing date.(cmp) (Entered: 07/10/2017) | |
| 221 | 07/13/2017 | SENTENCING MEMORANDUM and Motion for a Booker Variance by Michael Lally. (Rancourt, Jaye) (Entered: 07/13/2017) | |
| | 07/14/2017 | ENDORSED ORDER as to Michael Lally reviewing 221 Sentencing Memorandum. Text of Order: Reviewed So Ordered by Chief Judge Joseph N. Laplante. (cmp) (Entered: 07/17/2017) | |
| | 07/17/2017 | Minute Entry for proceedings held before Chief Judge Joseph N. Laplante: SENTENCING held on 7/17/2017 for Michael Lally (6) (LASER GRADUATE) Sentenced to Time Served on Count 1. Fine waived due to inability to pay. Appeal rights to defendant. (Court Reporter: Liza Dubois) (Govt Atty: Seth Aframe, AUSA) (Defts Atty: Jaye Rancourt, Esq.) (USP: Jodi Gauvin, USPO)(Total Hearing Time: 16 minutes)(CJA Time: 21 minutes) (cmp) (Entered: 07/17/2017) | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | 07/17/2017 | ORAL ORDER as to Michael Lally re: 221 Sentencing Memorandum. Text of Order: Request for Variance Granted. So Ordered by Chief Judge Joseph N. Laplante. (cmp) (Entered: 07/17/2017) | |
| 222 | 07/17/2017 | ORDER re: Disposition of Sealed Documents: 70 Sealed Motion to Suppress Title II Wiretaps, 71 Sealed Motion to Suppress Photo Identification and 72] Sealed Motion to Seal filed by Jorge Medina; 74 Sealed Objection to 72 Motion, 75 Motion to Seal Document, 76 Sealed Objection to 70 Motion and 77 Motion to Seal Document filed by USA. Unless alternative response is received, the documents will be unsealed, docketed and filed. Sealed Document deadline 7/31/2017. So Ordered by Judge Steven J. McAuliffe. (jbw) Modified on 8/25/2017 to unseal document, there being no objection or response filed. (jab) (Entered: 07/18/2017) | |
| 224 | 07/17/2017 | ACKNOWLEDGMENT of Sentencing Options by Michael Lally. (cmp) (Entered: 07/18/2017) | |
| 223 | 07/18/2017 | Assented to MOTION to Modify Proposed Sentencing Options & Supervision Conditions as to Michael Lally. (Attachments: # 1 Revised Proposed Sentencing Options &amp; Supervision Conditions) (kaw) (Entered: 07/18/2017) | |
| | 07/18/2017 | ENDORSED ORDER granting 223 Assented to MOTION Modify Proposed Sentencing Options& Supervision Conditions as to Michael Lally (6). Text of Order: Granted. So Ordered by Chief Judge Joseph N. Laplante. (cmp) (Entered: 07/18/2017) | |
| 226 | 07/19/2017 | JUDGMENT as to Michael Lally (6), Count 1, Deferral of Prosecution. Defendant accepted into LASER PROGRAM 4/27/16. Successful graduate from LASER. Imprisonment: Time Served. Supervised release: 2 years with standard and special conditions. Special Assessment: $100.00 due immediately. So Ordered by Chief Judge Joseph N. Laplante. (cmp) (Entered: 07/20/2017) | |
| 225 | 07/20/2017 | Assented to MOTION for Return of Property (Passport) by Michael Lally. (Rancourt, Jaye) (Entered: 07/20/2017) | |
| | 07/21/2017 | ENDORSED ORDER granting 225 Motion for Return of Property (U.S. Passport) as to Michael Lally (6). Text of Order: Granted. So Ordered by Chief Judge Joseph N. Laplante. (cmp) (Entered: 07/21/2017) | |
| 227 | 08/09/2017 | RECEIPT for Collateral returned as to Michael Lally re: 52 Collateral Receipt. Received/returned to Attorney Jaye Rancourt, Esq. (cmp) (Entered: 08/10/2017) | |
| 228 | 08/17/2017 | TRANSCRIPT of Proceedings as to Franklyn Morillo for Sentencing held on 5/8/2017. Court of Appeals Docket Number 17-1506. Court Reporter: Sandra Bailey, Telephone # 603 225-1454. Transcript is available for public inspection, but may not be copied or otherwise reproduced, at the Clerk's Office for a period of 90 days. Additionally, only attorneys of record and pro se parties with an ECF login and password who purchase a transcript from the court reporter will have access to the transcript through PACER during this 90-day period. If you would like to order a copy, please contact the court reporter at the above listed phone number.NOTICE: Any party who requests an original transcript has 21 days from service of this notice to determine whether it is necessary to redact any personal identifiers and, if so, to electronically file a Redaction Request. Redaction Request Follow Up 9/7/2017. Redacted Transcript Follow Up 9/18/2017. Release of Transcript Restriction set for 11/13/2017. (jbw) (Entered: 08/18/2017) | |
| | 08/25/2017 | ACTION by Clerk of Court in accordance with the 222 Order on Disposition of Sealed Documents re: 70 MOTION to Suppress | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | Title III Wiretaps; 71 Assented to MOTION to File Defendant's Suppression Motions Under Seal; 72 MOTION to Suppress Photo Identification and in Court Identification; 74 Objection to 72 Motion; 75 Assented to MOTION to Seal Document 74 Objection to Motion; 76 Objection to 70 Motion; and 77 Assented to MOTION to Seal Document 76 Objection to Motion. The documents have been: unsealed, docketed and filed there being no objection or response filed.(jbw) (Entered: 08/26/2017) | |
| | 08/30/2017 | CJA 20 Payment Information as to Franklyn Morillo. Authorization given to pay counsel for representation under the Criminal Justice Act in the following amount. John Pendleton: $5,076.82. James Gleason: $9,943.11. John V. Apruzzese: $8,960.17. (mp) (Entered: 08/30/2017) | |
| 229 | 09/01/2017 | Letter to Clerk of Court from Franklyn Morillo re: requesting copy of sentencing transcript for appeal. (jbw) (Entered: 09/07/2017) | |
| 230 | 09/12/2017 | TRANSCRIPT of Proceedings as to Franklyn Morillo for Change of Plea Hearing held on 10/28/2016. Court of Appeals Docket Number 17-1506. Court Reporter: Susan Bateman, Telephone # 603 225-1453. Transcript is available for public inspection, but may not be copied or otherwise reproduced, at the Clerk's Office for a period of 90 days. Additionally, only attorneys of record and pro se parties with an ECF login and password who purchase a transcript from the court reporter will have access to the transcript through PACER during this 90-day period. If you would like to order a copy, please contact the court reporter at the above listed phone number.NOTICE: Any party who requests an original transcript has 21 days from service of this notice to determine whether it is necessary to redact any personal identifiers and, if so, to electronically file a Redaction Request. Redaction Request Follow Up 10/3/2017. Redacted Transcript Follow Up 10/13/2017. Release of Transcript Restriction set for 12/8/2017. (jbw) (Entered: 09/12/2017) | |
| 231 | 09/13/2017 | Letter to Franklyn Morillo from Deputy Clerk re: response to 9/1/2017 correspondence. (jbw) (Entered: 09/15/2017) | |
| 232 | 09/22/2017 | Judgment Returned Executed as to Juan Rojas on 7/18/2017.(ko) (Entered: 09/22/2017) | |
| | 12/01/2017 | CJA 20 Payment Information as to Michael Lally. Authorization given to pay counsel for representation under the Criminal Justice Act in the following amount. Richard Guerriero: $7,872.59. Jaye Rancourt: $8,668.86. (ec) (Entered: 12/01/2017) | |
| 234 | 12/06/2018 | ORDER of USCA as to Franklyn Morillo re 205 Notice of Appeal. The judgment of the district court is affirmed. (jbw) (Entered: 12/06/2018) | |
| 235 | 12/06/2018 | JUDGMENT of USCA as to Franklyn Morillo re 205 Notice of Appeal: Affirmed. (jbw) (Entered: 12/06/2018) | |
| 236 | 12/27/2018 | MANDATE of USCA as to Franklyn Morillo re: 205 Notice of Appeal, 235 Judgment: Affirmed. (lml) (Entered: 12/27/2018) | |
| 237 | 02/27/2019 | Assented to MOTION for Early Termination of Probation Assented to Motion for Early Termination from Supervised Release by Michael Lally. (Rancourt, Jaye) (Entered: 02/27/2019) | |
| | 02/27/2019 | ENDORSED ORDER granting 237 Assented to Motion for Early Termination of Probation Assented to Motion for Early Termination from Supervised Release as to Michael Lally (6). Text of Order: Granted. So Ordered by Judge Joseph N. Laplante. (jb) (Entered: 02/27/2019) | |
| 238 | 06/21/2019 | TRANSCRIPT of Proceedings as to Juan Rojas for Sentencing Hearing held on 6/6/2017. Court Reporter: Susan M. Bateman, Telephone # 603 225-1453. Transcript is available for public inspection, but may not be copied or otherwise reproduced, at the | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | Clerk's Office for a period of 90 days. Additionally, only attorneys of record and pro se parties with an ECF login and password who purchase a transcript from the court reporter will have access to the transcript through PACER during this 90-day period. If you would like to order a copy, please contact the court reporter at the above listed phone number.NOTICE: Any party who requests an original transcript has 21 days from service of this notice to determine whether it is necessary to redact any personal identifiers and, if so, to electronically file a Redaction Request. Redaction Request Follow Up 7/12/2019. Redacted Transcript Follow Up 7/22/2019. Release of Transcript Restriction set for 9/16/2019. (ko) (Entered: 06/24/2019) | |
| 239 | 01/27/2020 | Copy of MOTION under 28 U.S.C. 2255 (Civil Action 1:20-cv-164-SM). All further docketing will be in the civil case. Copy of the petition has been sent to the AUSA for information only by Franklyn Morillo. (Attachments: # 1 Petitioner's Pro Se Motion to Vacate, # 2 Attachment Declarations, # 3 Envelope) (ed) (Entered: 01/31/2020) | |
| 240 | 05/18/2021 | Probation Jurisdiction Transferred to District of Massachusetts as to Juan Rojas. Transmitted Transfer of Jurisdiction form, with copies of the charging document, judgment and docket sheet. (lw) (Entered: 05/19/2021) | |
| 241 | 05/19/2021 | Notice to District of Massachusetts of a Transfer of Jurisdiction of Probation as to Juan Rojas. Your case number is: 21-cr-10156. The docket sheet and documents pertinent to this transfer are attached. If you require certified copies of any documents, please send a request to InterdistrictTransfer_@nhd.uscourts.gov. If you wish to designate a different email address for future transfers, send your request to InterDistrictTransfer_TXND@txnd.uscourts.gov. (lw) (Entered: 05/19/2021) | |
| 242 | 09/20/2022 | Probation Jurisdiction Transferred to Southern District of Florida as to Mara Morillo. Transmitted Transfer of Jurisdiction form, with copies of the charging document, judgment and docket sheet. (lw) (Entered: 09/21/2022) | |
| 243 | 09/21/2022 | Notice to Southern District of Florida of a Transfer of Jurisdiction of Probation as to Mara Morillo. Your case number is: 22-cr-60032-TP-AHS. The docket sheet and documents pertinent to this transfer are attached. If you require certified copies of any documents, please send a request to InterdistrictTransfer_@nhd.uscourts.gov. If you wish to designate a different email address for future transfers, send your request to InterDistrictTransfer_TXND@txnd.uscourts.gov. (lw) (Entered: 09/21/2022) | |
| 244 | 10/31/2022 | MOTION for Reduction in Sentence Pursuant to 18 U.S.C. §3582(c)(1)(a) by Franklyn Morillo. Follow up on Objection on 11/14/2022. (Attachments: # 1 Attachments) (lw) (Entered: 11/02/2022) | |
| 245 | 11/14/2022 | OBJECTION by USA as to Franklyn Morillo re 244 MOTION for Compassionate Release . Attorney Heather A Cherniske added to party USA(pty:pla). (Attachments: # 1 Exhibit Declaration of Case Management Coordinator Raguckas)(Cherniske, Heather) (Entered: 11/14/2022) | |
| 246 | 11/30/2022 | ORDER denying 244 Motion for Reduction in Sentence Pursuant to 18 U.S.C. §3582(c)(1)(a) as to Franklyn Morillo (2). So Ordered by Judge Steven J. McAuliffe. (lw) (Entered: 11/30/2022) | |
| 247 | 02/05/2024 | MOTION to Reduce Sentence - USSC 2023 Amendments by Franklyn Morillo. Miscellaneous Deadline set for 2/20/2024. (lw) (Entered: 02/06/2024) | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| 248 | 02/13/2024 | MOTION to Appoint Counsel--2023 USSC Sentencing Amendments by Franklyn Morillo. Follow up on Objection on 2/27/2024. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Apruzzese, John) Modified on 2/15/2024 to correct event selection (lw) (Entered: 02/13/2024) | |
| | 02/20/2024 | ENDORSED ORDER granting 248 Motion to Appoint Counsel--2023 USSC Sentencing Amendment as to Franklyn Morillo (2). John V. Apruzzese appointed on February 20, 2024. Text of Order: Granted. So Ordered by Judge Steven J. McAuliffe. (lw) (Entered: 02/20/2024) | |
| 249 | 02/20/2024 | SCHEDULING ORDER - USSC 2023 Amendment as to Franklyn Morillo. USP Eligibility Memorandum due 3/5/2024. Follow up on Sentencing Memoranda or Agreement 3/19/2024. So Ordered by Judge Steven J. McAuliffe. (lw) (Entered: 02/20/2024) | |
| 250 | 02/21/2024 | NOTICE OF ATTORNEY APPEARANCE Aaron G. Gingrande appearing for USA. Attorney Aaron G. Gingrande added to party USA(pty:pla).(Gingrande, Aaron) (Entered: 02/21/2024) | |
| 252 | 03/19/2024 | Partially Assented to MOTION for John V. Apruzzese to Withdraw as Attorney  by Franklyn Morillo.Follow up on Objection on 4/2/2024. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Motion to Seal Affidavit) (Apruzzese, John) (Entered: 03/19/2024) | |
| 254 | 03/21/2024 | Supplemental MOTION for John V. Apruzzese to Withdraw as Attorney  by Franklyn Morillo.Follow up on Objection on 4/4/2024. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Apruzzese, John) (Entered: 03/21/2024) | |
| | 04/02/2024 | ENDORSED ORDER granting 252 Partially Assented to Motion for John V. Apruzzese to Withdraw as Attorney as to Franklyn Morillo (2); 254 Supplemental Motion for John V. Apruzzese to Withdraw as Attorney as to Franklyn Morillo (2). Text of Order: Granted. Counsel's motions to withdraw are granted. In light of the Probation Office's assessment that defendant does not qualify for relief (doc. No. 251), the court declines to appoint successor counsel. A copy of the Probation Office's assessment shall be provided to the defendant and he may, if he chooses, submit a written pleading, on or before May 3, 2024, showing why that assessment is incorrect. So Ordered by Judge Steven J. McAuliffe. (lw) (Entered: 04/02/2024) | |
| 255 | 05/08/2024 | MOTION to Reduce Criminal History Points by Franklyn Morillo. (lw) (Entered: 05/09/2024) | |
| | 05/14/2024 | CJA 20 Payment Information as to Franklyn Morillo. Authorization given to pay counsel for representation under the Criminal Justice Act in the following amount. John V. Apruzzese: $1,118.00. (mp) (Entered: 05/14/2024) | |
| | 05/15/2024 | ENDORSED ORDER denying 247 Motion to Reduce Sentence - USSC 2023 Amendment as to Franklyn Morillo (2). Text of Order: Denied; defendant has failed to show that the Probation Office's assessment that he is ineligible for relief under the retroactive 2023 USSG amendment as his GSR was not reduced. So Ordered by Judge Steven J. McAuliffe. (lw) (Entered: 05/15/2024) | |
| | 05/15/2024 | ENDORSED ORDER denying 255 Motion to Reduce Criminal History Points as to Franklyn Morillo (2). Text of Order: Denied; the time in which to file a direct appeal challenging the Guideline Sentencing Range calculation has long since passed; as has the time in which to file a petition for sentence relief under the provisions of 28 U.S.C. § 2255. So Ordered by Judge Steven J. | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | McAuliffe. (lw) (Entered: 05/15/2024) | |
| 256 | 10/01/2024 | REQUEST FOR MODIFYING CONDITIONS OF SUPERVISION (12B) as to Franklyn Morillo sealed at Level 1. For instructions on how to view restricted electronic documents, click HERE. (Attachments: # 1 PF 49/Waiver of Hearing)(tjg) (Entered: 10/01/2024) | |
| 257 | 10/01/2024 | ENDORSED ORDER re: 256 REQUEST for Modification of Conditions of Supervision (12B) as to Franklyn Morillo (2). Text of Order: The Modification of Conditions as Noted Above. So Ordered by Judge Steven J. McAuliffe. (lw) (Entered: 10/02/2024) | |
| 258 | 06/09/2025 | MOTION for Stephanie McClure, Esq. to Appear Pro Hac Vice (Filing fee $ 100, receipt number ANHDC-2643751.) by Mara Morillo.Follow up on Objection on 6/23/2025. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). Attorney Sandra A. Kuhn added to party Mara Morillo(pty:dft). (Attachments: # 1 Exhibit Good Standing Letters) (Kuhn, Sandra) (Entered: 06/09/2025) | |
| | 06/10/2025 | ***Remark as to Mara Morillo: Sent email to Intake for a magistrate judge assignment. (lw) (Entered: 06/10/2025) | |
| | 06/12/2025 | ENDORSED ORDER granting 258 Motion for Stephanie McClure to Appear Pro Hac Vice as to Mara Morillo (1). Text of Order: Granted. Local counsel shall comply with all obligations required by L.R. 83.2(b) absent order of the court. So Ordered by US Magistrate Judge Andrea K Johnstone. The clerks office will provide the admitted attorney with instructions on how to obtain access to electronic filing by separate email. The admitted attorney must have an individual upgraded PACER account, not a shared firm account, to electronically file in the District of New Hampshire. After obtaining e-filing access, the admitted attorney must file an appearance to begin receiving electronic notices.(lw) (Entered: 06/13/2025) | |
| 259 | 06/13/2025 | NOTICE OF ATTORNEY APPEARANCE: Stephanie Mcclure appearing for Mara Morillo . Attorney Stephanie Mcclure added to party Mara Morillo(pty:dft).(Mcclure, Stephanie) (Entered: 06/13/2025) | |
| 260 | 06/13/2025 | MOTION Vacatur Writ of Coram Nobis by Mara Morillo. HEARING REQUESTED.Follow up on Objection on 6/27/2025. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit (Affidavit) Affidavit in Support, # 2 Exhibit Confidential Police Records) (Mcclure, Stephanie) (Additional attachment(s) added on 6/16/2025: # 3 Unredacted Sealed Petition for Writ of Coram Nobis, # 4 Unredacted Sealed Affidavit of Mara Morillo, # 5 Unredacted Sealed Criminal Records) (lw). (Entered: 06/13/2025) | |
| 261 | 06/14/2025 | Emergency MOTION Emergent Stay of Removal to Venezuela by Mara Morillo.Follow up on Objection on 6/30/2025. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Mcclure, Stephanie) (Additional attachment(s) added on 6/16/2025: # 1 Sealed Motion for Emergency Stay of Removal) (lw). (Entered: 06/14/2025) | |
| | 06/16/2025 | ENDORSED ORDER re: 261 Emergency MOTION Emergent Stay of Removal to Venezuela as to Mara Morillo. Text of Order: It appears that the stay petition has not been served to the government. The clerk shall provide the U.S. Attorney's Office with a copy and the government may file an initial response on or before 12:00 pm Tuesday, June 17, 2025. So Ordered by Judge Steven J. McAuliffe. (lw) (Entered: 06/16/2025) | |
| 262 | 06/17/2025 | NOTICE OF ATTORNEY APPEARANCE Matthew Vicinanzo appearing for USA. Attorney Matthew Vicinanzo added to party | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | USA(pty:pla).(Vicinanzo, Matthew) (Entered: 06/17/2025) | |
| 263 | 06/17/2025 | RESPONSE to Motion by USA as to Mara Morillo re 261 Emergency MOTION Emergent Stay of Removal to Venezuela . (Vicinanzo, Matthew) (Entered: 06/17/2025) | |
| 264 | 06/18/2025 | ORDER denying 261 Emergency MOTION Emergent Stay of Removal to Venezuela as to Mara Morillo (1). For the forgoing reasons, the court necessarily concludes that it lacks jurisdiction to stay Morillo's removal proceedings. Moreover, even if the court did have such jurisdiction, Morillo has not demonstrated that the relevant factors weigh in favor of granting such a stay. Accordingly, her Emergency Motion for Stay of Removal Proceedings (document no. 261) is denied, but obviously without prejudice to her seeking a stay from the Court of Appeals while this petition is adjudicated in this court. So Ordered by Judge Steven J. McAuliffe. (lw) (Entered: 06/18/2025) | |
| 265 | 07/08/2025 | Assented to MOTION to Seal Case at Level II until defendant is taken into custody * indefinite sealing requested for safety* by Mara Morillo. (Mcclure, Stephanie) (Entered: 07/08/2025) | |
| | 07/09/2025 | NOTICE of ECF Filing Error re: 265 Assented to MOTION to Seal Case at Level II until defendant is taken into custody * indefinite sealing requested for safety* filed by Mara Morillo. Filer used the wrong event. Filer should have used Motions - Miscellaneous Relief. NO ACTION REQUIRED - FOR INFORMATIONAL PURPOSES ONLY AND MERELY INTENDED TO EDUCATE ALL PARTIES IN THE CASE. If the filing party has any questions concerning this notice, please contact the judge's case manager at 603-225-1423. (lw) (Entered: 07/09/2025) | |
| 266 | 07/11/2025 | TRANSCRIPT of Proceedings as to Mara Morillo for Change of Plea held on 5/11/2016. Court Reporter: Liza Dubois, Telephone # 603 225-1442. Transcript is available for public inspection, but may not be copied or otherwise reproduced, at the Clerk's Office for a period of 90 days. Additionally, only attorneys of record and pro se parties with an ECF login and password who purchase a transcript from the court reporter will have access to the transcript through PACER during this 90-day period. If you would like to order a copy, please contact the court reporter at the above listed phone number.NOTICE: Any party who requests an original transcript has 21 days from service of this notice to determine whether it is necessary to redact any personal identifiers and, if so, to electronically file a Redaction Request. Redaction Request Follow Up 8/1/2025. Redacted Transcript Follow Up 8/11/2025. Release of Transcript Restriction set for 10/9/2025. (lw) (Entered: 07/11/2025) | |
| | 07/11/2025 | ENDORSED ORDER granting 265 Motion to Seal at Level II as to Mara Morillo (1). Text of Order: Motion to seal granted, subject to further order of the court. So Ordered by Judge Steven J. McAuliffe. (lw) (Entered: 07/14/2025) | |
| 267 | 07/16/2025 | TRANSCRIPT of Proceedings as to Mara Morillo for Sentencing Hearing held on 05/11/2017. Court Reporter: Susan Bateman, Telephone # 603 225-1453. Transcript is available for public inspection, but may not be copied or otherwise reproduced, at the Clerk's Office for a period of 90 days. Additionally, only attorneys of record and pro se parties with an ECF login and password who purchase a transcript from the court reporter will have access to the transcript through PACER during this 90-day period. If you would like to order a copy, please contact the court reporter at the above listed phone number.NOTICE: Any party who requests an original transcript has 21 days from service of this notice to determine whether it is necessary to redact any personal | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | identifiers and, if so, to electronically file a Redaction Request. Redaction Request Follow Up 8/6/2025. Redacted Transcript Follow Up 8/18/2025. Release of Transcript Restriction set for 10/14/2025. (lw) (Entered: 07/16/2025) | |
| 269 | 07/22/2025 | OBJECTION by USA as to Mara Morillo, re 260 MOTION Vacatur Writ of Coram Nobis . (Vicinanzo, Matthew) Modified on 7/23/2025 to correct docket text to reflect defendant no. 1 only (lw). (Entered: 07/22/2025) | |
| | 07/23/2025 | NOTICE of ECF Filing Error re: 269 Objection to Motion filed by USA. Objection should have only been filed in Mara Morillo's case, defendant no. 1. NO ACTION REQUIRED - FOR INFORMATIONAL PURPOSES ONLY AND MERELY INTENDED TO EDUCATE ALL PARTIES IN THE CASE. If the filing party has any questions concerning this notice, please contact the judge's case manager at 603-225-1423. (lw) (Entered: 07/23/2025) | |
| 270 | 07/23/2025 | Assented to MOTION for Leave to File Reply brief, by 8/14/25, with Assent, by Mara Morillo. (Mcclure, Stephanie) (Entered: 07/23/2025) | |
| | 07/24/2025 | ENDORSED ORDER granting 270 Assented to MOTION for Leave to File Reply brief, by 8/14/25, with Assent, as to Mara Morillo (1). Text of Order: Granted. So Ordered by Judge Steven J. McAuliffe. (lw) (Entered: 07/24/2025) | |
| 271 | 08/14/2025 | REPLY TO OBJECTION to Motion by Mara Morillo re 260 MOTION Vacatur Writ of Coram Nobis . (Mcclure, Stephanie) (Entered: 08/14/2025) | |
| 273 | 09/23/2025 | Emergency MOTION to Expedite Order of Vacatur by Mara Morillo.Follow up on Objection on 10/7/2025. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit Redacted Affidavit) (Mcclure, Stephanie) (Entered: 09/23/2025) | |
| 275 | 09/24/2025 | RESPONSE to Motion by USA as to Mara Morillo re 273 Emergency MOTION to Expedite Order of Vacatur Notice of Non-Objection to Expedited Proceedings on Coram Nobis Petition. (Vicinanzo, Matthew) (Entered: 09/24/2025) | |
| | 09/24/2025 | Minute Entry for proceedings held before Judge Steven J. McAuliffe: In Chambers Telephone Conference as to Mara Morillo held on 9/24/2025. (Govt Atty: Matthew Vicinanzo) (Defts Atty: Stephanie Mcclure)(Total Hearing Time: 20 min.) (lw) (Entered: 09/24/2025) | |
| | 09/24/2025 | NOTICE OF VIDEO HEARING as to Mara Morillo. Motion Hearing set for 9/25/2025 10:00 AM, via Video Conference, before Judge Steven J. McAuliffe. (lw) (Entered: 09/24/2025) | |
| 276 | 09/24/2025 | ORDER re: 260 MOTION Vacatur Writ of Coram Nobis as to Mara Morillo. So Ordered by Judge Steven J. McAuliffe. (lw) (Entered: 09/24/2025) | |
| 277 | 09/24/2025 | RESPONSE by Mara Morillo re 260 MOTION Vacatur Writ of Coram Nobis, 276 Order. In Preparation for Hearing (Attachments: # 1 Exhibit Redacted Removal Order, # 2 Exhibit Redacted NOI, # 3 Exhibit Redacted application, # 4 Exhibit Redacted Receipt, # 5 Exhibit Affidavit of Immigration Attorney)(Mcclure, Stephanie) (Entered: 09/24/2025) | |
| | 09/25/2025 | Minute Entry for proceedings held before Judge Steven J. McAuliffe: MOTION HEARING as to Mara Morillo held on 9/25/2025 re: 260 MOTION Vacatur Writ of Coram Nobis. Witnesses Appearing: Jeanette Rodriguez, Angelina Morillo, Jonathan Saxe. (Court Reporter: Susan Bateman) (Govt Atty: Matthew Vicinanzo) (Defts Atty: Stephanie Mcclure, Sandra Kuhn)(Total Hearing Time: 1 hr. 20 min.) (lw) (Entered: 09/25/2025) | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | 09/25/2025 | ENDORSED ORDER granting 273 Emergency MOTION to Expedite Order of Vacatur as to Mara Morillo (1). Text of Order: Granted. So Ordered by Judge Steven J. McAuliffe. (lw) (Entered: 09/25/2025) | |
| 279 | 09/26/2025 | ORDER granting 260 MOTION Vacatur Writ of Coram Nobis as to Mara Morillo (1). For the forgoing reasons, as well as those set forth in a Morillo's legal memoranda (document no. 272), the Petition for Writ of Coram Nobis (document no. 260) is granted and Morillo's conviction in United States v. Morillo, no. 15-cr-174-SM-AJ-1, (document no. 207, May 11, 2017) is vacated. Because Morillo's deportation is "imminent," the court has determined that this order must issue immediately. A more detailed opinion explaining the court's legal reasoning will follow in due course. So Ordered by Judge Steven J. McAuliffe. (lw) (Entered: 09/26/2025) | |
| 280 | 10/15/2025 | ORDER re: 260 MOTION Vacatur Writ of Coram Nobis as to Mara Morillo. For the reasons discussed, as well as those set forth in a Morillo's legal memoranda (document no. 272) and the court's prior order on this matter (document no. 279), the court granted Morillo's Petition for Writ of Coram Nobis (document no. 260) and vacated her conviction in United States v. Morillo, no. 15-cr-174-SM-AJ-1. So Ordered by Judge Steven J. McAuliffe. (lw) (Entered: 10/15/2025) | |
| 281 | 10/23/2025 | NOTICE of Appeal of Order Granting Petition for Writ of Coram Nobis by USA as to Mara Morillo. (Vicinanzo, Matthew) (Entered: 10/23/2025) | |
| | 10/23/2025 | NOTICE of ECF Filing Error re: 281 Notice (Other) filed by USA. Filer used wrong event. Filer shall refile using the Other Filings - Appeal Documents - Notice of Appeal event and enter in docket text: Replaces document no. 281. If the filing party has any questions concerning this notice, please contact the judge's case manager at 603-225-1423.Compliance Deadline set for 10/30/2025. (lw) (Entered: 10/23/2025) | |
| 282 | 10/23/2025 | NOTICE OF APPEAL by USA as to Mara Morillo. (No fee paid, USA or IFP.). [NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the Forms & Notices section of the First Circuit website at www.ca1.uscourts.gov, MUST be completed and submitted to the U.S. Court of Appeals for the First Circuit.]NOTICE TO COUNSEL: Counsel should register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf/. Counsel should also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf (Vicinanzo, Matthew) (Entered: 10/23/2025) | |
| 283 | 10/23/2025 | Appeal Cover Sheet as to Mara Morillo re: 282 Notice of Appeal. (lw) (Entered: 10/23/2025) | |
| 284 | 10/23/2025 | Clerk's Certificate transmitting Record on Appeal to US Court of Appeals, documents numbered 279, 280, 282, 283, 284, as to Mara Morillo to USCA re: 282 Notice of Appeal. A copy of the Notice of Appeal mailed to all parties this date. (lw) (Entered: 10/23/2025) | |
| | 10/23/2025 | Appellate Case Number: First Circuit Court of Appeals 25-2027 for 282 Notice of Appeal, filed by USA. (lw) (Entered: 10/23/2025) | |
| 285 | 11/25/2025 | TRANSCRIPT of Proceedings as to Mara Morillo for Motion Hearing held on September 25, 2025. Court of Appeals Docket Number 25-2027. Court Reporter: Susan Bateman, Telephone # 603 225-1453. Transcript is available for public inspection, but may not be copied or otherwise reproduced, at the Clerk's Office for a period of 90 days. Additionally, only attorneys of record and | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | pro se parties with an ECF login and password who purchase a transcript from the court reporter will have access to the transcript through PACER during this 90-day period. If you would like to order a copy, please contact the court reporter at the above listed phone number.NOTICE: Any party who requests an original transcript has 21 days from service of this notice to determine whether it is necessary to redact any personal identifiers and, if so, to electronically file a Redaction Request. Redaction Request Follow Up 12/16/2025. Redacted Transcript Follow Up 12/26/2025. Release of Transcript Restriction set for 2/23/2026. (lw) (Entered: 11/25/2025) | |

Copyright © LexisNexis CourtLink, Inc. All Rights Reserved.
*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

**End of Document**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **No. 1:15-cr-** 174-01-06-SM |
| | ) | |
| **MARA MORILLO,** | ) | |
| **FRANKLYN MORILLO,** | ) | |
| **JUAN ROJAS,** | ) | |
| **JUSTIN BARTIMUS,** | ) | |
| **JORGE MEDINA, and** | ) | |
| **MICHAEL LALLY** | ) | |
| | ) | |

_____

## <u>INDICTMENT</u>

The Grand Jury charges:

### COUNT ONE

[Conspiracy to Distribute, and Possess with Intent to Distribute, Controlled Substances –
21 U.S.C. § 846 and §§ 841(a)(1) and (b)(1)(C)]

Beginning on or about an unknown date, but at least by 2014, and continuing

to at least on or about August 19, 2015, in the District of New Hampshire and elsewhere, the defendants

**MARA MORILLO,**
**FRANKLYN MORILLO,**
**JUAN ROJAS,**
**JUSTIN BARTIMUS,**
**JORGE MEDINA, and**
**MICHAEL LALLY**

knowingly and intentionally combined, conspired, confederated and agreed with each other, and with

other persons known and unknown to the Grand Jury, to distribute, and possess with intent to distribute,

controlled substances, to wit: oxycodone, a Schedule II controlled substance, and cocaine, a Schedule II

**App. 45**

controlled substance.

All in violation of Title 21, United States Code, Sections 846 and 841(a)(1) and (b)(1)(C).

The Grand Jury further charges:

## COUNT TWO

[Distribution of a Controlled Substance – 21 U.S.C. §§ 841(a)(1) and (b)(1)(C)]

On or about December 11, 2014, in the District of New Hampshire, the defendant

## JUSTIN BARTIMUS

knowingly and intentionally distributed a controlled substance, to wit: oxycodone, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

3

The Grand Jury further charges:

## COUNT THREE

[Possession of a Firearm in Furtherance of a Drug Trafficking Crime - 18 U.S.C. § 924(c)(1)(A)]

On or about August 18, 2015, in the District of New Hampshire and elsewhere, the defendant

## JUAN ROJAS

did knowingly possess a firearm in furtherance of a drug trafficking crime for which he may be

prosecuted in a court of the United States, that is, conspiracy to distribute, and possess with intent to

distribute, controlled substances as charged in Count One of this Indictment.

All in violation of Title 18, United States Code, Section 924(c)(1)(A).

4

## **NOTICE OF FORFEITURE**

Upon conviction of the controlled substance offenses alleged in Counts One and Two of this Indictment, the defendants shall forfeit to the United States pursuant to 21 U.S.C. § 853 any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the charged offenses and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the charged offenses, including but not limited to:

$18,108 in US Currency seized from the residence of MARA and FRANKLYN MORILLO.

A sum of money equal to the amount of proceeds obtained as a result of the charged offense, for which the defendants are jointly and severally liable.

Upon conviction of the firearms offense alleged in Count Three of this Indictment, the defendant shall forfeit to the United States pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), any firearms and ammunition involved in the commission of the offenses.

Pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), the defendant shall forfeit substitute property, up to the value of the assets, if, by any act or omission of the defendant, the property described above, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

A TRUE BILL


/s/ Foreperson
Grand Jury Foreperson


DONALD FEITH
Acting United States Attorney


/s/ John J. Farley
John J. Farley
Assistant U.S. Attorney

Dated:   September 23, 2015

6

**App. 50**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

2016 APR 19 P 4: 23

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **No. 15-CR-174-01-SM** |
| | ) | |
| **MARA MORILLO** | ) | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the United States

of America by its attorney, Emily Gray Rice, the United States Attorney for the District of New

Hampshire, and the defendant, Mara Morillo, and the defendant's attorney, Jonathan Saxe,

Esquire, enter into the following Plea Agreement:

1. **The Plea and The Offense**.

The defendant agrees to plead guilty to Count One of the Indictment, which charges her

with Conspiracy to Distribute, and Possess with Intent to Distribute, Controlled Substances, in

violation of 21 U.S.C. § 846.

In exchange for the defendant's guilty plea, the United States agrees to the sentencing

stipulation identified in paragraph 6 of this agreement.

2. **The Statute and Elements of the Offense.**

Title 21, United States Code, Section 846 provides, in pertinent part:

Any person who attempts or conspires to commit any offense defined in this
subchapter shall be subject to the same penalties as those prescribed for the offense,
the commission of which was the object of the attempt or conspiracy.

18 U.S.C. § 846 (West 2015).

The defendant understands that the offense has the following elements, each of which the

United States would be required to prove beyond a reasonable doubt at trial:

First, that the agreement specified in the indictment, and not some other agreement or

**App. 51**

agreements, existed between at least two people to distribute or possess with intent to distribute, controlled substances; and

Second, that the defendant willfully joined in that agreement.

Pattern Jury Instructions: First Circuit Criminal Cases, Instruction 4.03 (1998).

3. **Offense Conduct**.

The defendant stipulates and agrees that, if this case proceeded to trial, the government would prove the following facts beyond a reasonable doubt:

Law enforcement officers began an investigation of a group of drug traffickers operating in Massachusetts and New Hampshire in 2014. As part of that investigation, investigators used multiple cooperating individuals. The cooperating individuals made several controlled drug purchases as part of the investigation. The cooperators generally were equipped with recording devices and were under surveillance during the transactions. Additionally, telephone conversations involving the cooperators generally were recorded.

On November 21, 2014, a confidential source ("CS") met with codefendant Justin Bartimus and purchased approximately 10 30-milligram oxycodone pills from him in Haverhill, Massachusetts. Prior to the transaction, Drug Enforcement Administration ("DEA") surveillance units observed Bartimus leave the vicinity of the defendant's residence on Farrwood Drive in Haverhill, Massachusetts ("the Farrwood Drive residence"). The defendant shared this residence with her husband, Franklyn Morillo.

The CS made additional purchases from Bartimus:

| Date | Location | Quantity |
|------|----------|----------|
| November 25, 2014 | Haverhill, MA | 20 oxycodone pills |
| December 11, 2014 | Salem, NH | 20 oxycodone pills |

2

**App. 52**

January 15, 2015          Methuen, MA          50 oxycodone pills

February 10, 2015         Methuen, MA          50 oxycodone pills

During the transaction on January 15, 2015, Bartimus stated that he had three phones, one for family, one for business, and one for his boss.   He stated that he sold hundreds of pills a day and was paid by his boss once a week.   After the transaction, law enforcement officers conducted surveillance of Bartimus and observed him leave his residence in Methuen and travel in a vehicle to the Farrwood Drive residence.

On February 17, 2015, law enforcement officers executed a state search warrant at Bartimus' residence on Young Farm Road in Methuen, Massachusetts.   Among the items seized were quantities of marijuana, diazepam, and barbiturates, along with drug ledgers, packaging materials, and a scale.   Bartimus, who was present during the search, signed a consent form and agreed to a search of his three cellular phones which were seized from his person and his vehicle. On the three phones, there were numerous communications that were drug-related, including communications between Bartimus and the defendant.

On February 25, 2015, a different CS travelled to the Farrwood Drive residence and purchased 11 oxycodone pills from the defendant.   During the meeting, the defendant and Franklyn Morillo discussed their drug trafficking activities with the CS.   All further transactions involved this second CS.

On March 6, 2015, the CS purchased 45 oxycodone pills from the defendant at the Farrwood Drive residence.   Bartimus was present during the transaction

On April 2, 2015, the CS went to the Farrwood Drive residence in an effort to purchase a quantity of oxycodone pills.   Franklyn Morillo advised the CS that the defendant was not home

3

**App. 53**

and placed a call to the defendant.    Franklyn Morillo then contacted Bartimus who delivered approximately 33 oxycodone pills to the CS at the Farrwood Drive residence.

On April 9, 2015, the CS purchased approximately 46 oxycodone pills from the defendant at the Farrwood Drive residence.    Franklyn Morillo was present during the transaction.

Subsequently, from late May of 2015, through August of 2015, law enforcement officers obtained court authorization to intercept the wire and electronic communications of several individuals, including the defendant and Franklyn Morillo.    While some communications were in English, other communications were in Spanish and were later translated into English by individuals who were fluent in both languages.    During many conversations, the defendants used coded language to refer to their drug trafficking activities.

During the course of the wiretap portion of the investigation, the defendant and Franklyn Morillo were intercepted having numerous discussions related to obtaining and distributing quantities of oxycodone and cocaine.    Intercepted calls indicated that they often obtained hundreds of oxycodone pills at a time, as well as ounce quantities of cocaine.    The calls included conversations in which they arranged to obtain cocaine and oxycodone from Juan Rojas, calls in which they arranged to provide drugs to Bartimus for redistribution, and calls in which they arranged to provide oxycodone pills to Michael Lally.    During the investigation, Franklyn Morillo and the defendant were observed operating a Mercedes bearing New Hampshire tags and registered in the name of Lally.

For example, on May 29, 2015, the defendant spoke with Rojas about obtaining several ounces of cocaine and approximately 300 oxycodone pills.    Later that day, Jorge Medina spoke with the defendant and asked if she could obtain 500 oxycodone pills from one of their sources.

4

**App. 54**

Surveillance officers observed Rojas and Medina at the Farrwood Drive residence that day.

Later that day, the defendant instructed Bartimus to meet with a drug customer (operating a vehicle with New Hampshire tags) who would be coming to the residence.   Both Bartimus and the customer were observed by surveillance officers.   Later intercepted calls on May 31, 2015, suggested that the customer may have become sick from taking the drugs.   The defendant discussed this issue with Franklyn Morillo and changed her cell phone shortly after the incident.

On August 19, 2015, law enforcement officers executed a search warrant at the Farrwood Drive residence.   Among the items recovered were $18,108 in U.S. currency and a quantity of cocaine.   The defendant and Franklyn Morillo were present, but were not arrested.   Both were advised of their *Miranda* rights.   They admitted that they had been trafficking in narcotics for several years.   They identified a prior source of supply (who is incarcerated).   They stated that they got ounce quantities of cocaine and several hundred pills at a time from that source.   They also acknowledged that they obtained 50 grams of cocaine per week from Juan Rojas, as well as 200 to 300 pills per month.   They admitted obtaining 100 grams of cocaine per week from another source, as well as occasional quantities of pills (up to 500 pills) from that source. They also identified an additional source who would supply from 300 to 500 pills..

The defendant and Franklyn Morillo admitted that they operated a motor vehicle in the name of Michael Lally and that they had an arrangement with Lally in which they would provide him with drugs in exchange for his agreement to register and insure the vehicle.   They stated that Bartimus had worked for them for over a year and was paid $300 per week.   They acknowledged that Medina also picked up drugs at their residence.   They further acknowledged that the money recovered from their residence constituted the proceeds of drug trafficking.

The defendant was arrested on October 1, 2015, at the Farrwood Drive residence.   During

**App. 55**

a consensual search of the residence, agents located approximately 50 oxycodone pills in a hidden

compartment in a door.   They also recovered $2,120 in U.S. Currency.

In a post-arrest, post-*Miranda* statement, the defendant admitted that she and Franklyn had

obtained oxycodone pills and cocaine from multiple sources and distributed them to multiple

customers.

4. **Penalties, Special Assessment and Restitution**.

The defendant understands that the penalties for the offense are:

A.      A maximum prison term of twenty (20) years;

B.      A maximum fine of $1,000,000 (21 U.S.C. § 841(b)(1)(C)); and

C.      A term of supervised release of at least three years.   The defendant
understands that the defendant's failure to comply with any of the conditions of
supervised release may result in revocation of supervised release, requiring the
defendant to serve in prison all or part of the term of supervised release, with no
credit for time already spent on supervised release (18 U.S.C. § 3583).

The defendant also understands that she will be required to pay a special assessment of

$100 at or before the time of sentencing; and that the Court may order her to pay restitution to the

victim of the offense, pursuant to 18 U.S.C. § 3663 or § 3663A.

5. **Sentencing and Application of the Sentencing Guidelines**.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and

that the Court is required to consider the United States Sentencing Guidelines as advisory

guidelines.   The defendant further understands that she has no right to withdraw from her guilty

plea if the applicable advisory guideline range or her sentence is other than she anticipated, except

as expressly provided in this Plea Agreement.

The defendant also understands that the United States and the United States Probation

Office shall:

6

**App. 56**

A.  Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

B.  Respond to questions from the Court;

C.  Correct any inaccuracies in the pre-sentence report;

D.  Respond to any statements made by her or her counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range within the advisory Sentencing Guidelines that she may have received from any source is only a prediction and not a promise, and is not binding on the United States, the Probation Office, or the Court, except as expressly provided in this Plea Agreement.

6. **Sentencing Stipulations and Agreements**.

Pursuant to Fed. R. Crim. 11(c)(1)(C), the parties agree to the following specific offense characteristic under the advisory Sentencing Guidelines:

1. The defendant's base offense level is 30 pursuant to U.S.S.G. § 2D1.1(a).

The parties intend the above stipulation to be "binding" under Fed. R. Crim. P. 11(c)(1)(C). By using the word binding the parties mean that if the Court will not accept the plea agreement under Fed. R. Crim. P. 11(c)(3)(A), the plea agreement is null and void and the defendant will be allowed the opportunity to withdraw her guilty plea.

The parties have no other agreements regarding the applicability of other guideline enhancements or reductions.  The parties are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and

7

**App. 57**

appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

**7.   Acceptance of Responsibility**.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense. The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

A.   Fails to admit a complete factual basis for the plea at the time she is sentenced or at any other time;

B.   Challenges the United States' offer of proof at any time after the plea is entered;

C.   Denies involvement in the offense;

D.   Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

E.   Fails to give complete and accurate information about her financial status to the Probation Office;

F.   Obstructs or attempts to obstruct justice, prior to sentencing;

G.   Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

H.   Fails to appear in court as required;

I.   After signing this Plea Agreement, engages in additional criminal conduct; or

J.   Attempts to withdraw her guilty plea.

The defendant understands and agrees that she may not withdraw her guilty plea if, for any of the reasons listed above, the United States does not recommend that she receive credit for

**App. 58**

acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the offense level if it finds that she has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and she has assisted the United States in the investigation or prosecution of her own misconduct by timely notifying the United States of her intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

8.  **Waiver of Trial Rights and Consequences of Plea**.

The defendant understands that she has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent her.   The defendant also understands that she has the right:

A.      To plead not guilty or to maintain that plea if it has already been made;

B.      To be tried by a jury and, at that trial, to the assistance of counsel;

C.      To confront and cross-examine witnesses;

D.      Not to be compelled to provide testimony that may incriminate her; and

E.      To compulsory process for the attendance of witnesses to testify in her defense.

The defendant understands and agrees that by pleading guilty she waives and gives up the foregoing rights and that upon the Court's acceptance of her guilty plea, she will not be entitled to a trial.

The defendant understands that if she pleads guilty, the Court may ask her questions about

the offense, and if she answers those questions falsely under oath, on the record, and in the presence of counsel, her answers will be used against her in a prosecution for perjury or making false statements.

9. **Acknowledgment of Guilt; Voluntariness of Plea**.

The defendant understands and acknowledges that she:

A.   Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because she is guilty;

B.   Is entering into this Plea Agreement without reliance upon any promise of benefit of any kind except as set forth in this Plea Agreement;

C.   Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

D.   Understands the nature of the offense to which she is pleading guilty, including the penalties provided by law; and

E.   Is completely satisfied with the representation and advice received from her undersigned attorney.

10. **Scope of Agreement**.

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-party federal, state or local authority.   The defendant also acknowledges that no representations have been made to her about any civil or administrative consequences that may result from her guilty plea.   The defendant understands such matters are solely within the discretion of the specific non-party government agency involved.   The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

**App. 60**

11.  **Collateral Consequences**.

The defendant understands that as a consequence of her guilty plea she will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.   The defendant also understands that if she is not a citizen of the United States, she may be removed from the United States, denied citizenship, and denied admission to the United States in the future as a consequence of her conviction.

12.  **Satisfaction of Federal Criminal Liability; Breach**.

The defendant's guilty plea, if accepted by the Court, will satisfy her federal criminal liability in the District of New Hampshire arising from her participation in the conduct that forms the basis of the indictment in this case.   The defendant understands that if, before sentencing, she violates any term or condition of this Plea Agreement, engages in any criminal activity, or fails to appear for sentencing, the United States may consider such conduct to be a breach of the Plea Agreement and may withdraw therefrom.

13.    **Waivers.**

A.    **Appeal**.

The defendant understands that she has the right to challenge her guilty plea and/or sentence on direct appeal.   By entering into this Plea Agreement the defendant knowingly and voluntarily waives her right to challenge on direct appeal:

1.    Her guilty plea and any other aspect of her conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; and

2.    All aspects of the sentence imposed by the Court if that sentence is the stipulated sentence or within the stipulated sentencing range specified in section 6 of this agreement.

11

The defendant's waiver of her rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

B. **Collateral Review**

The defendant understands that she may have the right to challenge her guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255. By entering into this Plea Agreement, the defendant knowingly and voluntarily waives her right to collaterally challenge:

1. Her guilty plea, except as provided below, and any other aspect of her conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; and

2. All aspects of the sentence imposed by the Court if that sentence is the stipulated sentence or within the stipulated sentencing range specified in section 6 of this agreement.

The defendant's waiver of her right to collateral review does not operate to waive a collateral challenge to her guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel. The defendant's waiver of her right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated by in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

C. **Freedom of Information and Privacy Acts**

The defendant hereby waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of the case underlying this Plea Agreement,

12

**App. 62**

including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 522a.

### D.    **Appeal by the Government**

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government pursuant to pursue an appeal as authorized by law.

### 14.    **No Other Promises**.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

### 15.    **Final Binding Agreement**.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

13

16. **Agreement Provisions Not Severable.**

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

EMILY GRAY RICE
United States Attorney

Date: 4/18/16

By: _____
John J. Farley
Assistant U.S. Attorney
53 Pleasant St., 4th Floor
Concord, NH 03301
(603) 225-1552
John.Farley@usdoj.gov

The defendant, Mara Morillo, certifies that she has read this 14-page Plea Agreement and that she fully understands and accepts its terms.

Date: 04 - 15 - 16.

_____
Mara Morillo, Defendant

I have read and explained this 14-page Plea Agreement to the defendant, and she has advised me that she understands and accepts its terms.

Date: 4/15/16

_____
Jonathan Saxe, Esq.
Attorney for Mara Morillo

14

**App. 64**

*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO OCTOBER 9, 2025

```
                    UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW HAMPSHIRE


  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
                                        *
UNITED STATES OF AMERICA                *
                                        *  1:15-cr-174-SM-AJ-1
              v.                        *  May 11, 2016
                                        *  10:11 a.m.
MARA MORILLO                            *
                                        *
  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

              TRANSCRIPT OF CHANGE OF PLEA HEARING
           BEFORE THE HONORABLE STEVEN J. MCAULIFFE


Appearances:


For the Government:      John J. Farley, AUSA
                         United States Attorney's Office



For the Defendant:       Jonathan R. Saxe, Esq.
                         Federal Defender's Office



Probation Officer:       Jennafer McNutt



Court Reporter:          Liza W. Dubois, RMR, CRR
                         Official Court Reporter
                         United States District Court
                         55 Pleasant Street
                         Concord, New Hampshire 03301
                         (603)225-1442

2

P R O C E E D I N G S

1

2         THE CLERK:  Court is in session and has for

3    consideration a change of plea in the matter of United States

4    of America vs. Mara Morillo, case number 15-cr-174-01-SM.

5         THE COURT:  Okay.  Mr. Saxe, you and Ms. Morillo

6    should feel free to remain seated during the plea colloquy.

7         Ms. Morillo, it's going to be necessary for me to

8    ask you a number of questions about your change in plea.  What

9    we say is being tape-recorded and it's being taken down by the

10   court stenographer, who's sitting off to my left.  You are

11   required to answer my questions out loud so that we can make a

12   record.

13        If at any time you don't understand a question I

14   ask, you should feel free to ask me to explain it or ask

15   Mr. Saxe to explain it for you.

16        In addition, the Court is entitled to truthful

17   answers to all of its questions and, for that reason, I'm going

18   to have you placed under oath.  You should understand that if

19   you do not answer my questions truthfully, you could be

20   exposing yourself to further prosecution for perjury or making

21   a false statement.  Do you understand?

22        THE DEFENDANT:  Uh-huh.  Yes.

23        THE COURT:  All right.  I'd ask the deputy clerk to

24   please swear the defendant.

25        THE CLERK:  Please stand and raise your right hand.

3

```
 1                    (Sworn by the deputy clerk.)
 2              THE CLERK:  Thank you.  Please be seated.
 3              THE COURT:  All right.  Ms. Morillo, would you
 4    please state your full name.
 5              THE DEFENDANT:  Mara Morillo.
 6              THE COURT:  And how old are you?
 7              THE DEFENDANT:  40.
 8              THE COURT:  What's your educational background?
 9              THE DEFENDANT:  Part of college.
10              THE COURT:  Have you ever been treated for any
11    mental illness or addiction to any narcotic drugs of any kind?
12              THE DEFENDANT:  Treatment?  I'm in treatment right
13    now.
14              THE COURT:  What kind of -- what kind of treatment?
15              THE DEFENDANT:  Because I suffer from panic attacks.
16              THE COURT:  From what?
17              THE DEFENDANT:  Panic attacks.
18              THE COURT:  What is it?
19              MR. SAXE:  Panic attacks.
20              THE COURT:  Oh, panic attacks.  I'm sorry.
21              Are you taking any medication for that?
22              THE DEFENDANT:  (Nods head.)
23              THE COURT:  What are you taking?
24              THE DEFENDANT:  Prozac.
25              THE COURT:  Prozac.  Okay.  Does that, in your view,
```

4

```
1   in any way affect your ability to understand the nature of

2   these proceedings or cooperate with counsel in any way?

3               THE DEFENDANT:  No.

4               THE COURT:  Okay.  Are you under the influence of

5   any other medications or drugs or alcoholic beverages this

6   morning?

7               THE DEFENDANT:  No.

8               THE COURT:  Have you received a copy of the

9   indictment in this case, that is, the written charges brought

10  against you by the government?

11              THE DEFENDANT:  Yes.

12              THE COURT:  Have you fully discussed the charges

13  reflected in that indictment, any available defenses you might

14  have, and the case in general with Mr. Saxe?

15              THE DEFENDANT:  Yes.

16              THE COURT:  Okay.  I've been advised that it's your

17  intention this morning to plead guilty to Count One of the

18  indictment, which charges you with conspiracy to distribute and

19  to possess with the intent to distribute controlled substances,

20  that is, oxycodone and cocaine.

21              If this case were to go to trial, in order to obtain

22  a conviction on Count One, the government would be required to

23  prove by competent evidence and beyond a reasonable doubt the

24  following essential elements:

25              First, the government would have to prove that there
```

5

```
 1   was an agreement, understanding, or conspiracy between or among

 2   two or more people to distribute and to possess with the intent

 3   to distribute controlled substances, in this case, oxycodone

 4   and cocaine.

 5           Next, the government would have to prove that you,

 6   being aware of that agreement or understanding or conspiracy

 7   and its criminal purposes, knowingly and intentionally and

 8   willfully joined in that conspiracy, agreement, or

 9   understanding.

10           And, finally, the government would have to prove

11   that you had the specific intent to accomplish or assist in

12   accomplishing the conspiracy's unlawful goals, that is, to

13   possess with the intent to distribute and to distribute the

14   controlled substances.

15           Do you understand what I've just explained to you?

16           THE DEFENDANT:  Yes.

17           THE COURT:  All right.  Mr. Farley, would you please

18   make a factual proffer as to what the government would be

19   prepared to prove if the case did go to trial.

20           MR. FARLEY:  Your Honor, there is a written

21   statement of offense conduct that begins on page 2 of the plea

22   agreement.  I'm not going to read that verbatim but will

23   summarize those facts, your Honor.

24           THE COURT:  Okay.

25           MR. FARLEY:  Beginning in 2014, law enforcement
```

6

1    officers began conducting an investigation of drug trafficking

2    activity in northern Massachusetts and southern New Hampshire.

3            As part of that investigation, they used a

4    cooperating individual to make a series of controlled purchases

5    from an individual named Justin Bartimus.  Those transactions

6    took place both in Massachusetts and one took place in Salem,

7    New Hampshire.  And they took place between November and -- of

8    2014 and February of 2015.

9            During one of those transactions, the cooperating

10   individual, who was equipped with a recording device, engaged

11   in conversation with Mr. Bartimus.  Mr. Bartimus described how

12   he had a boss who paid him to distribute quantities of pills,

13   sometimes hundreds of pills per day.  Based on surveillance and

14   other information gathered in the investigation, the

15   government's position at a trial would be that that boss was

16   Ms. Morillo.

17           There was a search warrant conducted at

18   Mr. Bartimus's residence in Methuen in February of 2015.  Among

19   the items that were recovered that day were some cell phones

20   that Mr. Bartimus used and a review of the contents of those

21   cell phones show contact -- drug-related contact between

22   Mr. Bartimus and the defendant.

23           Subsequent to that, the government obtained an

24   additional cooperating individual who made several controlled

25   drug purchases from the defendant at her residence in

**App. 70**

1    Haverhill, Massachusetts.  There were a series of transactions

2    between February and April in which the cooperator purchased

3    quantities of oxycodone pills from the defendant at her

4    residence in -- on Farrwood Drive in Haverhill, Massachusetts.

5              As the investigation continued, law enforcement

6    officers obtained wiretap -- authorizations for wiretaps for

7    the defendant's -- telephones used by the defendant.

8    Intercepted telephone -- telephone conversations involving the

9    defendant showed that she was making arrangements to obtain

10   quantities of oxycodone and quantities of cocaine, which were

11   then being distributed to other individuals.

12             For example, on May the 29th, 2015, there were

13   intercepted conversations between the defendant and others in

14   which she arranged to obtain quantities of pills and also

15   directed Mr. Bartimus to provide some of those to a customer

16   who arrived to pick them up in a vehicle that had New Hampshire

17   plates.

18             As the investigation continued, there came a time in

19   August of 2015 when the defendant -- when the defendant's

20   residence on Farrwood Drive in Haverhill was searched.  During

21   the course of that search, over $18,000 in U.S. currency was

22   recovered and the defendant made statements in which she

23   admitted that she, as well as others, had been involved in the

24   distribution -- in acquiring and distributing quantities of

25   both oxycodone and cocaine for a substantial period of time.

8

```
 1              And she described how a Mercedes-Benz vehicle that
 2   she was operating, along with her husband, Franklyn Morrillo
 3   was operating, that had New Hampshire tags and was registered
 4   in the name of codefendant Michael Lally was being operated --
 5   that they were -- they had obtained access to that by providing
 6   quantities of pills to Mr. Lally in exchange for him allowing
 7   the vehicle to be registered in his name.
 8              THE COURT:  Okay.  Thank you, Mr. Farley.
 9              Ms. Morillo, is what the government's attorney just
10   said true and correct?
11              THE DEFENDANT:  Yes.
12              THE COURT:  Are you pleading guilty this morning
13   because you are, in fact, guilty?
14              THE DEFENDANT:  Yes.
15              THE COURT:  My review the terms of your written plea
16   agreement with the government suggests that in exchange for
17   your plea of guilty to Count One of the indictment, the
18   government has agreed not to oppose an appropriate reduction in
19   the otherwise applicable guideline sentencing range based upon
20   your prompt recognition and acceptance of responsibility in
21   this case.
22              You and the government have also entered into an
23   agreement or stipulation to the effect that the base offense
24   level applicable in your case under the sentencing guidelines
25   is level 30.  And you've also, under the terms of your plea
```

1  agreement, you're agreeing to waive or give up your right to

2  file either a direct appeal or a subsequent collateral

3  challenge to your conviction or sentence in this case but with

4  four notable exceptions.

5          You'll reserve the right to file either a direct

6  appeal or a subsequent collateral challenge, for example, by

7  way of a habeas corpus petition, on grounds that your plea of

8  guilty was not providently entered here this morning, that is,

9  was not knowing, voluntarily or intelligent; or on grounds that

10 counsel provided constitutionally deficient representation; or

11 in the event that the Court of Appeals for the First Circuit

12 located in Boston or the United States Supreme Court, if either

13 court were to issue an opinion establishing a new principle of

14 law that was applicable to your case and entitled you to some

15 relief, you'd be allowed to appeal or otherwise challenge your

16 conviction or sentence on that ground; and, finally, if the

17 Court were to sentence you to a period of incarceration or to a

18 sentence more severe than that recommended by the sentencing

19 guidelines, you'd be allowed to appeal or otherwise challenge

20 your sentence.

21          Are those generally the terms of the plea agreement

22 as you understand them?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Have you reviewed each term of the

25 written plea agreement with Mr. Saxe?

```
1              THE DEFENDANT:  Yes.
2              THE COURT:  Do you understand that the offense to
3    which you're pleading guilty this morning is a felony offense
4    and that if I accept your plea, you will be found guilty of
5    that offense based upon your plea alone?
6              THE DEFENDANT:  Yes.
7              THE COURT:  Do you understand that an adjudication
8    of guilty of a felony offense might operate to deprive you of
9    valuable civil rights, such as the right to vote, the right to
10   serve on a jury, the right to hold public office, and,
11   significantly, the right to possess any type of firearm?
12             THE DEFENDANT:  Yes.
13             THE COURT:  Based upon your plea of guilty,
14   Ms. Morillo, you could be exposing yourself to imposition of a
15   statutorily authorized sentence that could include up to 20
16   years in prison, a period of supervised release of at least
17   three years.  Supervised release is a period of time following
18   any imprisonment during which your conduct would be subject to
19   restrictions or conditions.  If you violate those conditions or
20   restrictions, you could be brought back to court and
21   conceivably sent back to prison for the full amount of
22   supervised release imposed.
23             In addition, you're exposing yourself to a fine of
24   up to $1 million and a nonwaivable special assessment of $100.
25             Do you understand the possible consequences of your
```

1    guilty plea in terms of a statutorily authorized sentence?

2             THE DEFENDANT:  Yes.

3             THE COURT:  Nevertheless, Ms. Morillo, under the

4    Sentencing Reform Act of 1984, the United States Sentencing

5    Commission has issued guidelines that judges are required to

6    consider before imposing sentences in criminal cases.

7             Have you and Mr. Saxe discussed how the -- how the

8    Commission's guidelines might be applied in your case?

9             THE DEFENDANT:  Yes.

10            THE COURT:  Do you understand that I won't be able

11   to determine the applicable guideline sentencing range in your

12   case until after a presentence investigation report has been

13   prepared by the probation officer and until after both you and

14   the government have had an opportunity to challenge any facts

15   reported by that officer?

16            THE DEFENDANT:  Yes.

17            THE COURT:  Do you also understand that after it's

18   been determined what guideline range applies in a particular

19   case, the judge still has the authority to impose a sentence

20   that's either more severe or less severe than that called for

21   by the guidelines?

22            THE DEFENDANT:  Yes.

23            THE COURT:  Do you also understand that if the

24   sentence in your case turns out to be more severe than you

25   currently expect it might be, you'll still be bound by your

**App. 75**

1    plea of guilty and you'll have no right to withdraw it?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Okay.  There's one -- there's one caveat

4    there.  Again, I'm not sure I completely understand the

5    stipulation, but you and the government have entered into

6    what's known as a binding stipulation, meaning as between you

7    and the government you have an agreement that the base offense

8    level under the sentencing guideline calculation should be 30.

9    I don't know if it's 30 or not 30.  The probation officer will

10   do an analysis and make a recommendation.  I'll consider it.

11   We'll see.  It's going to be what it's going to be.

12             But under the terms of your agreement, if it's more

13   than 30, I gather, since that's the agreement, the base offense

14   level is more than 30, then I will give you an opportunity to

15   withdraw your guilty plea, but you won't have any -- you won't

16   be able to withdraw it for any other reason.  Do you

17   understand?

18             THE DEFENDANT:  Yes.

19             THE COURT:  All right.  So I'm not sure how this --

20   I'm sure you have in mind how this is supposed to work, but if

21   your base offense level, say, just speculating, turned out to

22   be 32, but the other adjustments -- there were other downward

23   adjustments that reduced it to 25, you'd still be allowed to

24   withdraw your guilty plea because the base offense level would

25   be more than 30.

1          THE DEFENDANT:  Okay.

2          THE COURT:  Do you understand?

3          THE DEFENDANT:  Oh, okay.  Yes.

4          THE COURT:  On the other hand, if the base offense

5    level is 30 and there are many other adjustments that drive it

6    up to 42, you wouldn't be allowed to withdraw your guilty plea

7    because the base offense level was 30.

8          So that I don't -- I'm not sure there's some

9    correlation between the base offense level and what the

10   ultimate sentencing guideline will be because that will depend

11   on all kinds of adjustments upward and downward and potentially

12   departures and --

13         But, counsel, you guys understand you've agreed to

14   simply what the base offense level is, the jumping off point.

15         MR. FARLEY:  This is simply with respect to the drug

16   quantity that would be involved, your Honor.  There's no

17   agreement with respect to other adjustments and you're correct

18   in your description of how it --

19         THE COURT:  Yeah.  All you've agreed to is a base

20   offense level of 30.  And it may or may not be 30, but whether

21   it's 30 or not, if it is 30, that doesn't necessarily bear some

22   relationship to what the ultimate range is going to be.

23         Do you understand?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Okay.  So all this agreement is is if

14

1    that probation officer says it comes out to base offense level

2    30 and I say, okay, it is base offense level 30, whatever else

3    happens in terms of calculating that guideline sentence is

4    irrelevant in terms of your withdrawing your plea.  Do you

5    understand?

6                    THE DEFENDANT:  Yes.

7                    THE COURT:  Okay.  All right.  I'll defer a decision

8    on whether to accept the stipulation under Rule 11(c)(1)(C)

9    until the time of the sentencing.

10                   Do you understand, Ms. Morillo, that you have a

11   constitutional right to plead not guilty to any offense charged

12   against you and to persist in that plea?

13                   THE DEFENDANT:  Yes.

14                   THE COURT:  Do you understand that you have a

15   constitutional right to a trial by jury during which you would

16   have the right to the assistance of counsel to act in your

17   defense, the right to see and hear all witnesses and have them

18   cross-examined in your defense, the right on your own part to

19   decline to testify unless you voluntarily elected to do so, and

20   the right to the issuance of subpoenas or compulsory process to

21   assure the attendance of witnesses to testify in your defense.

22   Do you understand you have all those rights?

23                   THE DEFENDANT:  Yes.

24                   THE COURT:  Do you also understand that if you chose

25   to go to trial in this case, you would not be required to prove

**App. 78**

1  that you're innocent.  Rather, it would be the obligation of

2  the government to prove your guilt by competent evidence and

3  beyond a reasonable doubt with respect to each of the essential

4  elements of the offense charged against you.

5           THE DEFENDANT:  Yes.

6           THE COURT:  Do you understand that by pleading

7  guilty, you are, in fact, giving up your right to a trial in

8  which 12 jurors would be required to unanimously agree upon

9  your guilt or innocence?

10          THE DEFENDANT:  Yes.

11          THE COURT:  If instead of pleading guilty,

12 Ms.  Morillo, you went to trial and the jury found you guilty

13 of the offense charged in Count One, ordinarily you'd have an

14 automatic right to appeal your case to the United States Court

15 of Appeals for the First Circuit located in Boston.  And if

16 that court affirmed a finding of guilt, ordinarily you'd have a

17 further right to appeal your case to the United States Supreme

18 Court by way of a petition for certiorari.  Do you understand,

19 however, that by pleading guilty this morning, for all

20 practical purposes, you're giving up your right to appeal any

21 matter of substance?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Do you also understand that by entering

24 a plea of guilty, if I accept that plea, there will be no

25 trial; you will have waived or given up your right to a trial

1    as well as all those other rights associated with the trial

2    that we've just discussed?

3              THE DEFENDANT:  Yes.

4              THE COURT:  With each of the rights that I've

5    outlined for you in mind, Ms. Morillo, is it, in fact, your

6    wish to give those rights up by entering a plea of guilty

7    rather than go to trial in this case?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Have there been any threats made by

10   anyone against you, any member of your family, or anyone near

11   and dear to you that are compelling you to plead guilty?

12             THE DEFENDANT:  No.

13             THE COURT:  Has anyone made you any promises of

14   leniency or provided any other inducement of any kind for you

15   to plead guilty other than the statements contained in the

16   written plea agreement that we discussed earlier?

17             THE DEFENDANT:  No.

18             THE COURT:  And also I have counsel's letter with

19   respect to that as well.

20             THE DEFENDANT:  Okay.

21             THE COURT:  I guess, Mr. Farley, you can have that

22   back.

23             Do you understand, Ms. Morillo, that all that will

24   be left in your case if I accept your plea will be the

25   imposition of sentence, which could include a period of

1    imprisonment?

2              THE DEFENDANT:  Yes.

3              THE COURT:  And, Mr. Saxe, have you reviewed with

4    Ms. Morillo the charge to which she's pleading guilty this

5    morning?

6              MR. SAXE:  Yes, your Honor.

7              THE COURT:  And have you reviewed each paragraph of

8    the written plea agreement with Ms. Morillo?

9              MR. SAXE:  Yes.

10             THE COURT:  Ms. Morillo, do you feel you've had

11   enough time to fully discuss your case with Mr. Saxe before

12   offering your plea this morning?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Are you satisfied with the

15   representation provided and the advice given you in this case

16   by Mr. Saxe?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Yes, Mr. Farley.

19             MR. FARLEY:  Your Honor, I'm sorry to interrupt.

20             There was one other inquiry I'd ask the Court to

21   make, which is with respect to the collateral immigration

22   consequences of this conviction on the defendant.

23             THE COURT:  Okay.  Are you a citizen?  You're not a

24   citizen of the United States?

25             THE DEFENDANT:  No.

1          THE COURT:  All right.  Do you understand that a

2     conviction, pursuant to your plea of guilty, could result in

3     immigration consequences that may include deportation?  Do you

4     understand that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Do you understand, in other words, by

7     admitting this offense and then subsequently being convicted,

8     that conviction may be taken into account by the government in

9     determining whether or not to deport you?  Do you understand

10    that?

11         THE DEFENDANT:  Yes.

12         THE COURT:  I'm sorry.  Are you -- are you satisfied

13    with the representation provided by Mr. Saxe and the advice

14    given you in this case by Mr. Saxe?

15         THE DEFENDANT:  Yes.

16         THE COURT:  After discussing the matter fully with

17    Mr. Saxe, and based upon your own knowledge of the facts of the

18    case, are you satisfied that it's in your best interest to

19    plead guilty rather than go to trial?

20         THE DEFENDANT:  Yes.

21         THE COURT:  All right.  Mr. Saxe, with your express

22    permission and, Ms. Morillo, with your express permission, I'm

23    willing to waive reading of Count One of the indictment.

24         Is that satisfactory to you, Mr. Saxe?

25         MR. SAXE:  Yes, it is.

1          THE COURT:  Is that satisfactory to you as well,

2    Ms. Morillo?

3          THE DEFENDANT:  Yes.

4          THE COURT:  All right.  Nevertheless, I'd ask you to

5    please draw your attention to Count One of the indictment

6    charging you with conspiracy to distribute and to possess with

7    the intent to distribute controlled substances, specifically,

8    oxycodone and cocaine.

9          With respect to Count One, Ms. Morillo, how do you

10   plead, guilty or not guilty?

11         THE DEFENDANT:  Guilty.

12         THE COURT:  The Court, having questioned the

13   defendant and her counsel on the offer of her plea of guilty,

14   the defendant and her counsel having advised the Court that

15   they have conferred concerning the offered plea and all aspects

16   of the charges against the defendant and any defenses she may

17   have, and the Court having observed this defendant making her

18   answers, her demeanor and manner while answering questions, her

19   apparent intelligence and her attitude, and the Court having

20   observed that this defendant does not appear to be under the

21   influence of any medications, drugs, or other substances which

22   might be adversely affecting her judgment in any manner, the

23   Court hereby finds that the defendant's plea of guilty does

24   have a factual basis, is free of any coercive influence of any

25   kind, is competently and voluntarily made with full knowledge

1    of the charges against her and the consequences of her plea,

2    that there have been no promises of any kind made to her by

3    anyone apart from the statements set out in the written plea

4    agreement which has been filed with the Court, and, finally,

5    that no threats or coercion have been exerted upon her in any

6    manner.

7                    The plea agreement does contain a stipulation with

8    respect to the -- the appropriate base offense level under the

9    sentencing guidelines and I'll defer a decision on whether to

10   accept that stipulation till the time of sentencing.

11                   It is accordingly hereby ordered that the plea of

12   guilty is accepted and, Ms. Morillo, you are now adjudged

13   guilty of the offense set out in Count One of the indictment.

14                   A date has been set for sentencing.  It's August 30,

15   2016, at 10:00 a.m.  August 30th, 2016, at 10:00 a.m.

16                   The defendant shall continue to be detained pending

17   sentencing.

18                   Court's adjourned.  Thank you.

19                   THE CLERK:  All rise.

20                   (Proceedings concluded at 10:31 a.m.)

21

22

23

24

25

C E R T I F I C A T E


        I, Liza W. Dubois, do hereby certify that

the foregoing transcript is a true and accurate transcription

of the within proceedings, to the best of my knowledge, skill,

ability and belief.


Submitted: 7/11/25          /s/  Liza W. Dubois
                            LIZA W. DUBOIS, RMR, CRR

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

_____     )
                                                            )
UNITED STATES OF AMERICA     )
                                                            )
V.                                                          )     NO. 15-CR-00174-SM
                                                            )
MARA MORILLO                          )
                                                            )
_____     )

## DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A VARIANCE

Morillo has been convicted on one count of Conspiracy to Distribute and Possess With Intent to Distribute a Controlled Substance in violation of 21 U.S.C.§ 846, 841(a)(1) and (b)(1)(C). The plea agreement contains a binding 11(c)(1)(C) stipulation that the base offense level is 30. Since the PSR agrees with this calculation, there will likely be no issue with the Court accepting this provision. *PSR¶26.*

**The guidelines**

The PSR asserts that there should be a 4 level increase pursuant to U.S.S.G. § 3B1.1(a) because Morillo was an organizer of criminal activity that involved five or more participants. Morillo objects to this conclusion. Assuming, *arguendo,* that this enhancement applies the adjusted offense level would be 34. A 3 level reduction for acceptance of responsibility yields a total offense level of 31. Applying a CHC of I yields an advisory guideline range of 108 – 135 months. *PSR ¶55.*

Morillo should not receive a 4 level enhancement pursuant to U.S.S.G. § 3B1.1(a) because she was not was an organizer or leader of criminal activity that involved five or more participants.

1

**App. 86**

§3B1.1(a) provides:

> If the defendant was an organizer or leader of a criminal activity that involved
> five or more participants or was otherwise extensive, increase by 4 levels.

There is no question that Morillo played an important role in this drug activity. The fact that a defendant plays an important or even essential role in a criminal enterprise does not necessarily requires an aggravating role adjustment. *United States v. Sostre* 967 F.2d 728 (1st Cir. 1992). Neither Jorge Medina nor Mike Lally distributed drugs for Morilllo.  Lally bought only a limited number of pills and cocaine from Morillo, and it was for personal use. He purchased $30 quantities of cocaine on several occasions (4 – 5 times). Morillo sold pills to Lally more frequently, but in small amounts for Lally's personal use. She also gave Lally 25 pills every 6 months for having Lally register Morillo's car in his name.  The only reason that she did this was because she was here illegally and had no papers. Again, Lally was an addict. He was not a runner for Morillo.

Jorge Medina did not work for Morillo. He had his own business. Morillo and Medina bought from the same source. Sometimes Medina would pick up the drugs from the source and sometimes Morillo would.  Neither one worked for the other. Medina essentially worked for Eduardo, and continued to do so even after Eduardo was arrested.

The only person that Morillo's had working for her delivering drugs was Bartimus. Given that fact, she was a manager or supervisor within the meaning of §3B1.1(b)  because she supervised at least one participant and the criminal activity involved 5 or more persons. *See*

**App. 87**

*§3B1.1 Application Note 2.* Therefore her total offense level should be 30 instead of 31.

Applying a CHC of I yields a GSR of 97 – 121 months.

**A variance is appropriate based upon the history and characteristics of the defendant**

The following information is taken from the psychiatric evaluation by Dr. Julia Reade, which has been filed under seal as *Exhibit 2*, the ¶¶ 43 – 52 of the PSR.

Morillo's childhood and early history is marked by major dislocations, abuse, and poverty. Her mother, who was uneducated and poor, was unable to raise Morillo, so she was placed in the care of her Aunt Judith in Colombia. Unfortunately her aunt's boyfriend, who was an alcoholic, sexually preyed upon Morillo for years. For a long time she never told anyone about the abuse because she felt responsible, and she has ever since felt deep shame. She has also suffered sexual abuse at the hands of her paternal grandfather and one other individual. Morillo found escape in school, where she did very well, excelling in math, chemistry, and physics. She succeeded in winning a scholarship to a university in Amsterdam, however, her mother refused to help her with travel and living expenses so she was unable to go. Undaunted, she reset her sights on schools in Colombia. Unfortunately she became pregnant by her then boyfriend, who subsequently abandoned her, and she was left to care for her son alone while at the same time attending business school. She eventually had to drop out. In 1996 she traveled to the United States, leaving her son behind. Unable to get a job to pay for her travel and living expenses she succumbed to pressure and found employment as a prostitute. After several months she moved on and found work as a bartender and waitress, and she finally made enough money to send for her son.

While in New York Morillo became involved with Candido, who was both abusive and involved in drugs. She gave birth to a child, and subsequently moved to Florida to escape

**App. 88**

Candido. While in Florida She met Frank Morillo, who appeared very charming and, mosti importantly, he got along very well with Morillo's children. Unfortunately, the relationship was tumultuous and punctuated by arguments and physical violence. It turned out that Frank was also deeply involved in drugs. She knew that he was using cocaine, but they remained deeply in love. Eventually Frank's drug use expanded and he became more and more erratic.  It progressed to the point where he was threatening and physically beating her. This led to assault charges and restraining orders against Frank. When Morillo tried to start working again as a bartender, Frank forbade it.  Frank eventually began using heroin, went through what little money they had, and began stealing from people to support his habit, and selling drugs.

When Morillo became pregnant by Frank, she sought help from a social worker and an immigration lawyer, however, things did not get any better. After she gave birth to her daughter in 2014 she became financially desperate. Frank convinced her to become involved in what, up to that point, had been his drug business. As Frank became more and more unable to run the business because of his increasing addiction, Morillo took over more responsibility.

Morillo first experienced panic attacks after a particularly violent attack by Frank in 2013. Her panic is characterized by heightened anxiety accompanied by palpitations, shortness of breath and tremulousness lasting minutes to hours. . While on the street she self-medicated with Xanax, Ativan, and alcohol. She also experimented with Percocet and cocaine. At the urging of the medical staff at the Strafford County House of Corrections she has been taking the antidepressant Prosac.

Dr. Reade concluded that:

 In my opinion, Ms. Morillo is a complex woman who bears the psychological scars from the inordinate amount of loss, dislocation, abuse and adversity she has suffered over the course of her life.  She was essentially abandoned by her father at birth, surrendered to the care of others by her impoverished, uneducated, and

**App. 89**

teenaged mother, and serially sexually abused for years by different men (not all
of whom she would identify to me even years later) who were regarded as family
members and whom she was encouraged to trust and rely upon.  The abuse was
never openly confronted or addressed by her family and Ms. Morillo got no
psychological support or treatment to help her with the sequelae.

Her abuse has impaired the development of self respect and self determination, which has

left her vulnerable to terrible relationships. In Frank Morillo she mistakenly believed that

she had found a mate who was committed to a stable family life. Like many battered

women she felt that she had unique insight into Frank's vulnerabilities. With no family

support whatsoever, she went further and further down her unfortunate path with Frank,

repeatedly returning to her battering partner trying to "fix him".  Believing she was faced

with limited options she agreed to participate in, and eventually run Frank's drug

business. It is a decision she is ultimately responsible for, however it should be viewed in

the context of her past abuse, her toxic relationship with Frank, and her extreme

vulnerable as a mother of young children with no legal status in the United States. Her

involvement in drug distribution is utterly out of character. It is highly unlikely that, but

for her past and present abuse, she would be before the Court facing sentencing for these

charges.

        Morillo's involvement in this drug business is directly related to the abuse she suffered as

a child.   There is extensive case law supporting a departure in cases such as this, where a

defendant has endured abuse as a child. In *United States v. Rivera*, 192 F.3d 81, 84 (2d Cir.

1999), the Court found "Is seems beyond question that abuse suffered during childhood - at some

level of severity - can impair a person's mental and emotional conditions . . . In extraordinary

circumstances . . . district courts may properly grant a downward departure on the ground that

extreme childhood abuse caused mental and emotional conditions that contributed to the

**App. 90**

defendant's commission of the offense."    Morillo's history clearly depicts such extraordinary abuse.  In *United States v. Brown*, 985 F.2d 478 (9th Cir. 1993) the court found that where the defendant offered a letter recounting severe childhood abuse and neglect and introduced a psychiatric report concluding that childhood trauma was the primary cause of the criminal conduct a downward departure was appropriate. See also *United States v. Roe,* 976 F.2d 1216 (9th Cir. 1992)(the district court clearly erred in holding it did not have discretion to depart downward where the defendant suffered extraordinary sexual abuse as a child). The fact that Morillo is seeking mitigation in the form of a variance rather than a departure is of little importance.  What is important is the fact that she has suffered through severe childhood abuse, and, as can be seen from Dr. Reade's evaluation, that abuse was a causative factor in the commission of this offense. A sentence below the otherwise applicable guideline range is therefore appropriate because the guidelines do not consider it, and because 18 U.S.C. § 3553 specifically requires the Court to consider it. .[1]

---

[1] *U.S. v. Booker*, 543 U.S. 220, 126 S. Ct. 738 (2005), authorizes this Court to impose a non-guideline sentence. Although the sentencing process must commence with a guideline calculation, the United States Sentencing Guidelines are merely advisory, and district courts are required to consider all of the factors listed in 18 U.S.C. § 3553(a) in imposing sentence. *Gall v. U.S.,* 128 S.Ct. 586, 596-97 (2007); *Booker,* 543 U.S. at 262; *U.S. v. Martin*, 520 F.3d 87, 91 (1st Cir. 2008) ("A district court should begin its sentencing analysis with the advisory guidelines calculation, then its "next steps should include hearing argument from parties as to the proper sentence in a particular case, weighing the applicability of the sundry factors delineated in 18 U.S.C. § 3553(a), reaching an ultimate sentencing determination, and explicating that decision on the record.") (*citing Gall,* 128 S.Ct. at 596-97).

The paramount directive in 18 U.S.C. § 3553(a) is that the Court must impose a sentence that is "sufficient, but not greater than necessary," to achieve the purposes which underlying the sentencing statute. 18 U.S.C. § 3553(a). Section 3553(a) directs sentencing courts to consider a number of factors, *inter alia*:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

**App. 91**

Morillo has been incarcerated during the pendency of this case, first and for the longest period of time, at the Strafford County House of Correction, and recently at the Cheshire County House of Correction. She sought a judicial recommendation for admission to the Therapeutic Community Program at Strafford County, however she abandoned that plan because the government objected the recommendation. *PSR ¶50.* She nonetheless has made good use of her, time taking courses for and eventually passing her high school equivalency exam, and completing courses in Drug and Alcohol Treatment, Victim Impact, Women's Studies, Anger Management, and Introduction to Office Computing. *Exhibit 1.*

---

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

*Id.*

The importance of, and rationale for, the post-*Booker* and - *Gall* sentencing procedure described above has been summarized by the First Circuit Court of Appeals as follows:

This sequencing necessitates a case-by-case approach, the hallmark of which is flexibility. In the last analysis, a sentencing court should not consider itself constrained by the guidelines to the extent that there are sound, case-specific reasons for deviating from them. Nor should a sentencing court operate in the belief that substantial variances from the guidelines are always beyond the pale. Rather, the court "should consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."

*Martin,* 520 F.3d at 91 (*citing Gall*, 128 S.Ct. at 598).

**App. 92**

Morillo is facing a lengthy prison sentence, with almost certain deportation at the end of that sentence. She will be deported to Venezuela with three small children. The only family that she will be returning to is impoverished, fractured, and utterly unsupportive. Given all of these circumstances a sentence significantly below the otherwise applicable guideline sentencing range is appropriate.

Respectfully submitted,
Mara Morillo
By her Attorney,

Date:   May 1, 2017                        /s/ Jonathan R. Saxe
                                           Jonathan R.Saxe
                                           N.H. Bar No. 8226
                                           Assistant Federal Defender
                                           Federal Defender Office
                                           22 Bridge Street
                                           Concord, NH 03301
                                           Tel. (603) 226-7360
                                           E-mail: jonathan_saxe@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that the above document was served to all counsel of record on May 1, 2017 and in the manner specified herein: by ECF.

                                           /s/ Jonathan R. Saxe
                                           Jonathan R. Saxe
                                           N.H. Bar No. 8226
                                           Assistant Federal Defender
                                           Federal Defender Office
                                           22 Bridge Street
                                           Concord, NH 03301
                                           Tel. (603) 226-7360
                                           E-mail: jonathan_saxe@fd.org

**App. 93**

9

(ETS) **HiSET.**

**Comprehensive Score Report**
*High School Equivalency Test*

Name: **Morillo, Mara**
ETS ID: **WLT30617**
Date of Birth: ▮▮ 1975          Report Date: February 10, 2016

## Your HiSET™ Status

Have you taken all five of the HiSET™ individual subtests?          Yes

Did you meet all three of the HiSET scoring criteria?

• Scored at least 8 out of 20 on all HiSET subtests?          Yes

• Scored at least 2 out of 6 on the Essay?          Yes

• Achieved a Total Scaled Score on all HiSET subtests of at least 45?          Yes

## Did you pass the HiSET exam? **

*Please check with your state for their passing requirements to receive a diploma or certificate, as they may differ from the national HiSET passing indicator on the score report.*

**Yes**

## Your HiSET Summary

| Subtests | Your Highest Scaled Score | Test Date |
|---|---|---|
| Mathematics | 19 | January 29, 2016 |
| Science | 18 | January 06, 2016 |
| Social Studies | 10 | January 20, 2016 |
| Language Arts - Reading | 15 | January 20, 2016 |
| Language Arts - Writing | 13 | January 29, 2016 |
| **Total Scaled Score** | 75 | |

Your Highest Scaled Scores

1  2  3  4  5  6  7  8  9  10  11  12  13  14  15  16  17  18  19  20
Not Pass                                   Pass

Copyright © 2013 by Educational Testing Service. All rights reserved. ETS, the ETS logo and LISTENING. LEARNING. LEADING. are registered trademarks of Educational Testing Service (ETS) in the United States and other countries. HiSET is a trademark of ETS. Test items copyright © 2001, 2003, 2007 by The University of Iowa. All rights reserved. Used under license from Houghton Mifflin Harcourt.

611

**App. 95**

# CERTIFICATE OF COMPLETION

THIS IS TO CERTIFY THAT

# MARA MORILLO

HAS COMPLETED THE
DRUG AND ALCOHOL PROGRAM
AT SCDOC

SCDOC PROGRAMS

DATE 12/17/2015
CONTROL #AM 15-0302



# CERTIFICATE OF COMPLETION

THIS IS TO CERTIFY THAT

## MARA MORILLO

HAS COMPLETED THE VICTIM IMPACT COURSE AT SCDOC

SCDOC PROGRAMS

DATE: 02/05/2016
CONTROL #VI 15-0355



# CERTIFICATE OF COMPLETION

THIS IS TO CERTIFY THAT

## MARA MORILLO

HAS COMPLETED WOMEN'S STUDIES AT SCDOC

SCDOC PROGRAMS

DATE: 12/09/2015
CONTROL # WSS 15-0279



# CERTIFICATE OF COMPLETION

THIS IS TO CERTIFY THAT

# MARA MORILLO

HAS COMPLETED THE
ANGER MANAGEMENT PROGRAM
AT SCDOC

SCDOC PROGRAMS

DATE: 01/06/2016
CONTROL #AM 15-0316



CERTIFICATE OF COMPLETION

THIS IS TO CERTIFY THAT

MARA MORILLO

HAS COMPLETED INTRODUCTION TO OFFICE COMPUTING PROGRAM AT SCDOC

SCDOC PROGRAMS

DATE: 12/18/2015
CONTROL # 15-0306

App. 100

**\*\*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 10-13-2025**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


```
* * * * * * * * * * * * * * * * * *
                                  *
UNITED STATES OF AMERICA          *
                                  *   15-cr-174-01-SM
          v.                      *   May 11, 2017
                                  *   10:00 a.m.
      MARA MORILLO                *
                                  *
* * * * * * * * * * * * * * * * * *
```


TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE STEVEN J. MCAULIFFE


APPEARANCES:


For the Government:        John J. Farley, AUSA
                           U.S. Attorney's Office



For the Defendant:         Jonathan R. Saxe, AFD
                           Federal Public Defender Office



Probation:                 Jennafer McNutt



Court Reporter:            Susan M. Bateman, RPR, CRR
                           Official Court Reporter
                           United States District Court
                           55 Pleasant Street
                           Concord, NH 03301
                           (603) 225-1453

```
 1                    P R O C E E D I N G S
 2            THE CLERK:  Court is in session and has for
 3    consideration a sentencing in the matter of United States of
 4    America versus Mara Morillo, case number 15-cr-174-01-SM.
 5            THE COURT:  All right.
 6            Mr. Saxe, have you reviewed the presentence
 7    investigation report with your client?
 8            MR. SAXE:  Yes, I have, your Honor.
 9            THE COURT:  All right.  The report will be placed
10    in the record under seal.  If an appeal is taken, both parties
11    will have access to the report.
12            Are there any objections you would like to raise to
13    the report?
14            MR. SAXE:  Yes, there are, your Honor.
15            I have two objections.  One with respect to the
16    stash house -- application of the two level enhancement for
17    having a stash house, and the other is the leadership role.
18            I agree that my client should have a leadership
19    role, but I believe it should be three levels instead of four
20    levels.
21            With respect to the stash house issue, your Honor,
22    I was present at the sentencing of Franklyn Morillo.  I'm
23    aware how the Court ruled on that.  I've heard the argument.
24            I would like to point out that one of the cases
25    cited by the government in its memorandum was United States v.
```

**App. 102**

1    Jones, which is 778 F.3d 375, that's a First Circuit case, and

2    Jones talks about the application of that and essentially it's

3    directed at the defendant, not the residence.  In other words,

4    Jones says -- explaining that the -- excuse me.  Let's see.

5    Excuse me, your Honor.  I'm looking at the wrong case.  I'm

6    sorry.

7            The case is United States v. Miller, and that's at

8    698 F.3d 699, and that's an Eighth Circuit case.  In that case

9    the Court said -- it was talking about 2D1.1(b)(12) and it

10   made an analogy to 21 U.S.C. 856(a)(1), an offense that it

11   parallels, and that requires proof that the specific defendant

12   being sentenced maintained the premises, not some other

13   defendant.  So it's focused on the defendant more -- both the

14   premises and the defendant, but it specifically requires that

15   this defendant have the mental state to maintain that place as

16   a stash house.  "It is not sufficient that others possess the

17   requisite purpose."

18           You may find that one person that lived there

19   maintained the stash house, but you have to do a second

20   analysis to determine whether this defendant maintained it as

21   a stash house.  That's what this case --

22           THE COURT:  If you were here the other day -- I

23   think you were here the other day.

24           MR. SAXE:  I was, your Honor.

25           THE COURT:  You probably heard me say, and the

1   government agreed, and there was no contrary evidence that I'm

2   aware of, everything in this case that I've read, that I've

3   seen, suggests this was a joint venture between husband and

4   wife at their marital home.  So I'm not sure how you parse my

5   husband meant to have it operate as a premises dealing in

6   drugs but not my client -- not me, rather.  My husband did,

7   but I didn't.

8           MR. SAXE:  Well, that's what this case says.  You

9   may find --

10          THE COURT:  No, no.  I'm not disagreeing with the

11  case.  The case makes eminent sense to me.

12          If Johnson intends to maintain this office building

13  as a premises, but I didn't, okay, sure.

14          But if my wife and I are operating a drug business

15  out of our home, what's your basis for saying the husband may

16  have intended that but the wife didn't?

17          MR. SAXE:  My basis, your Honor, is this:

18          First of all, Franklyn Morillo was dealing drugs

19  and had a drug business before my client became involved, and

20  what happened is she had met him in Florida.  She was in New

21  York.  They had sort of a back and forth falling out/getting

22  back together because he was kind of -- was very abusive.  In

23  fact, there was cases against him for strangling her.

24          But nonetheless, she came up here and she brought a

25  child up here with her from another father.  She moved up here

1    not to sell drugs.  If my client hadn't met Franklyn Morillo,

2    she would have never been involved in selling drugs.  That

3    said, she knowingly made the decision to do it and she's here

4    today accepting responsibility for that.

5          But just as background, it's nothing that she would

6    be involved with, it's nothing she would have ever done, but

7    for Franklyn.  When she came up here, she did not have the

8    expectation that there was going to be drug dealing up here.

9    She moved in with him, she brought the child with her, and

10   then she became pregnant with his child.

11         During her pregnancy is when Franklyn really again

12   started going south on the drug use and became very erratic

13   and in fact unable to really maintain the business.  It was at

14   that point that she's here.  She's pregnant.  She's not here

15   legally.  She's kind of desperate to how am I going to survive

16   now that I'm pregnant, I have a child, Franklyn is crazy, and

17   so he talked her into and she willingly went along with doing

18   the drug business.  But her primary reason for that premises

19   was the initial reason; I want to try to raise a family.

20         If you looked at the report by Dr. Reade, it talks

21   constantly about her really wanting to have some sort of

22   family, really trying to have a family because of all the

23   horrible stuff that happened to her when she was growing up.

24         So her main purpose was not to have that place to

25   do drugs.  Her main purpose was to have a family.  Were they

1   selling drugs there?  No question whatsoever they were selling

2   drugs.

3           THE COURT:  I guess I'm not following you.

4           Yes, of course the main purpose of having a house

5   is to have a roof over your head to live and a place to make

6   dinner and eat and to sleep and to watch television and to

7   engage in family life.  Of course.

8           But if you maintain that home as a drug

9   distribution center and the center of an operation of a drug

10  selling business, then you get the enhancement.

11          Now, why do you say, oh, no, I don't, as long as my

12  subjective intent is to first have and raise a family in these

13  premises?  Sure, we regularly deal drugs out of the place and

14  we store cash and proceeds and we store drugs here, but that's

15  not my prime purpose.

16          That's not an acceptable argument under this

17  enhancement, is it?

18          MR. SAXE:  Well, I think it is because Franklyn

19  Morillo's primary goal in life was to get drugs and --

20          THE COURT:  But his primary purpose in maintaining

21  the house was probably also to live there, eat there, sleep

22  there, watch television there, or have a family there.  That

23  would always be the case if it's a home, right?

24          MR. SAXE:  I don't think that's the case with

25  respect to Franklyn Morillo, but I do think that's the case

**App. 106**

1  with respect to --

2          THE COURT:  But your argument is your home can

3  never be a premises that would trigger this enhancement.  Your

4  home could never do that because it's always the place where

5  you primarily want to have a roof over your head and live.

6          MR. SAXE:  No.  I wouldn't make that argument.

7          THE COURT:  But you are making that argument.

8          MR. SAXE:  I'm saying that based on the facts of

9  this case and based on the characteristics of my client,

10  including all the things that I said about how she got

11  involved in it and the reason why she came here --

12          THE COURT:  Well, look, did she live there?  Yes.

13  Did she conduct drug activity out of the house?  Yes.  Were

14  drug proceeds from that activity stored in the house?  Yes.

15  Were drugs that were distributed from that house in the house?

16  Yes.

17          Okay.  Now what's your argument?

18          MR. SAXE:  That if you -- well, another thing you

19  need to look at is you need to look at the -- I think there's

20  case law that talks about --

21          THE COURT:  No, but what's your argument?

22          Yes, it was used as a drug distribution center and

23  she used it as such, but what?  I shouldn't get the

24  enhancement because what?

25          MR. SAXE:  Because the primary -- if you look at

1    the amount of time and the amount of things that were done at

2    that residence and the amount of transactions that were done

3    at that residence and compare it to the use of the residence

4    as a primary home and where she was raising her children, the

5    amount of times that the place was used for drugs is dwarfed

6    by the amount of time that it was used for legitimate

7    purposes, and that's one of the things that you can look at.

8    And in fact I would point to a lot of times things were not

9    stored there and a lot of transactions did not occur there.

10             THE COURT:  Okay.  Thank you.

11             Well, should we take them one at a time?

12             MR. SAXE:  Whatever you want.

13             THE COURT:  Mr. Farley, what about the enhancement

14   with respect to the use of the premises as a drug distribution

15   center?

16             MR. FARLEY:  Well, two points, your Honor.

17             Number one, the enhancement applies to more than a

18   stash house.  I think the plain language of the guideline

19   indicates that if it's being used for distribution.  I think

20   the Court has recognized that and recognized that at the prior

21   sentencing.  Although it's sometimes called the stash house

22   enhancement, it applies beyond something that's being used as

23   a stash house, and some of the cases that we cited make clear

24   that if a residence -- if a primary residence is also being

25   used for drug distribution activity, it can still qualify for

1    the enhancement and there can be more than one primary purpose

2    under the guideline here.  The particular location can be a

3    residence and have that as a primary purpose but also have a

4    primary purpose of drug distribution, and that's what we have

5    here.

6             There's no question that the defendant lived there,

7    but there's also no question that there were repeated drug

8    trafficking activities occurring at that location.

9             The defendant herself was observed on videotape on

10   multiple occasions conducting drug trafficking, drug deals,

11   within that apartment, within that condo, and the cooperating

12   individual indicated that that individual had been there on

13   many prior occasions over the course of the prior year to

14   conduct drug trafficking deals with the defendant.

15            During the course of a multimonth wiretap

16   investigation this location was the focal point of the drug

17   trafficking activity.  Sources of supply would bring drugs

18   there.  Drugs would then be sold to customers.  Customers

19   would sometimes come to the location.  Sometimes the runner

20   would make deliveries elsewhere.

21            In the PSR there's a description of a single day

22   when Ms. Morillo calls and orders from a source of supply a

23   certain quantity of drugs and then directs a Mr. Bartimus to

24   meet a customer where?  At the Farrwood Drive residence.

25            And then when the search warrant is conducted,

1    there is approximately 18,000 in cash secured at multiple

2    locations in the residence.  And when the arrest warrants are

3    executed on October the 1st, there's a hidden compartment

4    identified that is in the door.  There are pills recovered.

5            So this is a location that is frequently being used

6    for drug trafficking activity, and the defendant is abundantly

7    aware of it because she's the one conducting that activity.

8            Based on that evidence and based on the language of

9    the guideline and the cases we have cited, we believe that the

10   enhancement is appropriate.

11           THE COURT:  All right.  Thank you.

12           All right.  Mr. Saxe, your next objection?

13           MR. SAXE:  Yes.  If I could just have a second,

14   your Honor.

15           (Pause)

16           Okay.  Yes, I think that -- I mean, I think I tried

17   to explain it as best I could in my written pleading why I

18   don't think it should be a four level enhancement and why I

19   think it should be a three level enhancement.

20           Essentially, I think this.  I think that my client

21   was more of a manager or supervisor and wasn't an organizer or

22   leader, and the reason why I say that is she clearly had --

23   Bartimus was working for them.  So that's one person that she

24   would say, you know, that was running, okay?  So there's no

25   question about that.  So some enhancement applies here.

1          There was also -- the numerosity requirement is met

2     because there was five people or more.

3          So my argument is that she was more of a manager or

4     supervisor than an organizer or leader, and the reason again

5     goes back to what I said concerning Franklyn Morillo's

6     involvement.  Franklyn Morillo was the one that was heavily

7     involved in drugs, not my client.  Franklyn Morillo was the

8     one that was selling drugs.  My client was opposed to it.

9          It was his organization and essentially she agreed

10    to do it with him when she was pregnant and then she was

11    pushing the buttons, but I think that Franklyn Morillo was the

12    organizer or leader and she was not.  She didn't organize it.

13    It wasn't her organization.  She stepped in and managed it or

14    supervised it, and in doing so she deserves a three level

15    leadership role but I don't believe four levels.

16              THE COURT:  Okay.  But you're not challenging the

17    numerosity?

18              MR. SAXE:  Absolutely not.

19              THE COURT:  And you're not challenging that she

20    played a leadership role?

21              MR. SAXE:  She played a leadership role, but I

22    think it was a three level managerial or supervisory role as

23    opposed to the four level organizer or leader role.

24              THE COURT:  I couldn't really follow your memo.

25    I'm not sure what guideline distinction you're drawing.

1           MR. SAXE:  Well, I'm talking about 3B1.1

2   aggravating role, and on 3B1.1(a) it's the organizer or

3   leadership role, and under (b) it's a manager or supervisor

4   role, and it involves the same --

5           THE COURT:  I guess I have the same problem

6   with it.  As I understand it, correct me if I'm wrong, we are

7   talking about a husband and wife drug distribution mom and pop

8   company, and they ran it together.  And when he was

9   indisposed, she ran it, but it was a joint venture basically.

10  So I'm not sure what distinction you're drawing.

11          MR. SAXE:  I think that he was the organizer and

12  leader, and she would essentially -- when he was unable to do

13  things, she would manage it for him.  So I think she was more

14  of a manager than an organizer or leader, and she clearly -- I

15  mean, that's a substantial enhancement.  He's more culpable

16  than she was.

17          THE COURT:  But just one level, right?

18          MR. SAXE:  Correct.  That's all I'm asking for.

19          Clearly there's an enhancement that applies.  She's

20  clearly more culpable than Bartimus or Lally or even Medina so

21  she should get an enhancement, but I just don't think she

22  should get the same level as Franklyn Morillo.

23          THE COURT:  Okay.  Mr. Farley.

24          MR. FARLEY:  Your Honor, the defendant was involved

25  in the recruiting of Mr. Bartimus and paying him and directing

1    his activities on multiple occasions.

2              THE COURT:  I think Mr. Saxe concedes all that.  I

3    think the distinction he's trying to draw is organizer/leader

4    is a step above a manager/operator.  So as a manager, of

5    course she probably recruited people and directed them and

6    supervised them, et cetera, et cetera, et cetera, but it was

7    really working for the husband's business as opposed to both

8    having their own business.  I think that's what he's saying.

9              MR. FARLEY:  And I just think that's not what the

10   evidence supports.  I think this is a situation where, as the

11   Court has indicated, it's a joint venture and they are both

12   taking that organizer/leader role.  And there's certainly

13   abundant case law that --

14             THE COURT:  What do you say to his argument it was

15   really Franklyn Morillo until he became indisposed through

16   drug -- the drugs interfered with his ability, and then she

17   just kept the business going like the chief executive might?

18             MR. FARLEY:  Well, your Honor, I don't have any

19   evidence one way or the other on when she became involved and

20   whether that's true or whether that's not true that she

21   originally was not participating and then got sucked into it.

22   There's certainly no evidence one way or the other on that

23   point.

24             What I can say is that during the course of the

25   wiretap investigation the government is listening to her

phones for multiple months, and she is the individual who is

repeatedly reaching out to the sources of supply negotiating

the transactions, arranging to get the drugs delivered to the

house, and communicating with customers.  And candidly, on a

number of occasions she is directing Franklyn Morillo to

conduct certain activities.  And certainly when you even look

at paragraph 14 of the PSR, on that particular occasion it's

the defendant who's reaching out to Juan Rojas, you know, to

obtain the drugs, and then she is -- so she's taking the

organizational position of obtaining the drugs that are going

to be further distributed and she's providing the direction to

Mr. Bartimus to meet with the customer and distribute those

drugs.

THE COURT:  The words are tough, yes, but she's

managing.  It's management.  That's what managers do.

MR. FARLEY:  It's organizing.  She's organizing the

entire activity.

THE COURT:  I don't think so.  I mean, yes, of

course.  I mean, in some cultures they say making arrangements

to go to the movie is organizing it, but we don't say that.

We say it's arranging it or managing it.

In this context it means something else.

Organizing means taking the pieces and putting it together

into something, right?  It doesn't mean keep spinning the

wheel.

1          MR. FARLEY:  Well, she's the one who's reaching out

2     to these different sources.  She's the one --

3          THE COURT:  She's spinning the wheel.

4          MR. FARLEY:  Pardon me?

5          THE COURT:  I'm taking Mr. Saxe's point of view for

6     the moment.

7          She's spinning the wheel.  Of course.  There is an

8     organization.  It's been organized for quite sometime.  There

9     is an organization.  It was organized back before there was an

10    organization.  They organized it.  Now there is an

11    organization.  Now she's managing it, not organizing it.  It

12    exists.  It's been organized before.

13         MR. FARLEY:  I think organization is an ongoing

14    skill.  I mean, if there are --

15         THE COURT:  No, no, no.  Well, see, in some

16    cultures that's true.  Let's organize a trip to the movies.

17    Well, we don't talk that way.  We say let's arrange a trip to

18    the movies.  Let's organize a business.  Okay.  Let's do that.

19    Let's keep organizing it.  Why would we keep organizing it?

20    We organized it last month.  Let's manage it.  Yeah.  Okay.

21    Let's manage it.  Let's operate it.  Let's run it.

22         MR. FARLEY:  And organization is more than simply

23    setting it up.  I think it is continuing that ongoing

24    operation, and when you look at the --

25         THE COURT:  No.  That would be reorganizing.  Let's

1    reorganize the company.  Let's reorganize the business.  You

2    don't say let's organize it.  You would say we did that when

3    we started it.  Well, now it needs to be reorganized because

4    it's not running quite right.

5             MR. FARLEY:  When you organize activity, you are

6    setting it up and keeping it in motion not just at the outset.

7             THE COURT:  Do you think any corporation in America

8    says let's go to work today and let's organize the company?

9             MR. FARLEY:  We're going to organize the way we

10   distribute our products.  We're going to organize the way we

11   --

12            THE COURT:  We're going to reorganize it because we

13   already organized it.  We don't like the way we did, so we're

14   going to redo it.  Let's manage it.  Let's alter it.  Let's

15   modify it.

16            MR. FARLEY:  And we also talk about leading, and

17   leading is directing other people, is setting the goals and

18   then making the arrangements to fulfill those goals, and

19   that's what this defendant did.

20            Whether you consider her a leader or an organizer,

21   it's the government's view that she performed both roles, and

22   you can certainly have more than one person who --

23            THE COURT:  But you don't have any evidence that

24   she organized it at the outset drawing the distinction, the

25   temporal distinction?

1        MR. FARLEY:  In terms of the temporal distinction,

2   I don't have that evidence, your Honor.  I think that's fair

3   to say.

4        THE COURT:  What you're really saying is it's a

5   joint venture and she was a leader just as much as he was.

6        MR. FARLEY:  And I don't think there's really any

7   question about that.  She is the one who is on that phone

8   talking to multiple sources of supply and making arrangements

9   to get pills from person X or pills from person Y.  And when

10  you look at the different factors set forth in 3D1.1, you look

11  at the proceeds of the offense, and she and Franklyn Morillo

12  are jointly benefiting financially from this.  They got the

13  larger portion of the proceeds from the offense as opposed to,

14  say, Mr. Bartimus who was getting paid on a weekly basis.

15  They're the ones who have tens of thousands of dollars in

16  their house.  They've got the Mercedes.  They are not working.

17  This is their entire source of income to support their family.

18        And so they are both leading that activity, they

19  both have the goal of accomplishing the drug distribution, and

20  it's the government's view that their joint activity merits

21  the four level enhancement.

22        THE COURT:  Okay.  Thank you.

23        Anything else?

24        MR. SAXE:  Jorge Medina was on the phone ordering

25  drugs, too.  Sometimes she would order the drugs and they

 1    would split them and sometimes Jorge Medina would order them

 2    and they would split them, and he didn't get any kind of

 3    leadership role I assume.  I don't know because I wasn't at

 4    his sentencing, but he only got 24 months so I don't think he

 5    got that.

 6              The other thing is, your Honor, this is probably

 7    one of the more nebulous parts of the guideline.  I mean, it's

 8    like how many angels can dance on the head of a pin here.

 9    It's really difficult to parse the two things which is why

10    we're having this discussion.

11              And if you look at the case law, it sort of

12    transmogrifies the two things.  It's not clear at all.  I just

13    think the clear thing is that this is Franklyn's organization

14    and she stepped in.

15              THE COURT:  Okay.  I appreciate it, Mr. Saxe.

16              With respect to your objection to the enhancement

17    for maintaining the premises, I'm going to overrule that

18    objection.  I think it's pretty clear this is a joint venture

19    in which your client equally participated in maintaining the

20    premises as the center of the drug distribution activity for

21    all the reasons articulated by Mr. Farley.  Drugs were stored

22    there, drugs were distributed from there, proceeds were

23    received and stored there, activity was conducted there over

24    the phone and otherwise was the center of activity, and

25    certainly a primary purpose of maintaining the premises was to

```
1    use it for that business purpose.
2             All right.  With respect to leadership, again I
3    think it's a joint venture, joint activity.  It has all the
4    hallmarks of a husband and wife operation of drug
5    distribution.  I don't see anything in here that would warrant
6    drawing a distinction between Franklyn Morillo and Mara
7    Morillo here as a subordinate in any way.  She was very active
8    in maintaining the business, leading the operation.
9    Particularly when he was indisposed, she had no difficult
10   continuing to operate and lead the business.
11            Were they co-leaders?  Probably.  Sure.  But I
12   don't see any way to draw a distinction between one versus the
13   other in terms of leadership roles.
14            So your objection is overruled with respect to that
15   enhancement as well.
16            Any other objections?
17            MR. SAXE:  No, your Honor.
18            THE COURT:  Any objections by the government, Mr.
19   Farley, to the report?
20            MR. FARLEY:  No, your Honor.
21            THE COURT:  All right.  There being no objections
22   other than those that I've ruled upon, I do adopt the findings
23   and recommendations set forth in the report.
24            Based upon those findings I conclude that the total
25   offense level applicable in this case is 33.  The Criminal
```

**App. 119**

 1    History Category is Category I.

 2                All right.  Mr. Saxe, I'm granting your motion to

 3    seal -- I'm sorry -- yes, your motion to seal and the

 4    government's motion to seal.

 5                You moved to seal both your memorandum and the

 6    psychiatric report; is that right?

 7                MR. SAXE:  I move to seal just the psychiatric

 8    report but not the memorandum.

 9                THE COURT:  Oh, not the memorandum?  Okay.

10                MR. SAXE:  Correct.  Because I referred to it, but

11    I didn't think that it was necessary to --

12                THE COURT:  Oh, you did.  You moved to seal the

13    second supplemental.

14                MR. SAXE:  Yes.  That's correct.  For the same

15    reason that the government moved to seal its motion.

16                THE COURT:  Okay.  All right.

17                Those motions to seal are granted.

18                All right.  Do you want to take up your motion, Mr.

19    Farley?

20                MR. FARLEY:  Certainly.  Should we do that at

21    sidebar, your Honor?

22                MR. SAXE:  I would appreciate that, your Honor, if

23    that's possible.

24                THE COURT:  Okay.

25                (SEALED SIDEBAR)

**App. 120**

1              (CONCLUSION OF SEALED SIDEBAR)

2              Would you like to be heard on sentencing, Mr. Saxe?

3              MR. SAXE:  Yes, your Honor.

4              In addition to all the reasons that were said at

5  the sidebar and what I've said thus far, I think that the

6  Court should consider the nature and circumstances of my

7  client.

8              I had an evaluation done which was filed under seal

9  by Dr. Julia Reade, and I think that there is case law out

10  there that -- I think the Rivera case talks about deprivation

11  suffered as a child can have an impact and it's a valid thing

12  for the Court to consider when imposing a sentence, and then,

13  just in and of itself, whether or not it had anything to do

14  with the defendant's commission of the instance offense.  But

15  in this case I think we clearly have that for the reasons

16  expressed in my sentencing memo and in Dr. Reade's report, but

17  also if you look at Dr. Reade's report, how did this offense

18  come to happen?

19              This is a person that survived a lot of deprivation

20  as a child, got an education, was prepared to get a

21  scholarship to go to school in Europe.  Her mother and

22  grandmother would not allow her to do that.  She suffered all

23  the abuse that she suffered prior to that.  We talked about

24  that in the sentencing memo and in Dr. Reade's report.  She

25  had a child, was unable to then complete her schooling in

1    Columbia, and then came to the United States.

2          As a result of what she suffered through as a

3    child, she developed an inability -- or let's say this.  She

4    developed a common tendency to form dangerous or toxic

5    relationships with men based upon what happened to her, and

6    there's a history of that in the report about her toxic

7    relationships in New York.

8          And then she went to Florida and got involved in a

9    toxic relationship with Franklyn Morillo who she deeply loved

10   and still cares very much about despite the fact that he was

11   extremely -- not only was he a drug addict, but he was

12   extremely abusive.  In fact, there was some reference in his

13   sentencing hearing about him strangling somebody.  That was my

14   client.

15         So one of the reasons -- and this is a person who

16   never sold drugs before and never would have sold drugs but

17   for Franklyn Morillo.  She's clearly culpable.  She's an

18   adult.  She's not incompetent.  She made the decision to do

19   that.  But I think her history, as Dr. Reade would say,

20   informs how this happened and how she was kind of really

21   susceptible or vulnerable to agreeing with Franklyn in order

22   to do this in order to get a family together, which is

23   something she never really had her whole life.

24         And then they had a child -- she had a prior child,

25   and then they had a child together.  And indeed at the

1    beginning of this case -- excuse me.  At the beginning of her

2    involvement in this drug adventure she was pregnant and even

3    more vulnerable, and so she couldn't work.  Prior to that he

4    forbade her from working.  She has a history of doing work.

5    So she was kind of -- and then Franklyn sort of went off the

6    deep end.  So she was left illegally here in the United States

7    with a child, pregnant with another child, the husband who is

8    completely off the deep end on drugs, and the only income that

9    they had at that point -- he had worked prior, but at that

10   point the only income coming in was from the drug dealing.

11          She made a bad decision, she's responsible for that

12   decision, but I think that all those circumstances should

13   inform the Court as to how someone that never was involved in

14   drugs before and had no proclivity to be dealing drugs got

15   involved with an already preexisting organization because that

16   was the way they could make money and so she did it.

17          It was a substantial organization.  You've given

18   her a leadership role.  I've conceded that there should be at

19   least some leadership role.  But I think that if the Court

20   considers those things, that they are mitigating and should

21   result in a sentence below the sentence that's been requested

22   by the government.

23          I would also point out, your Honor, look at what

24   some of the other defendants got.

25          Mr. Lally.  Mr. Lally got drug court.  My client

1    when Mr. Lally first came into court said, what's he doing

2    here, as if he really wasn't hardly even involved in the

3    conspiracy at all.  All he was doing was letting them have the

4    car in his name because she couldn't register a car because

5    she was here illegally, and they would occasionally sell him a

6    few pills.  He really wasn't distributing anything.  So for

7    him to get drug court instead of a sentence is very

8    appropriate.

9            Mr. Bartimus.  He got 18 months.  He was a runner.

10   He worked for my client.  So he clearly is far less culpable

11   than my client.

12           Mr. Medina on the other hand -- I referenced, you

13   know, what his offense level was in this case, and they

14   were -- I would say my client is more culpable than Mr. Medina

15   was, but my client and Mr. Medina bought drugs from the same

16   source.  Sometimes she would pick them up or get them or have

17   them delivered to her, and sometimes he would get them and

18   have them delivered to him and she would split them up.  So he

19   is higher than Mr. Bartimus on the scale and lower than my

20   client, but he got 24 months.  So that should be lower than my

21   client's sentence because my client is more culpable.

22           So I think that given all these circumstances and

23   given the other circumstances in the case, and plus given the

24   fact that I don't think that anything that we discussed at

25   sidebar applies to any of those other defendants, I'm not

1    certain of that but I don't believe so, that's my information,

2    that a sentence of 48 months would be more appropriate than

3    the sentence that the government recommended for the reasons

4    that I've just stated here and for the additional reasons that

5    I raised at sidebar.

6              And the other thing is that she's going to be

7    deported when she's -- when the sentence is over.  As you

8    could tell from Dr. Reade's report, it's kind of a very

9    fractured, unstable situation where she's going to go, and

10   she's not going to have any choice but to go there.  So that's

11   some additional punishment that will be imposed upon her.

12   Plus, she'll be in jail for an additional period of time or

13   incarcerated for an additional period of time after this

14   sentence is done dealing with immigration issues.

15             And, finally, if you look at the conditions of

16   supervision, you'll note that probation is recommending drug

17   treatment.  Now, while she -- as far as her drug use, it was

18   nothing compared to Franklyn Morillo's.  It was still -- you

19   know, she still used drugs.  In fact, she used -- sometimes

20   she tried to treat herself, her mental condition.  As you can

21   see from Dr. Reed's report, that she tried actual prescription

22   drugs without a prescription in order to deal with her mental

23   health issues.  So I would ask that the Court recommend the

24   RDAP program at the Bureau of Prisons for her.

25             THE COURT:  Thank you, Mr. Saxe.

1        Mr. Farley.

2        MR. FARLEY:  Your Honor, certainly the defendant

3   has a sad personal history, I don't dispute that, but when you

4   look at the 3553(a) factors, the Court has other factors it

5   needs to consider, including the nature and circumstances of

6   this offense, and the Court's role here is to balance all of

7   that.

8        This was a substantial drug trafficking operation

9   that was putting thousands and thousands of pills on the

10  street and feeding the overall opioid problem in our

11  community, and the defendant was a substantial part of that

12  over the course of many, many months.  That conduct needs to

13  be punished and needs to be recognized.

14       This defendant and her husband were using drugs,

15  the sale of drugs, as the basis for their income.

16       Mr. Morillo had not held a job in over seven years.

17  So the defendant's drug distribution organization and this

18  activity was something that had been the primary source of

19  their income for a substantial period of time.  This wasn't

20  just a brief foray or a brief side trip off of an otherwise

21  law-abiding family unit because clearly the drug distribution

22  had been going on for quite sometime.

23       With respect to Mr. Medina, the Court did vary

24  downward with respect to Mr. Medina substantially over the

25  government's objection, but each individual is considered

1    based on their own personal characteristics, and that was the

2    Court's determination.  That doesn't necessarily carry over to

3    this defendant, and certainly Mr. Medina was being held

4    responsible for a much lower drug quantity than this defendant

5    and was not receiving the other enhancements that this

6    defendant is receiving.

7            The idea that there is a substantial disparity that

8    needs to be taken into consideration I don't think is

9    appropriate.  She was part of the leadership of this

10   organization, and the sentences that were imposed on these

11   other players in the organization really don't play a --

12   shouldn't play a substantial role in the Court's determination

13   because you're not comparing apples to apples.

14           She and Mr. Morillo are far more culpable in terms

15   of their leadership role than the other defendants that the

16   Court has already sentenced.

17           THE COURT:  All right.  Thank you, Mr. Farley.

18           Ms. Morillo, you have a right of allocution, which

19   means you have the right to address the Court on any subject

20   you choose prior to the imposition of sentence.  You're not

21   required to exercise that right, but if you would care to, I

22   would be happy to hear from you now.

23           THE DEFENDANT:  Okay.

24           Your Honor, my name is Mara Morillo.  I came to the

25   United States 21 years ago.  I have three children.  I married

1    my husband eleven years ago.  He used to be a wonderful man.

2    We fell in love, we moved in together, but the only condition

3    that he asked me is that I don't work, I take good care of the

4    house and the family, and he worked.

5    He had started using drugs.  He became addicted.

6    Then he started selling drugs.  When he get bad with the

7    drugs, he had started being mentally and physical abusive.

8    One day I tried to hide his drugs, and he got

9    really mad at me and he grabbed me by the neck, he choked me,

10   I got unconscious, and then when I opened my eyes, he was on

11   top of me and he told me if I don't give him the drugs back,

12   he was going to kill me.

13   After too many abuses, he ended up going to jail,

14   and I didn't even want to accuse him because I was thinking

15   that he had drug problems and I was thinking he was going to

16   get better and the relationship was going to get back to the

17   way it used to be before.  So he only got sentenced on an

18   assault.

19   He started writing me when he was in the jail.  He

20   had started calling me.  He told me that he had an epiphany.

21   That he was clean.  He asked me to forgive me.  That

22   everything was going to be okay when he got out of the jail,

23   and I believed him.  I wanted to believe him.

24   So when he went back to the house, it was okay for,

25   like, a couple of months, but then he had started using drugs

1    again, and then all this situation started again.  But by that

2    time when he went to the house, I got pregnant in that moment

3    so I ask him that he got to go look for help or we cannot be

4    together anymore.  And what he did is that he took the money,

5    he took the car, and disappeared for a while.

6              And then the landlord, it was his friend, he called

7    me on the phone and he told me Frankie wasn't at the house.  I

8    got to go.

9              So you can see how it was.  I don't have nowhere to

10   go.  I'm pregnant.  I've got a kid.  I don't have money

11   because Frankie left me like that because it was, like, the

12   way that he controlled me.

13             So then my husband's drug supplier came to the

14   house.  He gave me some money.  He give me one car.  He told

15   me that Frankie was with somebody else.  He told me that

16   Frankie was saying that that wasn't his baby, that it was

17   better for me to abort.  I told him that I don't want to abort

18   my baby, that I didn't know what to do, and that is when I

19   took the decision to be part of this situation and I started

20   selling drugs to my husband's customers.

21             Your Honor, I take full responsibility on my

22   actions, and I recognize that I'm guilty of my charges.

23             My mama always told me that actions speak louder

24   than words, and of course I broke the rules.  I didn't do what

25   I was supposed to do.  I only did what was convenient in that

1   moment.  I put my necessities on top, and I ended up failing

2   my family, my children, and the community that I'm with in

3   making a really bad decision.  I ended up hurting people by

4   selling drugs, I know that, and I find out this when I was

5   incarcerated and I see all these women having drug problems

6   and I listen to their stories, I see how drugs affect their

7   lives, their family, but especially the children, and I know

8   that it was my fault due that I was contributing to this.

9           So I tried to improve myself.  I tried to get

10  classes.  I tried to go to mental health.  I went to

11  one-on-one counseling.  I went to women's peer support

12  classes, I was in dance therapy movement, I was in meditation,

13  and I was reading the Bible so much.  I was trying to be able

14  to change my thoughts and feelings, and then that could help

15  me to change my behavior.  This kind of action is not one that

16  I would repeat again.

17          I tried to keep myself busy.  I tried to do yoga.

18  I tried to exercise.  I completed my GED classes.  I was

19  tutoring ladies from my classes on computer classes in

20  Strafford.  I was being a translator for the immigration

21  ladies.

22          When I went to Cheshire, I talked to the volunteer

23  coordinator and I asked them if they can do sign language

24  classes and they can do finance, and now Cheshire has those

25  subjects both and they are giving those classes.

1          I discovered that I really like sign language.  I

2   find out it's a really good opportunity for people where they

3   know American Sign Language and know Spanish, and I know that

4   the payment is like for a public school teacher.  So that give

5   me hope and opportunity that I can take good care of my

6   children when I can get out if I go for an ASL certification.

7          I always thought that knowledge is very important.

8   I lose my way for a while, but now I try to keep myself busy.

9   I try to improve my mind and my body without making excuses.

10  I'm taking the positivity that this experience brought to me

11  with the power to change a better future for me and my family.

12         Your Honor, I want to teach my children that in

13  life you're going to make a mistake, but you can learn from

14  those mistakes and bring something good from there.  So that's

15  what I'm trying to do now.

16         Thank you.

17         THE COURT:  All right.  Thank you.  Thank you, Ms.

18  Morillo.  I appreciate it.

19         All right.  I'll announce the sentence I intend to

20  impose, but I won't actually impose it until I've given

21  counsel an opportunity to raise any legal or factual issues

22  they care to raise.

23         Mr. Farley, obviously I'm going to grant your

24  motion, and I will depart downward below the point you

25  suggested even though I recognize the government's motion is

1  generous with respect to the degree of departure requested to

2  take into account Mr. Saxe's argument at the sidebar of the

3  risk of danger associated with the defendant at this point.

4         So I'll depart downward to 84 months.

5         I'm not going to vary any further than that, Mr.

6  Saxe, because I think at 84 months that's sufficient, and not

7  greater than necessary, to serve the interests of the

8  sentencing factors set out in the statute.  I think although

9  certainly she has mitigating factors that you've alluded to

10  and that have appeared in the psychiatric report, her

11  traumatic upbringing, her drug dependency, her domestic

12  violence that she suffered, and so on and so on, and normally

13  those would be mitigating factors that I think would warrant

14  further departure, but in this case, you know, this was a

15  serious drug distribution business over an extended period of

16  time in which she played a leadership/managerial role.  She

17  knew what she was doing.  It was done for money.  It was done

18  as a livelihood.  And I think the interest of general

19  deterrence and specific deterrence and the needs for just

20  punishment wouldn't admit of any further departure on variance

21  grounds in this case.  I think the seriousness of the offense

22  simply outweighs the argument for a variance on any of those

23  other grounds.

24         All right.  The Court intends to impose sentence as

25  follows:

1          Pursuant to the Sentencing Reform Act of 1984, it

2    is the judgment of this Court that the defendant, Mara

3    Morillo, is hereby committed to the custody of the Bureau of

4    Prisons to be imprisoned for a term of 84 months.

5          It is recommended to the Bureau of Prisons that the

6    defendant participate in the intensive drug education and

7    treatment program.

8          The Court calls to the attention of the custodial

9    authorities that the defendant has a history of mental health

10   issues and recommends the defendant be allowed to participate

11   in any available mental health treatment programs while

12   incarcerated.

13         Upon release from imprisonment the defendant shall

14   be placed on supervised release for a term of three years.

15         Within 72 hours of release from the custody of the

16   Bureau of Prisons the defendant shall report in person to the

17   probation office in the district to which the defendant is

18   released.

19         While on supervised release the defendant shall not

20   commit another federal, state, or local crime, shall comply

21   with the standard conditions that have been adopted by the

22   court, and shall comply with the mandatory and proposed

23   special conditions attached to the presentence investigation

24   report.

25         I note for the record that counsel and the

1    defendant have executed a written acknowledgment of the nature

2    of those conditions.

3               It is further ordered that the defendant shall pay

4    to the United States a nonwaivable special assessment of $100,

5    which amount shall be due in full immediately.

6               The Court finds that this defendant does not have

7    the ability to pay a fine and accordingly will waive

8    imposition of a fine in this case.

9               The defendant shall be remanded to the custody of

10   the United States Marshal.

11              Would either counsel like to raise any legal or

12   factual issues with regard to the sentence?

13              MR. FARLEY:  None from the government.

14              MR. SAXE:  No, your Honor.

15              THE COURT:  The Court then hereby imposes the

16   sentence as announced.

17              Ms. Morillo, it's my obligation now to advise you

18   that you do have the right to appeal the sentence I've imposed

19   to the United States Court of Appeal for the First Circuit

20   located in Boston, Massachusetts.  Any appeal you file,

21   however, must be filed within 14 days of the entry of

22   judgment.  I expect judgment will be entered either today or

23   tomorrow, but in any event you'll have 14 days from the entry

24   of judgment to file an appeal.

25              The defendant is remanded to the custody of the

1    marshal and court is adjourned.

2            Thank you.

3            (Hearing concluded at 11:08 a.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3

4          I, Susan M. Bateman, do hereby certify that the

5    foregoing transcript is a true and accurate transcription of

6    the within proceedings to the best of my knowledge, skill,

7    ability and belief.

8

9

10   Submitted:   7-15-25      /s/   Susan M. Bateman _____
                               SUSAN M. BATEMAN, RPR, CRR
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

AO 245B   Judgment in a Criminal Case
NHDC 11/16   Sheet 1

# UNITED STATES DISTRICT COURT

District of New Hampshire

| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
|---|---|---|
| v. | ) | |
| | ) | |
| Mara Morillo | ) | Case Number: 15-cr-174-01-SM |
| | ) | |
| | ) | USM Number: 14150-049 |
| | ) | |
| | ) | Jonathan R. Saxe, Esq, |
| | | Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)    1 of the Indictment

☐ pleaded nolo contendere to count(s)
   which was accepted by the court.

☐ was found guilty on count(s)
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 U.S.C. §§ 846, 841 (a)(1) and (b)(1)(C) | Conspiracy to Distribute, and Possess with Intent to Distribute, Controlled Substances | 8/19/2015 | 1 |

The defendant is sentenced as provided in pages 1 through    7    of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

☐ Count(s)

     It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

5/11/2017

Date of Imposition of Judgment

_Signature of Judge_

Steven J. McAuliffe  U.S. District Judge

Name and Title of Judge

May 10, 2017

Date

**App. 137**

AO 245B     Judgment in Criminal Case
NHDC 11/16  Sheet 2 — Imprisonment

Judgment — Page __2__ of __7__

DEFENDANT: Mara Morillo
CASE NUMBER: 15-cr-174-01-SM

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

84 months.

☑ The court makes the following recommendations to the Bureau of Prisons:

that the defendant be allowed to participate in the intensive drug education and treatment program.

The Court calls to the attention of the custodial authorities that the defendant has a history of mental health issues and recommends the defendant be allowed to participate in any available mental health treatment programs while incarcerated

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m. ☐ p.m.  on _____ .

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on _____ .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

**App. 138**

AO 245B
NHDC 11/16

Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page    3    of    7

DEFENDANT:  Mara Morillo
CASE NUMBER:  15-cr-174-01-SM

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :

Three (3) Years.

## MANDATORY CONDITIONS

1.  You must not commit another federal, state or local crime.

2.  You must not unlawfully possess a controlled substance.

3.  You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

    ☐  The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(Check, if applicable.)*

4.  ☑  You must cooperate in the collection of DNA as directed by the probation officer.  *(Check, if applicable.)*

5.  ☐  You must comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which you reside, work, are a student, or were convicted of a qualifying offense. *(Check, if applicable.)*

6.  ☐  You must participate in an approved program for domestic violence. *(Check, if applicable.)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

**App. 139**

AO 245B    Judgment in a Criminal Case
NHDC 11/16 Sheet 3A — Supervised Release

| | | | |
|---|---|---|---|
| Judgment—Page | 4 | of | 7 |

DEFENDANT: Mara Morillo
CASE NUMBER: 15-cr-174-01-SM

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.

2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.

4. You must answer truthfully the questions asked by your probation officer.

5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. I understand additional information regarding these conditions is available at the www.uscourts.gov.

Defendant's Signature _____    Date _____

**App. 140**

AO 245B      Judgment in a Criminal Case
NHDC 11/16  Sheet 3D — Supervised Release

Judgment—Page     5     of           7

DEFENDANT:  Mara Morillo
CASE NUMBER:  15-cr-174-01-SM

## SPECIAL CONDITIONS OF SUPERVISION

In addition, the defendant shall comply with the following special conditions:

1.  You must participate in a substance abuse treatment program and follow the rules and regulations of that program. The probation officer will supervise your participation in the program (provider, location, modality, duration, intensity, etc.). You must pay for the cost of treatment to extent you are able, as determined by the probation officer.

2.  You must submit to substance abuse testing to determine if you have used a prohibited substance. You must pay for the cost of treatment to extent you are able, as determined by the probation officer. You must not attempt to obstruct or tamper with the testing methods.

3.  You must participate in a mental health treatment program and follow the rules and regulations of that program. The probation officer, in consultation with the treatment provider, will supervise your participation in the program (provider, location, modality, duration, intensity, etc.). You must pay for the cost of treatment to extent you are able, as determined by the probation officer,

4.  You must submit your person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States Probation Officer. Failure to submit to a search may be grounds for revocation of release. You must warn any other occupants that the premises may be subject to searches pursuant to this condition. The probation officer may conduct a search under this condition only when reasonable suspicion exists that you have violated a condition of supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

5.  If you are ordered deported from the United States, you must remain outside the United States, unless legally authorized to re-enter. If you re-enter the United States, you must report to the nearest probation office within 72 hours after you return.

**App. 141**

AO 245B    Judgment in a Criminal Case
NHDC 11/16    Sheet 5 — Criminal Monetary Penalties

Judgment — Page    6    of    7

DEFENDANT: Mara Morillo
CASE NUMBER: 15-cr-174-01-SM

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | **Assessment** | **JVTA Assessment \*** | **Fine** | **Restitution** |
|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ | $ | $ |

☐   The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐   The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
| **TOTALS** | $          0.00 | $          0.00 |  |

☐   Restitution amount ordered pursuant to plea agreement $ _____

☐   The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐   The court determined that the defendant does not have the ability to pay interest and it is ordered that:

  ☐   the interest requirement is waived for the   ☐   fine   ☐   restitution.

  ☐   the interest requirement for the   ☐   fine   ☐   restitution is modified as follows:

\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

**App. 142**

AO 245B
NHDC (11/16)   Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

DEFENDANT:  Mara Morillo
CASE NUMBER:  15-cr-174-01-SM

Judgment — Page  7  of  7

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☑  Lump sum payment of $  100.00  due immediately.

 ☐  not later than _____ , or
 ☐  in accordance  ☐ C,  ☐ D,  ☐ E, or  ☐ F below; or

B  ☐  Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ F below); or

C  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

D  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the Clerk, U.S. District Court, 55 Pleasant Street, Room 110, Concord, N.H. 03301.  Personal checks are not accepted.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

 Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

**App. 143**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:15-cr-00174-SM |
| v. | ) | |
| | ) | |
| MARA MORILLO | ) | |
| | ) | |

## OBJECTION TO DEFENDANT'S PETITION FOR WRIT OF CORAM NOBIS

The United States of America respectfully requests that the Court deny defendant's petition for coram nobis relief.

### A. Background

In 2016, the defendant, Mara Morillo, pleaded guilty to conspiracy to distribute, and to possess with intent to distribute, controlled substances, in violation of 21 U.S.C. § 846. ECF No. 84. This Court sentenced her to 84 months imprisonment, followed by three years of supervised release. ECF No. 207. Morillo served her incarcerative sentence and was released on supervision. Morillo is a Venezuelan national who previously resided in Colombia. At the time of her sentencing, her Presentence Report (PSR) indicated that she had entered the United States on a one-year travel visa in 1996. After her visa expired, she took no steps to renew it or to obtain legal residency in the United States. Recently, Immigration and Customs Enforcement (ICE) took Morillo into custody and a Final Order of Removal has been issued. On June 13, 2025, Morillo filed a petition for coram nobis relief to vacate her conviction. Concurrent with her coram nobis petition, Morillo filed an emergency motion for a stay of removal in this Court on June 13, 2025. The Court denied the motion for stay on June 18, 2025.

In her petition for writ of error coram nobis, Morillo asserts that her prior counsel provided constitutionally deficient representation by failing to inform her that, by pleading guilty

**App. 144**

to a felony drug charge, she would become mandatorily deportable. ECF No. 260-3 at 10. Morillo claims that if she had been aware of the immigration consequences of her guilty plea, she would not have pled guilty and would, instead, have proceeded to trial.

### The Applicable Standard

Pursuant to the All Writs Act, federal courts have the authority to grant writs traditionally available at common law, including a writ of error coram nobis. *See* 28 U.S.C. § 1651; *United States v. Morgan*, 346 U.S. 502, 506-507 (1954); *United States v. Sawyer*, 239 F.3d 31, 37-38 (1st Cir. 2001) (discussing historical background on the writ). Post-conviction relief by way of a writ of error coram nobis may be granted from a conviction only for "error of the most fundamental character" where the defendant is no longer in custody and where continuing adverse collateral consequences from the conviction persist. *Morgan*, 346 U.S. at 512; *Sawyer*, 239 F.3d at 37-38. While affirming its availability as a mechanism for post-conviction relief in extraordinary cases, the Supreme Court has made clear that "[c]ontinuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through this *extraordinary remedy* only under circumstances compelling such action to achieve justice." *Morgan*, 346 U.S. at 511 (emphasis added); *see also United States v. Denedo*, 556 U.S. 904, 916 (2009) ("No doubt, judgment finality is not to be lightly cast aside; and courts must be cautious so that the extraordinary remedy of coram nobis issues only in extreme cases."); *United States v. George*, 676 F.3d 249, 254 (1st Cir. 2012) ("Given the [Supreme] Court's evident concerns, it is not surprising that successful petitions for coram nobis are hen's-teeth rare.").

The First Circuit has explained that a writ of coram nobis may be granted only when a petitioner (1) explains her failure to seek relief from judgment earlier, (2) shows that she "continues to suffer significant collateral consequences from the judgment," and (3) proves that

**App. 145**

the error is fundamental to the validity of the judgment. *Hager v. United States*, 993 F.2d 4, 5 (1st Cir. 1993). "Even if the [three-part] test is satisfied, the court retains discretion over the ultimate decision to grant or deny the writ." *George*, 676 F.3d. at 255.

Defendant argues that she meets the third factor of the test because her counsel was ineffective on a fundamental point. To show ineffective assistance of counsel, it is defendant's burden to meet the two-prong test first set forth in *Strickland v. Washington*, 466 U.S. 668, 688 (1984). First, the defendant must show that her counsel's representation fell below an objective standard of reasonableness, and he must show that counsel's deficiency prejudiced him. *Feliciano Rodriguez v. United States*, 986 F.3d 30, 36 (1st Cir. 2021) (internal quotations omitted). Scrutiny of counsel's performance should be "highly deferential," and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. An attorney's performance is deficient "only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it." *Knight v. Spencer*, 447 F.3d 6, 15 (1st Cir. 2006) (quotations omitted). As to prejudice, defendant bears the "highly demanding and heavy burden" to show that, but for counsel's errors, there was a reasonable probability that the outcome would have been different. *Id.* (quotations omitted). "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). Furthermore, the strong societal interest in finality has "special force with respect to convictions based on guilty pleas." *United States v. Timmreck*, 441 U.S. 780, 784 (1979).

### B.  Discussion

The defendant has not shown that she can satisfy each of the three necessary factors or that justice requires extraordinary relief.

**App. 146**

**Defendant Has Not Shown that Her Delay was Justified**

First, defendant acknowledges that she received a notice of deportation in 2021. ECF No. 260-3 at 14. She asserts that she attempted to contact her former counsel and was unsuccessful. She does not report any other steps regarding her immigration status, conviction, or to obtain legal residency until she met with an immigration attorney in 2025. While she argues that she did not fully understand that she was mandatorily deportable until her consultation in 2025, the 2021 notice of deportation, and the fact that defendant knew her travel visa had expired in 1997, put her on notice of her deportability. Further, despite her claim that her attorney told her that she could "work out" her immigration situation once she was released, she reports no meaningful efforts to do so until 2025—years after her release from custody. Her stated efforts in the more than 3-year period from the notice of deportation until the filing of this petition are not an adequate explanation for her delay in seeking the instant relief. *See Aceituno v. United States*, 132 F.4th 563, 571 (1st Cir. 2025) (defendant's "thin rationale" for delay in filing coram nobis petition to vacate conviction and avoid permanent removability "underscore[d] its unreasonableness") (collecting cases).

**Defendant Has Not Shown that Removal is Due Solely to Her Conviction**

As to the second prong, defendant asserts that facing removal is a collateral consequence of her conviction that she continues to suffer from. But it is not clear that her removability is due only to her conviction. In fact, the record of the case indicates that the defendant has been residing in the United States illegally since her one-year travel visa expired in 1997. *See* PSR, ECF No. 195 at ¶ 46. Nor is there any record of the defendant taking any steps toward obtaining legal residency in the United States, either before or after her conviction. This fact would also make the defendant deportable. Therefore, she has not adequately shown that her guilty plea is

**App. 147**

the exclusive cause of her facing removal and has not demonstrated that she continues to suffer significant collateral consequences *from the judgment*.

### Defendant Has Not Shown Ineffective Assistance of Counsel

Finally, the defendant fails to meet the third prong of the test to merit coram nobis relief. She claims that her counsel was ineffective because he misadvised her that she would be able to "stay in the United States" and be "safe from deportation" despite her guilty plea, and that this was an error that was fundamental to the validity of the judgment. The defendant provided a personal affidavit supporting this account. *See* ECF No. 260-4. The defendant's assertions are insufficient to demonstrate mis-advice from counsel at this late stage. "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 582 U.S. 357, 368–69 (2017). Even if she could show fundamental error by her counsel, she cannot show that the alleged error prejudiced her.

### The Contemporaneous Evidence Does Not Support Mis-Advice of Counsel

The contemporaneous record casts doubt on defendant's claim that she received mis-advice from counsel resulting in a fundamental error. As noted above, the PSR indicated that the defendant had long overstayed her visa and had made no efforts to obtain legal residency, which undermines her assertion that only goal in plea negotiations was remaining in the country. Furthermore, Morillo's sentencing memorandum reads:

> "Morillo is facing a lengthy prison sentence, with almost certain deportation at the end of that sentence. She will be deported to Venezuela with three small children."

ECF No. 189 at 8. The memorandum went on to argue that this "almost certain" deportation, coupled with the poor conditions in her native Venezuela, warranted a prison sentence

**App. 148**

"significantly below the otherwise applicable guideline sentencing range." *Id.* Given that this representation of "almost certain deportation" was advanced at sentencing, it is implausible that counsel misadvised the defendant by saying she would not be subject to deportation at all. Later, during the defendant's sentencing hearing on May 11, 2017, counsel reiterated this same argument in open court, saying:

> "And the other thing is that she's going to be deported when she's -- when the sentence is over. As you could tell from Dr. Reade's report, it's kind of a very fractured, unstable situation where she's going to go, and she's not going to have any choice but to go there. So that's some additional punishment that will be imposed upon her. Plus, she'll be in jail for an additional period of time or incarcerated for an additional period of time after this sentence is done dealing with immigration issues."

ECF No. 267 at 25. With the defendant present, counsel articulated to the Court the fact that the defendant would be deported upon the conclusion of her sentence, specifying that she would not "have any choice" in the matter. This casts further doubt on the mis-advice claim.

The defendant also confirmed important details at her change of plea hearing on May 11, 2016. At that hearing, the Court and the defendant engaged in the following exchange:

THE COURT: Okay. Are you a citizen? You're not a citizen of the United States?

THE DEFENDANT: No.

THE COURT: All right. Do you understand that a conviction, pursuant to your plea of guilty, could result in immigration consequences that may include deportation? Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand, in other words, by admitting this offense and then subsequently being convicted, that conviction may be taken into account by the government in determining whether or not to deport you? Do you understand that?

THE DEFENDANT: Yes.

**App. 149**

ECF No. 266 at 17-18. The Court also told the defendant that "[if] at any time you don't understand a question I ask, you should feel free to ask me to explain it or ask [defendant's attorney] to explain it for you." *Id.* at 2. Finally, the Court asked the defendant whether anyone made "any promises of leniency or provided any other inducement of any kind for you to plead guilty other than the statements contained in the written plea agreement[?]" *Id.* at 16. The defendant did not volunteer any information about immigration benefit or status, but instead answered "No." *Id.*

Furthermore, defendant offers no objective evidence to support her claim that she was misadvised by counsel. She cites to *United States v. Frederick*, 526 F. App'x 91, 93 (2d Cir. 2013) for the proposition that "[i]n the context of plea negotiations, a defendant can make this showing by producing both a sworn affidavit or testimony stating that he would have accepted or rejected a plea agreement but for his counsel's deficient performance and also some additional 'objective evidence' supporting his or her claim." ECF No. 260 at 10. Here, the only factual basis for her claim is her personal affidavit dated June 2025 (ECF No. 260-4). The contemporaneous evidence, including counsel's arguments at sentencing, the language included in the plea agreement, and defendant's exchanges with the Court at the change of plea hearing indicate that the defendant was not misadvised.[1]

**Defendant Has Not Shown Prejudice**

Even if defendant could show that she was misadvised by her counsel and that this was *Strickland* error, she has not shown that she was prejudiced by the alleged error. First, the plea

---

[1] The facts here are different from, for instance, the *United States v. Castro-Taveras* case cited by the defendant. In that case, in addition to the defendant's account, the attorney who represented the defendant at his plea also represented him in his coram nobis petition and certified in that petition that counsel had in fact misadvised the defendant on the immigration consequences of his guilty plea. *See* 841 F.3d 34, 38 n.3 (1st Cir. 2016).

**App. 150**

agreement included language indicating that "[T]he defendant also understands that if she is not

a citizen of the United States, she may be removed from the United States, denied citizenship,

and denied admission to the United States in the future as a consequence of her conviction."[2]

ECF No. 84 at 11. The defendant signed the plea agreement and stated during her plea colloquy

with the Court that she knew and understood its terms. ECF No. 266 at 9-10. Second, as

transcribed above, the defendant engaged in a direct colloquy with the Court at her change of

plea hearing, acknowledging that she faced deportation as a potential consequence of her plea.

ECF No. 266 at 17-18. And finally, the defendant was present at her sentencing hearing when

her counsel stated that she would be deported at the conclusion of her sentence term. The

defendant was informed on multiple occasions of the immigration-related collateral

consequences of her plea, both in writing, in court at her sentencing, and in a colloquy with the

Court. Her attorney went as far as to say that her deportation *would* occur. *See* ECF No. 267 at

25. Because she was so informed, the defendant suffered no prejudice from counsel's alleged

mis-advice. *See Williams v. United States*, 858 F.3d 708, 717 (1st Cir. 2017) (Concluding that

petitioner suffered no prejudice from attorney's alleged mis-advice because the district court

itself informed petitioner at his change of plea hearing that he faced immigration consequences

as a result of the plea).

### Interests of Justice Not Served by a Writ

Finally, even if the defendant had satisfied the required elements for coram nobis relief,

the Court should exercise its discretion and deny the claim. The defendant was convicted more

---

[2] The defendant argues that this language in the plea agreement was itself "patently incorrect advice regarding immigration consequences" which demonstrates ineffective assistance of counsel. ECF No. 260 at 12. But this language, without making any guarantees about what action might be taken by third party immigration officials in the future, is ostensibly correct in that it states that the defendant may be subject to immigration consequences later on. Finally, it undermines the defendant's assertion that she was told she *would not* be subject to immigration consequences as a result of her conviction.

**App. 151**

than eight years ago and has not made a sufficient showing to allow her to withdraw her guilty plea. She was informed of the immigration consequences of her plea on the record in open court and her counsel argued that her sentence should be reduced based on her certain deportation. She benefitted from her plea by a reduction in sentence and cannot show now that justice requires setting aside a long-settled final judgment. *See Aceituno v. United States*, 132 F.4th 563, 572 (1st Cir. 2025) (defendant failed to explain "how the interests of justice could possibly be served by allowing him to withdraw his plea some ten years after" it was entered where he benefited from a reduced guideline sentencing range as a result of his plea and he admitted guilt "regardless of any immigration consequences.").

**Conclusion**

The United States respectfully requests that the Court deny the requested relief.

Dated: July 22, 2025                    Respectfully submitted,

                                        JOHN J. MCCORMACK
                                        Acting United States Attorney

                        By:             /s/ Matthew Vicinanzo
                                        Matthew Vicinanzo
                                        Assistant U.S. Attorney
                                        53 Pleasant Street, 4th Floor
                                        Concord, New Hampshire 03301
                                        Matt.vicinanzo@usdoj.gov

**App. 152**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * * * *
                                    *
UNITED STATES OF AMERICA            *
                                    *   15-cr-174-01-SM
          v.                        *   September 25, 2025
                                    *   10:19 a.m.
      MARA MORILLO                  *
                                    *
* * * * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF MOTION HEARING HELD VIA ZOOM
BEFORE THE HONORABLE STEVEN J. MCAULIFFE

APPEARANCES:


For the Government:        Matthew Vicinanzo, AUSA
                           U.S. Attorney's Office



For the Defendant:         Stephanie McClure, Esq.
                           Law Office of Stephanie McClure, LLC


                           Sandra A. Kuhn, Esq.
                           Family Legal Services



Court Reporter:            Susan M. Bateman, RPR, CRR
                           Official Court Reporter
                           United States District Court
                           55 Pleasant Street
                           Concord, NH 03301
                           (603) 225-1453

I N D E X

| WITNESSES: | Direct | Cross | Redirect |
|---|---|---|---|
| JEANETTE RODRIGUEZ | | | |
| By Ms. McClure | 5 | | |
| By Mr. Vicinanzo | | 6 | |
| SHANELL ANGELINA MORILLO | | | |
| By Ms. McClure | 8 | | |
| (No cross-examination) | | | |
| JONATHAN SAXE | | | |
| By Mr. Vicinanzo | 12 | | 22 |
| By Ms. McClure | | 16 | |

3

```
1                    P R O C E E D I N G S
2              THE CLERK:  The Court is in session and has for
3    consideration a motion hearing in the matter of United States
4    versus Mara Morillo, criminal case 15-cr-174-01-SM.
5              THE COURT:  I do not see Mr. Vicinanzo.
6              Is he here?
7              MR. VICINANZO:  I am, your Honor.  I think maybe
8    there's a number of faces on the screen.
9              THE COURT:  There you go.
10             MR. VICINANZO:  If I speak, maybe I show up.
11             THE COURT:  Yeah, you're there now.
12             Okay.  This is an expedited evidentiary hearing with
13   respect to the coram nobis petition filed by the defendant,
14   Mara Morillo.
15             All right.  Attorney McClure, would you like to
16   present any evidence?  I have the material you filed overnight.
17             MS. MCCLURE:  Thank you, your Honor.
18             And a brief thank you to the Court and counsel and
19   everyone for joining us on this expedited basis.  I realize
20   it's unusual and also inconvenient.  So I thank the Court.
21             I will be presenting limited evidence today.  I'll
22   be calling, first, Jeanette Rodriguez to the stand.
23             THE COURT:  I don't hear you, Lianne.
24             Can you administer the oath?
25             I don't see the witness, either.
```

1          THE CLERK:  Your Honor, she's still joining.

2          There she is.

3          Ms. Rodriguez, can you please unmute yourself?

4          MS. MCCLURE:  Ms. Rodriguez, if you can hear us, you

5    have to press the microphone button because it's time for your

6    testimony now.

7          THE WITNESS:  Very good.  Now you can hear me,

8    right?

9          MS. MCCLURE:  Yes.  Thank you.

10          Good morning.

11          THE CLERK:  Can you please raise your right hand and

12    leave it raised?

13                    JEANETTE RODRIGUEZ

14          having been duly sworn, testified as follows:

15          THE CLERK:  Thank you.

16          Please state your full name for the record.

17          THE WITNESS:  My name is Jeanette Rodriguez.

18          THE CLERK:  Thank you.

19          MS. MCCLURE:  If I might interject, Jeanette, if you

20    could kindly tell Ms. Martinez that it's not her turn so we

21    don't need to see her on the screen, it's a little bit

22    distracting for the Court, okay?

23          THE WITNESS:  Okay.

24          MS. MCCLURE:  Thank you.

25          THE WITNESS:  Thank you.

1            MS. MCCLURE:  Pardon, your Honor.

2            May I proceed?

3            THE COURT:  Please.

4            MS. MCCLURE:  Very well.

5                         DIRECT EXAMINATION

6    BY MS. MCCLURE:

7        Q.   Ms. Rodriguez, can you please state your full name

8    for the record?

9        A.   Jeanette Rodriguez.

10       Q.   And do you know a woman by the name of Mara Morillo?

11       A.   Yes, I do.

12       Q.   Can you explain to his Honor how it is that you know

13   her?

14       A.   Her aunt, Rosalva Martinez, and I have been friends

15   for over 19 years.

16       Q.   Okay.  And I'm going to draw your attention very

17   specifically to the time period of 2017 through recent times,

18   through the present.

19            Have you been present during any discussions with

20   Ms. Morillo specifically about her immigration plans?

21       A.   Yes.  I have been present for many of the

22   discussions as a translator, and I advise, yes.

23       Q.   Very good.  And can I ask you to please explain to

24   his Honor what was Ms. Morillo's plan for her immigration?

25       A.   Well, the plan for immigration was once she

1    completed her time served she would get out, she would have a

2    green card, she would be able to be with her children and with

3    her family.  That was the plan.  We had big plans for her to go

4    back to school, you know, and be a regular person, you know.

5        Q.    Okay.  And are you aware of whether or not she ever

6    sought an attorney for, you know, to get that paperwork going?

7        A.    Well, her criminal attorney advised her that he

8    would provide one for her.

9        Q.    Okay.

10       A.    So that's what we expected.

11       Q.    Very well.

12            MS. MCCLURE:  I actually have no further questions,

13   your Honor.

14            Thank you, Jeanette.

15            THE WITNESS:  Thank you.

16            THE COURT:  Mr. Vicinanzo.

17            No, no.  Wait, Ms. Rodriguez.  Wait, Ms. Rodriguez.

18            THE WITNESS:  Yeah, I'm listening.

19                         CROSS-EXAMINATION

20   BY MR. VICINANZO:

21       Q.    Ms. Rodriguez, one question.

22            Did you yourself ever speak to Ms. Morillo's

23   criminal attorney?

24       A.    No.  We've never spoken.

25            MR. VICINANZO:  Thank you.

```
1                    No further questions, your Honor.
2                    THE COURT:  All right.  Thank you.
3                    Ms. McClure.
4                    MS. MCCLURE:  Thank you, your Honor.
5                    I have one more equally brief witness.
6                    I'll be calling Angelina Morillo for the limited
7    purpose of discussing the immigration issue.
8                    THE CLERK:  Good morning, Ms. Morillo.
9                    THE WITNESS:  Good morning.  How are you?
10                   THE CLERK:  Good.
11                   Can you please raise your right hand?
12                   (Deputy clerk swears in the witness)
13                   THE WITNESS:  I solemnly swear that the testimony
14   I'm about to give will be the truth and nothing but the truth,
15   and what was the other part of it?
16                   THE CLERK:  So help you God.
17                   THE WITNESS:  So help me God.
18                   THE CLERK:  Thank you.
19                   Please state your full name for the record.
20                   THE WITNESS:  My name is Shanell Angelina Morillo.
21                        SHANELL ANGELINA MORILLO
22              having been duly sworn, testified as follows:
23                   MS. MCCLURE:  Thank you, Ms. Morillo.
24                   May I proceed, your Honor?
25                   THE COURT:  Of course.
```

1          MS. MCCLURE:  Thank you.

2                    DIRECT EXAMINATION

3    BY MS. MCCLURE:

4          Q.   Ms. Morillo, how is it that you are related to Mara

5    Morillo?

6          A.   Mara Morillo is my mom.

7          Q.   Okay.  So drawing your attention, meaning about, the

8    time period specifically once she got out of jail for the

9    criminal case until the present, can you explain to his Honor

10   what the family plan was for her immigration?

11         A.   The plan was that she was going to try to get her

12   papers.  That she was going to wait until I turned 21 so that I

13   can sponsor her and she can try to, like, get her green,

14   whatever, like her green card or her citizenship, anything so

15   that she can start her life basically, start working and doing

16   everything because -- yeah.

17         Q.   Was that something that you guys talked about

18   specifically?

19         A.   Yeah.  She talked to me about it all the time.  She

20   was always like, I'm going to wait till you turn 21 so you can

21   help me and sponsor me so that I can get my papers.

22         Q.   Okay.  And of course was that something you were

23   willing to do?

24         A.   Yes.  Of course.  Anything to help my mom.

25         Q.   Okay.  Very good.

1          MS. MCCLURE:  Your Honor, I have no more questions

2   for Ms. Morillo.

3          Thank you.

4          THE COURT:  Thank you.

5          Mr. Vicinanzo.

6          MR. VICINANZO:  I have no questions for this

7   witness.

8          THE COURT:  All right.

9          Thank you, ma'am.  You're excused as a witness.

10          Ms. McClure, any other witnesses?

11          MS. MCCLURE:  Thank you, Judge.  No.

12          In addition to those witnesses, we'll just rely on

13   the various affidavits as far as our testimonial evidence for

14   consideration.

15          THE COURT:  Thank you.

16          Mr. Vicinanzo, any evidence that the government

17   would like to present?

18          MR. VICINANZO:  Yes, your Honor.

19          I have one witness, Attorney Jonathan Saxe.

20          THE COURT:  Okay.  Thank you.

21          MR. VICINANZO:  At this time I'll call him.

22          Lianne, I know he's in the waiting room.

23          THE CLERK:  He's coming in now.

24          MR. VICINANZO:  Thank you.

25          (Pause)

 1              MS. MCCLURE:  While we're waiting if I could just

 2   bother Angelina and Jeanette.  If you can both put your

 3   microphones back on mute, that way we won't interrupt the

 4   government's witness.

 5              Thank you.

 6              MR. VICINANZO:  I see Mr. Saxe.  Actually, it looks

 7   like it's still loading.

 8              (Pause)

 9              From what I'm seeing, it looks like it's still

10   trying to connect.

11              THE CLERK:  Yeah, it looks like he's having a hard

12   time logging on or connecting.  I don't know if you want to try

13   to reach out to him and see if he signs off and tries to

14   re-sign back on?

15              MR. VICINANZO:  I'll text him now.

16              THE CLERK:  Thank you.

17              THE COURT:  He's probably in the White Mountains.

18              THE WITNESS:  Well, I can hear you.

19              MR. VICINANZO:  It might be a video issue.

20              THE WITNESS:  Well, I don't know why the video is

21   not on.  I can see everybody and I can hear everybody.

22              MR. VICINANZO:  Can you see any icons?

23              THE WITNESS:  Okay.  Let's see.

24              Audio.  Let me see.

25              Video.  I'll click on video.

1            It says stop video.

2            MR. VICINANZO:  Does it say the source of your video

3   camera?

4            THE WITNESS:  Let me just click on it and then click

5   on it again.

6            That didn't do anything.

7            Let me check my settings and see if there's a

8   different camera on.  I don't know.

9            (Pause)

10           I don't see any problem here.

11           MR. VICINANZO:  On the screen for me there's -- on

12  the video icon there's an upwards arrow, and if you click that,

13  it gives me options for cameras to select.  I don't know if

14  that's the same for you.

15           THE WITNESS:  Stop video.  Choose.  It says reset to

16  default.  What happened there?

17           Let's see.  Join.  I'll join again here and see

18  what's going on.

19           Can you hear me?

20           THE COURT:  Yes.

21           THE WITNESS:  I don't know what's going on.  I have

22  no idea.

23           MR. VICINANZO:  Your Honor, I might ask for

24  permission to have Mr. Saxe proceed without video.

25           THE COURT:  I don't have a problem with that.  I

```
 1    know what he looks like.
 2              MS. MCCLURE:  I have no objection.
 3              THE WITNESS:  Okay.
 4              MR. VICINANZO:  All right.
 5              Mr. Saxe, do you mind -- actually, I think you need
 6    to be sworn.
 7              THE CLERK:  Yes.
 8              Can you please raise your hand?
 9              THE WITNESS:  It's up.
10              THE CLERK:  Thank you.
11                            JONATHAN SAXE
12          having been duly sworn, testified as follows:
13              THE CLERK:  Thank you.
14              Please state your full name for the record.
15              THE WITNESS:  Jonathan Robert Saxe.
16                          DIRECT EXAMINATION
17    BY MR. VICINANZO:
18        Q.   Good morning, Attorney Saxe.
19        A.   Good morning.
20        Q.   Do you mind giving the Court and the parties a
21    brief -- telling us briefly about your background and
22    experience?
23        A.   My background.  I worked at the Federal Public
24    Defenders for almost 20 years.
25              Before that I was ten years working at a private law
```

**App. 164**

1    firm, and we did -- in the private law firm I did about 95

2    percent criminal, and in the Federal Public Defenders it was

3    all criminal.  There were some bits of habeas corpus as well.

4         Q.    And when you were at the Federal Public Defenders,

5    was that in New Hampshire?

6         A.    Yes.  The main office was in Boston, but I was in

7    the branch office in New Hampshire.

8         Q.    Thank you.

9         Now, Attorney Saxe, do you recall an individual by

10   the name of Mara Morillo?

11        A.    I don't.  I recalled the name once you -- you

12   contacted me, I think it was yesterday, and told me the name of

13   the case, and after you told me the name of the case I

14   remembered the name, but I don't have any memory of what went

15   on in the case.

16        Q.    And, Attorney Saxe, are you retired now?

17        A.    Yes.

18        Q.    And how long have you been retired?

19        A.    Since May 1, 2019.

20        Q.    So is it your testimony that you don't have any

21   specific recollection of any interactions you may have had with

22   Ms. Morillo?

23        A.    No, I don't.

24        Q.    Notwithstanding that you don't have any specific

25   recollections of your representation of Ms. Morillo, can you

1    describe for the Court what was your process in approaching

2    immigration consequences of plea agreements with your clients?

3        A.    Okay.  So, you know, we would approach a criminal

4    case involving someone with possible immigration issues --

5    first, we would analyze the criminal case the same way we would

6    analyze any criminal case, and then if there were potential

7    immigration consequences, I would research and try to find out

8    what those consequences would be.

9            I'm not an immigration attorney, but we were fairly

10   conversant in immigration law in a limited way that was

11   pertinent to criminal defense.

12       Q.    And once you researched those potential immigration

13   consequences that would result from a plea, was it your

14   practice to communicate those consequences to your client?

15       A.    Yes.

16       Q.    And was it your practice to do so in advance of

17   signing the plea agreement?

18       A.    Yes.

19       Q.    Did you always do this with your clients?

20       A.    Every time that I had a case that had potential

21   immigration consequences, I would do that.  It was basic.

22   Everyone in the office did that.

23       Q.    Now, I want to ask you if you have any specific

24   recollection of any immigration related deal regarding Ms.

25   Morillo?

 1      A.    No.  I don't have any.

 2      Q.    Do you recall any deals regarding immigration

 3  consequences at all during your time with the Federal Defenders

 4  in negotiating with the U.S. Attorney's Office?

 5      A.    You mean with this case?

 6      Q.    With this case or do you recall any agreements in

 7  particular?

 8      A.    I think that there was a case or two that was

 9  dismissed and I -- I don't know what you mean by that.  Do you

10  mean were there -- in the plea agreement?

11          THE COURT:  Mr. Saxe, he means did the government

12  ever agree to make arrangements with respect to immigration

13  consequences as part of a plea bargain.

14          THE WITNESS:  Not that I can recall.

15          MR. VICINANZO:  Thank you, your Honor.

16      Q.    And based on your understanding of -- do you have an

17  understanding of what the immigration consequences would be for

18  a noncitizen who is pleading guilty to an aggravated felony?

19      A.    My recollection which is -- I haven't done any legal

20  work in six plus years, but my recollection is that's an

21  aggravated felony and it would result in deportation.

22      Q.    And would that have been your understanding in the

23  2016 time frame as well?

24      A.    Yes.

25          MR. VICINANZO:  Thank you.

 1              I have no further questions for the witness, your

 2      Honor.

 3              THE COURT:  All right.  Thank you, Mr. Vicinanzo.

 4              Ms. McClure.

 5              MS. MCCLURE:  Thank you.

 6                           CROSS-EXAMINATION

 7      BY MS. MCCLURE:

 8          Q.   Good morning, Mr. Saxe.

 9              I understand you had a fairly long career there in

10      criminal defense.

11              Beginning in what year did you start the process of

12      researching immigration issues during your cases?

13          A.   I don't know.

14          Q.   Was there a time when you did not do that?

15          A.   Okay.  So any -- we had training about immigration

16      cases from the Federal Defender's Office.  I don't specifically

17      remember when that began.

18              And we also had training from the New Hampshire Bar

19      Association where we would have immigration lawyers come in and

20      do a presentation concerning immigration.

21              And then I had a number of phone calls where I would

22      contact immigration lawyers or they would contact me regarding

23      a specific case or general terms.  And I would also have

24      private lawyers who did appointed work in federal court who

25      would contact us and ask us questions about immigration.

1      Q.    Uh-huh.   Uh-huh.

2            Would you ask immigration attorneys in cases where

3      you weren't sure of what the consequences would be?

4      A.    I would say probably.

5      Q.    Okay.  But you don't remember doing that in this

6      case?

7      A.    I don't remember doing anything in this case, to be

8      honest.

9      Q.    All right.

10           And you just testified that your general

11     recollection of cases involving drugs is that they become

12     deportable because they are an aggravated felony.

13           Am I saying that correctly?

14     A.    Yeah.   There was some other stuff about that that I

15     don't have a recollection of, but we used to, you know, look at

16     the statute and look at the case law and look at the

17     guidelines.

18     Q.    Uh-huh.  When you say statute and guidelines, what

19     bodies of law would you check?  In every case as you testified

20     that you would do, what are the bodies of law and resources

21     that you would reference?

22     A.    Bodies of law?  I don't know.  If there was an issue

23     in a case, I would try to find another case where there was a

24     similar issue.  We would read the statute, the guidelines.

25     Q.    I guess what statute is my question.  What statute?

1     A.    I don't even remember the name of the statute.  8

2   U.S.C. 1326?  That could be it.  I don't remember.

3     Q.    Uh-huh.  But you would go so far as to research case

4   law; is that right?

5     A.    Yeah, sometimes.  I don't have any specific

6   recollection of that, but we generally do that in most cases if

7   there was an issue, and there were quite often issues.  I would

8   research about all kinds of issues.

9     Q.    And this was to determine if there was possible

10  immigration consequences?

11    A.    It was for a number of reasons, yeah.

12    Q.    Okay.  All right.

13          Did you ever give any of your clients exacting

14  immigration advice?

15    A.    I don't know what that means.

16    Q.    Exact, precise consequences.  Did you ever give them

17  exact immigration advice?

18    A.    I don't know what you mean by that.

19    Q.    Did you ever serve to give your clients not just,

20  you know, your opinion on the potential of consequences but the

21  exact conclusion that you reached after reviewing case law and

22  statutes?

23    A.    Well, I would give my clients advice concerning what

24  the immigration consequences could be if they were convicted of

25  an offense which I was representing them on.  If I thought they

1    would be deported, I would tell them that I thought that they

2    would be deported and then lots of times, or at least a number

3    of times, would either contact an immigration lawyer myself or

4    I would refer them to one if they wanted to hire one.

5        Q.    Okay.  So you would give advice on what the

6    immigration consequences could be based on your research?

7        A.    Yes.

8        Q.    Okay.

9            MS. MCCLURE:  I have no further questions.

10           Thank you.

11           THE COURT:  Anything further, Mr. Vicinanzo?

12           MR. VICINANZO:  Nothing further, your Honor.

13           THE COURT:  All right.  I have a few, Mr. Saxe.

14           THE WITNESS:  Yes.

15           THE COURT:  It's good to hear from you again.  I

16   hope you're enjoying retirement.

17           THE WITNESS:  I am.

18           THE COURT:  So the issue here basically,

19   essentially, is the providency of the guilty plea in this case.

20           To start with, my understanding is you have no

21   recollection of the guilty plea in this case?

22           THE WITNESS:  No, I don't.

23           THE COURT:  You have no recollection of specific

24   conversations you had with the defendant?

25           THE WITNESS:  No.

1          THE COURT:  So the next issue of course is

2    providency of the plea, whether or not she was adequately

3    advised before she pled guilty as to the immigration

4    consequences.

5          There's some case law out there that suggests

6    that -- well, Padilla v. Kentucky establishes that where it's

7    virtually certain that a conviction in a particular case will

8    result in deportation, that that has to be explained, not what

9    we usually did in the past which was just a general do you

10   understand there may be consequences with respect to

11   immigration up to and including deportation.  That's not

12   sufficient apparently under Padilla or subsequent case law.

13         So the question here is, was your advice along the

14   lines of, hey, you could have immigration consequences of a

15   negative type up to and including deportation or was your

16   practice to say in cases like aggravated drug felonies, you

17   most certainly will be deported?

18         THE WITNESS:  Well, my recollection of those

19   specific kinds of cases I would just tell people if you get

20   convicted of this, then you're going to be deported.

21         THE COURT:  Okay.  Mandatory deportation, did you

22   ever use that phrase?

23         THE WITNESS:  I don't know whether I did or not.  I

24   would tell them they would be deported.

25         THE COURT:  Certain deportation, did you ever use

1    that phrase?

2              THE WITNESS:  I don't know.

3              THE COURT:  If the Court explained during the plea

4    colloquy, which I think I did in this case, that you may be

5    deported, in cases when that happened when you were of the

6    opinion that there would be certain deportation, did you ever

7    correct the Court?  Did you ever interject and say, hey, I

8    don't think that's quite right, judge?

9              THE WITNESS:  Well, I don't know.

10             The U.S. Attorney reviewed some of the transcripts

11   with me from the sentencing hearing, and I don't remember

12   anything from it, I'm just remembering what he reviewed from

13   the transcripts, and he indicated that I had argued that she

14   would be deported and that that should be the reason for a

15   lesser sentence.

16             I don't recall that other than I recall that the

17   U.S. Attorney read the transcript to me yesterday.

18             I don't think that if I had somebody who was charged

19   with an aggravated felony which was, you know, definitely going

20   to get you deported, that I would not let them know that, but I

21   don't have any specific recollections of the exact words that I

22   used in any case, and I don't remember this case in particular.

23             THE COURT:  All right.  So you also don't have any

24   current recollection about the importance of deportation to

25   your client?

1              THE WITNESS:  Well, I think it's quite often more

2    important than the criminal conviction.

3              THE COURT:  Well, I agree, but of this specific

4    case, can you help us out with that, with this defendant?

5              THE WITNESS:  I don't have any recollection of what

6    went on.  I don't even remember whether there was cooperation

7    in this case.  I don't remember being -- you know, I just don't

8    remember.  I can't help you.

9              THE COURT:  All right.  Appreciate it.

10             I don't have anything further.

11             Do either counsel have further questions based upon

12   my questions?

13             MR. VICINANZO:  I guess this isn't necessarily

14   straight off of your question, your Honor, but I might ask one

15   further question about --

16                     REDIRECT EXAMINATION

17   BY MR. VICINANZO:

18        Q.    Mr. Saxe, if you were to have some sort of a deal

19   regarding immigration consequences, would you expect that to be

20   included in the plea agreement?

21        A.    Yeah.  Yes.

22             MR. VICINANZO:  No further questions.

23             THE COURT:  Attorney McClure, anything further?

24             MS. MCCLURE:  No thank you, Judge.

25             THE COURT:  All right.

 1                    Thank you, Mr. Saxe.  Appreciate it.

 2                    You're excused as a witness.

 3                    THE WITNESS:  Thank you.

 4                    MR. VICINANZO:  Thank you.

 5                    THE COURT:  Anything further, Mr. Vicinanzo?

 6                    MR. VICINANZO:  No, your Honor.  No further

 7  witnesses.

 8                    THE COURT:  All right.

 9                    Attorney McClure filed a number of documents.  I

10  assume there's no objection to those being admitted as full

11  exhibits in this hearing?

12                    MR. VICINANZO:  No objection, your Honor.

13                    THE COURT:  All right.

14                    Would either counsel like to be heard?

15                    MS. MCCLURE:  Yes, your Honor, I would.

16                    THE COURT:  All right.  Please.

17                    MS. MCCLURE:  Thank you.

18                    Your Honor, as you've both correctly stated today

19  and also during our phone conference yesterday, Padilla versus

20  Kentucky is controlling of course.  Padilla is very clear.

21  When immigration consequences are certain, as they are with

22  regard to this drug case, exact advice, as your Honor pointed

23  out, must be given to the defendant.  Not equivocal advice such

24  as you possibly may be deported or you could be deported.  You

25  must as a defense attorney tell your client you are certain to

1  be deported and, as your Honor also used the phrase, you are

2  mandatorily deportable and also that you are permanently

3  inadmissible to the United States.  Meaning you can never come

4  back.  You can never qualify for any papers of any kind.  No

5  adjustment.  No waiver of anything.

6            That said --

7            THE COURT:  Sorry to interrupt you.  We're a little

8  more informal up here.  I have a bad habit of doing that, but

9  while I have the thought --

10            MS. MCCLURE:  That's okay.

11            THE COURT:  -- can you point me to authorities that

12  establish the fact that deportation is mandatory?  In other

13  words, I haven't found anything that said there's no

14  discretion.  I mean --

15            MS. MCCLURE:  Yes.

16            THE COURT:  -- the government has to even if the

17  government doesn't want to deport a particular felon?

18            MS. MCCLURE:  Yes.

19            THE COURT:  Where does it say it doesn't matter what

20  the government thinks, they still have to deport the person?

21            MS. MCCLURE:  I'm absolutely happy to get that for

22  you.  It's right in the statutory scheme, and I think one of

23  the reasons that --

24            THE COURT:  Well, I'm looking for deportation is

25  mandatory and there's no discretion on the part of the

1     executive branch.

2              I just have a feeling that I doubt that that exists

3     but --

4              MS. MCCLURE:  Oh, no.  It's accurate.  It's

5     absolutely accurate.  It's right in it.  It's part of the

6     Controlled Dangerous Substances Act.

7              This case is not mandatorily deportable because it

8     has anything to do with an aggravated felony.

9              This case is mandatorily deportable under the part

10    of the Controlled Dangerous Substances Act that says if you are

11    convicted of anything other than the sheer possession of any

12    drug, except for under 30 grams of marijuana, you are

13    mandatorily deportable, and that's --

14             THE COURT:  No, no.  See, deportable is different,

15    right?

16             MS. MCCLURE:  But mandatorily deportable.  Meaning

17    once this conviction occurs, you are placed into a category of

18    folks who will at some point be deported just as much as you

19    are forever inadmissible under that same statutory scheme.  And

20    because you are forever inadmissible once your visa runs out or

21    whatever that case is, you're placed into proceedings if you

22    don't leave, and that's mandatory pursuant to the Controlled

23    Dangerous Substances Act statute.

24             It was briefed, but I'm happy to get the specific

25    provision if your Honor would like.

1          THE COURT:  Yeah, I'm slightly hung up on the

2     difference between, yes, you are mandatorily deportable but

3     deportation is not mandated.

4          MS. MCCLURE:  Deportation is mandated after -- so,

5     for example, if someone has a green card or a visa, they may

6     not come upon the government's radar service because having a

7     conviction, that's triggered once a renewal application is

8     made.  So once any type of renewal application is made, the

9     government automatically will see the disqualifying conviction,

10    not only deny any type of adjustment of status or procurement

11    of status, but also will start a removal proceeding, and that's

12    mandatory, and that's what the Controlled Dangerous Substances

13    Act says.  Unless it's 30 grams of marijuana, which of course

14    is irrelevant.

15         THE COURT:  Okay.  I'm looking for clear authority

16    that deportation is mandatory, not deportable status.

17         MS. MCCLURE:  Your Honor, it's right again in that

18    Controlled Dangerous Substances Act.  It's briefed, but I will

19    go ahead and I'll get that statute for you.

20         THE COURT:  All right.  Thank you.

21         MS. MCCLURE:  Of course.  Sorry.  My computer.  It's

22    running a little bit slowly.

23         THE COURT:  Oh, are you doing that now?

24         MS. MCCLURE:  I was going to do it now.  Would you

25    like me to get back to you with it so as not to interrupt?  I

 1    know it's 8 U.S.C., I think it's 1322.  It's definitely in my

 2    brief, your Honor.

 3              THE COURT:  Okay.  If it's in your brief, we'll find

 4    it, but I trust that when I find it it's going to say

 5    deportation is mandatory.

 6              MS. MCCLURE:  Yes, your Honor.  It absolutely is.

 7              THE COURT:  I'm sorry, Attorney McClure.

 8              Mr. Vicinanzo, do you agree that deportation is

 9    absolutely mandated, it's mandatory?

10              MR. VICINANZO:  That's not clear to me, your Honor,

11    and I would point to -- I would concede that for an aggravated

12    felony it is a mandatorily deportable offense.

13              In Padilla versus Kentucky I'm seeing language that

14    refers to -- this is virtually mandatory deportability.

15              THE COURT:  Well, it's virtually certain I think.

16              MR. VICINANZO:  Yeah, virtually certain, and it

17    talks about subject to limited exceptions that discretionary

18    relief is not available for these offenses, and it's talking

19    about cancelling removal as discretionary relief.  So I don't

20    know what those limited exceptions are at this moment, your

21    Honor.

22              MS. MCCLURE:  I believe --

23              THE COURT:  I -- I'm sorry, Ms. McClure.

24              MS. MCCLURE:  -- there's limited exceptions for an S

25    visa, which is the cooperation visa, if the government were to

1    offer that to a client.  That perhaps is the only thing that

2    could forgive a CDS offense.  But, again, I have to stress this

3    does not become a mandatory -- well, it becomes mandatorily

4    deportable under the aggravated felony scheme, but in

5    particular this case falls under the Controlled Dangerous

6    Substances Act, a different part of the statute, which requires

7    deportation.  It's not required that the government start the

8    deportation the day of the conviction, but they become

9    mandatorily on the waiting list, so to speak, for deportation

10   because for all intents and purposes they can never achieve

11   lawful status from that moment forward.

12             THE COURT:  Okay.

13             Sorry for the interruption.

14             MS. MCCLURE:  That's all right.  No problem.

15             And I apologize.  I don't have that statute

16   memorized.  I'm happy I briefed it.  And as soon as my computer

17   cooperates, I'll note it just for the record for completeness.

18             But what's important here is that in _Padilla_ the

19   Supreme Court looked up a case where Jose Padilla had been in

20   the United States for 40 something years, was convicted of a

21   crime that's on all fours with this one and as well fell under

22   the Controlled Dangerous Substances Act, and he alleged, as we

23   do here, that counsel gave him incorrect immigration advice.

24             Importantly, _Padilla_ didn't require much more than

25   that.  _Padilla_ said, I think it's on page 369 specifically,

1    that given the fact that the testimony is reasonable, a man

2    being here for 40 years whose immigration is important to him,

3    his whole life is here, his family, his children, his job is

4    here, everything is in the United States, it's reasonable to

5    believe that immigration was so important to him that he would

6    not have taken the deal otherwise.  That's also corroborated by

7    U.S. versus Mead which is briefed as well.

8            Padilla didn't impose another burden.  Padilla said,

9    okay, we look back to Strickland and is it reasonably probable

10   that something different would have happened in this case based

11   on what's in the record and is it reasonable that she or he may

12   have been misinformed.

13           So what I'm saying is that because these

14   conversations happen often, or actually mandatorily in private,

15   right, due to attorney-client privilege rules, there's not

16   going to be witnesses to this direct advice between client and

17   counsel often.  Nor do public defenders offices, at least in my

18   20 years of experience, reduce this stuff to writing.  It's

19   very unusual.

20           What we're trying to do here is prove Mara Morillo's

21   statements through the circumstantial evidence.  And the two --

22   well, the two -- actually, more than two witnesses including

23   Niala Ismail whose affidavit was submitted to your Honor.

24   Everyone agrees that since the time of this criminal conviction

25   she has enthusiastically made this family plan of as soon as

1    Angelina turns 21, I'm going to be able to got my green card.

2         Now, that's three witnesses that have -- four that

3    have testified to that.  Not only Mara herself, corroborated by

4    Angelina today, corroborated by Jeanette today, the 19-year

5    family friend, and also by the immigration attorney in her

6    affidavit who said, yes, they came to me looking to pursue a

7    green card, and I had to tell them go to Ms. McClure for

8    clarification because I don't know if this is going to work.

9    And only then did it come to light that she is completely

10   ineligible for any relief and also mandatorily deportable, and

11   lo and behold and shortly after, she was picked up by ICE.

12        That said, not only do we have the testimony

13   corroborated by witnesses, but here's the last important thing,

14   it's corroborated by the record, Judge.

15        So we look at two very important things in the

16   record, and that does not include the sentencing transcript.  I

17   know that Mr. Saxe referenced it and also counsel, with all due

18   respect to him, mentioned it yesterday, but we're looking at

19   what bore upon the decision to plead guilty.  Not anything

20   after that.

21        So when we look at the plea form and the statements

22   made at sentencing, we see that both the advice she received on

23   the plea form that she reviewed with Mr. Saxe and that he

24   signed and in the transcript is incorrect immigration advice.

25        So if we look at that plea form, which wasn't a

1    boilerplate form, this was a form that was typed up that could

2    have been changed, Mr. Saxe signed off, and it's on page 11 of

3    14, No. 11 also, giving that advice that there may be

4    consequences and she could possibly be deported.  Now, that

5    didn't change.  There was no marks.  There was no requests for

6    edits.  That's what he had his client sign.  And I suggest to

7    your Honor that that's the best evidence given that he doesn't

8    recall anything about what he told her.

9            He specifically reviewed this plea form, he signed

10   it, and it's wrong, and it comports with what our client is

11   saying.

12           Furthermore, the plea record, as your Honor

13   mentioned, back then, you know, a lot of the boilerplate

14   language did use that equivocal advice as your Honor did, so I

15   certainly understand the error, but your Honor did, and it's on

16   page 18, advise that there could possibly be some deportation

17   consequences as well.

18           I'll also note that in all of the plea discussions

19   the Court and the plea form erroneously refer to it still as

20   collateral consequences.  After Padilla it was determined that

21   it's not collateral anymore.  It's of primary importance, if

22   you will, to immigration related cases.

23           So because that --

24           THE COURT:  Well, it could be.  It's

25   defendant-specific.

**App. 183**

1              MS. MCCLURE:  Agreed.

2              THE COURT:  Just to cut to the chase, let me ask you

3   this.

4              MS. MCCLURE:  Yes.

5              THE COURT:  Let's assume Mr. Saxe gave correct

6   advice under Padilla v. Kentucky, you will be deported.  Isn't

7   there a clouding effect that arises from the content of the

8   plea agreement itself and from the Court's colloquy with the

9   defendant that would tend to at least cause confusion if not

10  negate Mr. Saxe's advice?

11             MS. MCCLURE:  Thank you for raising that.  You're

12  absolutely correct.

13             Assuming arguendo that he did give correct advice,

14  those two things, including the actual paper that she signed,

15  perhaps what someone might recall the most, and because it's

16  not an off-the-cuff statement or a verbal statement, when

17  someone signs something like the plea agreement, I would bet

18  that they put primary importance on that.

19             So, yes, I do agree with you, it could cloud it, and

20  also I think when someone signs the plea agreement that's

21  incorrect, that's probably what sticks in their head the most.

22             THE COURT:  Thank you.

23             MS. MCCLURE:  You're welcome.

24             And that has to be taken, of course, in context.

25  Our client has averred, as is backed up by her subsequent

1    actions in pursuing her green card, that she had thought that

2    perhaps she wasn't -- you know, civilians don't understand

3    cooperation the same way we do, of course.  And counsel, again

4    with all due respect, was positing that perhaps we were talking

5    about some kind of formal cooperation agreement and that's why

6    Ms. Morillo was confused.  She wasn't.  She of course did, as

7    Mr. Vicinanzo knows, offer to cooperate in this case, but she

8    had believed that by virtue of the plea agreement itself and

9    her cooperation just in general in accepting this plea of guilt

10   and offering to cooperate, doing all the things she was

11   supposed to do, that she was given a more favorable result.

12   That she would never be deported for something like this.  That

13   she would be able to get her green card once Angelina turned

14   21.

15          And as your Honor heard, she did act that out,

16   corroborating her mental state at the time, and I think that's

17   very important to note.

18          What I also think is important, and I'll be brief on

19   this, because not only is it out of circuit but also I think

20   your Honor has alluded to an agreement with this point, but

21   that boilerplate language in the plea form which is incorrect

22   has specifically been examined by the Fourth Circuit.  It's

23   worth noting just because the cases are so specific.  It's U.S.

24   versus Akinsade, 686 F.3d 248, and U.S. versus Sergio Murillo,

25   927 F.3d 808, both Fourth Circuit cases looking at these

**App. 185**

1    equivocal written plea agreements, and have said, no, you can't

2    do this.  You can't tell someone that they could or speak to

3    them in terms of possibilities when under the Controlled

4    Dangerous Substances Act, not aggravated felony, under the

5    Controlled Dangerous Substances Act deportation will occur at

6    some point and they will never be able to come back.  Permanent

7    bar.  Permanent inadmissibility.

8            So that said, that is in fact what we have here as

9    corroborated by the witnesses and her events, her actions that

10   support that mental state at the time of the plea.

11           And with that, Judge, I think Padilla is very clear.

12   I don't think that I have to continue to talk about that, but

13   if your Honor has any further questions, I certainly will be

14   happy to answer.

15           And I'll go ahead and I'll get that provision of the

16   statute of the CDS.

17           THE COURT:  I may.  Just give me a second.

18           MS. MCCLURE:  Sure thing.

19           Pardon me, Judge.  I'm having one of those moments.

20   If I can interject one last thing.

21           What I thought was interesting is that on your

22   Honor's questioning, brilliant question, did you ever, Mr.

23   Saxe, interrupt the Court if you heard the Court make a mistake

24   and correct me, say, no, it's not potential consequences, a

25   certain one.

**App. 186**

1        Of course he did not have any specific recollection
2   of interrupting the Court in that way.  Nor did he in this case
3   in the plea transcript.  And I think that was a great question
4   and a great eye into, you know, the fact that he did not do
5   that here.  Nor would he have done that behind closed doors.
6        THE COURT:  Well, I seem to have misplaced it.  It
7   wasn't that important but -- all right.  I'm good.  Thank you.
8        Attorney Vicinanzo.
9        MR. VICINANZO:  Thank you, your Honor.
10       So a few points to the arguments here.  I want to
11  address the timing of this motion, and I can do that briefly.
12  I did it in the brief.  So your Honor has the case of Aceituno,
13  the recent First Circuit case which did critique any delay for
14  seeking this type of relief on a coram nobis petition.
15       The defendant acknowledges in this case that, you
16  know, step one to even considering relief the Court does have
17  to find that a delay is justified, and this is a heavy burden
18  not only for this element but also for, you know, certainly for
19  achieving a writ of coram nobis in general.
20       As the Court is well aware, there is extensive case
21  law in the circuit about how limited and rare this type of
22  relief should be and what the burden is on the petitioner.
23       With respect to that first element to show that the
24  delay was justified, the defendant here admits that she
25  received a notice of deportation in 2021.  That was more than

1    four years ago.  You know, she has taken steps in engaging

2    immigration counsel this year to address her immigration

3    issues, but that's a long time to receive a notice of

4    deportation and not act, and that needs to be justified to the

5    Court in seeking this type of relief.

6            I will note, even going further down the line, she

7    was present at her sentencing.  Notwithstanding, you know, her

8    allegations that she was misadvised by Attorney Saxe, at her

9    sentencing it was stated very clearly both in her memo and in

10   open court with her present that she would be deported and it

11   was stated by her attorney.  At that point she would have also

12   been on notice of her deportation.

13           Now, that's -- during that time, as the Aceituno

14   case describes, there could have been a 2255 motion realizing

15   that she was now subject to potential deportation or virtual

16   certain deportation.  There was no 2255 motion while she was in

17   custody or on supervised release.

18           There was also no motion to withdraw her plea, which

19   Aceituno recognizes that under Rule 11 she would be able to

20   attempt to do once she learned of the immigration consequences

21   of her guilty plea.

22           So I would submit to the Court that the many years'

23   delay to take us to this point now, the defendant has not met

24   her significant burden to merit relief.

25           Also, with respect, I know we have some record

1    evidence now and an affidavit from her immigration counsel that

2    she could potentially -- if this conviction were overturned,

3    there could be some potential that she could reside in the

4    country and that she could gain lawful status.  I would just

5    note that from 1997 until the present she has been unlawfully

6    residing in the United States and until her recent efforts did

7    not take any attempts to achieve that lawful status.

8            So that is probably more of a -- goes to the

9    credibility of her timely efforts as well as her affidavit

10   where she says the most important factor in her plea of guilty

11   was remaining in the country.  I mean, we have 20 years of time

12   before that where it's uncontested that she did not attempt to

13   obtain legal residency despite being on an overstayed visa.

14           And that brings me to the final prong, which is

15   ineffective assistance and showing that she received

16   ineffective assistance, and of course under Strickland that is

17   both that she did (a) receive ineffective assistance, and (b)

18   that that prejudiced her.

19           So I want to talk first about the facts here.

20   Whether or not she received ineffective assistance.

21           The defense has cited to U.S. versus Lee.  In that

22   case the Supreme Court recommends that we don't take the

23   defendant's self-serving post-hac comments merely on their face

24   but we need some other type of objective evidence, and we look

25   to the contemporaneous records and other circumstantial

1    evidence that might support it.

2             I would note that the testimony of the defense

3    witnesses today do no more than Ms. Morillo's affidavit in that

4    they allude to her statements after the fact regarding her hope

5    of achieving legal residency.  I would submit that that has no

6    bearing on what her conversations were with her attorney and

7    certainly -- and whether or not she was misadvised.

8             I would note also that this is, and I'll come back

9    to this, but this is not a case where under Padilla she's

10   arguing that there was no advice of immigration consequences

11   but this is one where she is affirmatively arguing misadvice,

12   incorrect advice, and that there was some sort of deal that

13   would allow her to remain in the country.  It's not, you know,

14   my lawyer told me that I might get deported but that was

15   incorrect.  Her affidavit states my attorney told me that he

16   had a deal that I would be able to stay in the country if I

17   cooperated with the government.  That bears on credibility.

18   And so we have no other evidence that there was any sort of a

19   deal.

20            We do have evidence in the testimony of Mr. Saxe and

21   the plea agreement and the plea colloquy.  We have the

22   sentencing record.  There's no evidence of the deal.  Attorney

23   Saxe said that he doesn't recall there ever being any sort of

24   deal for any of his clients while practicing in the state and

25   if there were such a deal, it would be reflected in the plea

1    agreement.

2         And so I think Ms. Morillo's affidavit saying that

3    there was a deal I would submit is undermined by the

4    contemporaneous record and the testimony that we've heard

5    today.

6         So looking at what evidence we do have, objective

7    evidence that she was advised of the immigration consequences,

8    we have the plea agreement which your Honor is aware of at

9    docket 84 which contains language that if the defendant is not

10   a citizen, they may be subject to immigration consequences,

11   including deportation.

12        The plea colloquy has been referenced at docket 266

13   in which your Honor said that -- asked directly to the

14   defendant, are you a citizen, and she affirmatively answered

15   no.  And then your statement that she may be subject to

16   immigration consequences, including deportation, as a result of

17   her guilty plea.  There is -- you know, that is inconsistent

18   with the advice that she alleges she received that --

19        THE COURT:  I agree that that is inconsistent with

20   the advice she received from Mr. Saxe if Mr. Saxe followed his

21   usual practice in this case.  We don't know if he did or

22   didn't, but let's assume he did.  If he did follow his usual

23   practice and if he did give her advice, and let's be generous,

24   let's say he gave her advice to the effect that you will

25   virtually certainly be deported if you plead guilty because you

**App. 191**

will be convicted and that will render you mandatorily

deportable, the advice given her in the written plea agreement

is inconsistent with that advice.  The advice given her during

the Rule 11 plea colloquy with me is inconsistent with that

advice, and both the plea agreement and the colloquy under Rule

11 is inconsistent with the advice required by Padilla.

So do you agree that the advice given is

inconsistent with Padilla by the plea agreement and by the

Court?

MR. VICINANZO:  No, your Honor.

THE COURT:  Why not?

MR. VICINANZO:  I would submit that it's not

inconsistent.  It may be incomplete yet not inconsistent.

THE COURT:  Incorrect.

MR. VICINANZO:  The fact that there's a "may," I

would also submit that deportation is a future event.  It is

not a current event.

THE COURT:  You've read Padilla, right?

MR. VICINANZO:  Yes, your Honor.

The requirement is that the defendant be advised of

the immigration consequences.

THE COURT:  No.  Padilla says you can generally --

you don't have to be a precious future prognosticator about

immigration consequences as long as those consequences aren't

virtually certain.  If they are virtually certain, you do have

1  to be a prognosticator.  You do have to accurately tell the

2  defendant you will be deported.

3          MR. VICINANZO:  I would submit, your Honor, that

4  that is consistent with what Mr. Saxe --

5          THE COURT:  Yes.  And my point is not that.

6          My point is let's assume Mr. Saxe got it right on

7  Padilla.  We don't know if he did or didn't, but let's assume

8  he did, and now -- after he got it right, now you've got the

9  government submitting a written plea agreement that misleads

10  her with respect to that advice and you've got a Court in a

11  Rule 11 colloquy saying, which misleads her and says, oh, you

12  might be, you may be deported.  May be deported is a long way

13  from virtually certainly you will be deported, right?

14          MR. VICINANZO:  Yes, your Honor.

15          THE COURT:  And didn't the Supreme Court say, yeah,

16  that's a problem; that we can't have?

17          MR. VICINANZO:  The problem with that, your Honor, I

18  would submit, is that we're talking about the Sixth Amendment

19  here.  So this relates to misadvice of counsel and lack of --

20  you know, ineffective assistance of counsel, and I think the

21  record --

22          THE COURT:  Yeah.  The connection there is you, as

23  my lawyer, when you saw that plea agreement and you saw the

24  provision that was utterly inconsistent with Padilla v.

25  Kentucky, you had an obligation to correct that and tell me

**App. 193**

1    that that's wrong.  And when you heard the judge in the Rule 11

2    colloquy give me misadvice about that, it was inconsistent, Mr.

3    Saxe, with not only what you knew at the time but the advice

4    you gave me at the time and inconsistent with Padilla v.

5    Kentucky, you had a professional obligation to tell me because

6    I did not want to plead guilty if I was going to be deported.

7            That's the ineffective.  Why is that not ineffective

8    and why is that not prejudicial?

9            MR. VICINANZO:  Your Honor, I would submit that in

10   conjunction with correct legal advice that Mr. Saxe would have

11   provided to the defendant, which we have a record of, coupled

12   with this advice that you may be deported, it paints a picture

13   of adequate legal advice that does correctly state that she

14   faces deportation.

15           THE COURT:  No, no, no.  I think you're missing my

16   point.  Yeah, beforehand.  But after the fact now adequate

17   counsel is faced with contradictory advice from what he gave

18   his client, a written plea agreement that's inconsistent with

19   the advice he gave his client, and he knows it's inconsistent

20   because he's familiar with Padilla v. Kentucky.  Then in the

21   plea colloquy the Court gives further inconsistent advice,

22   Padilla v. Kentucky, and he knows that, and yet he does

23   nothing.  He doesn't correct it.  He doesn't say, Judge, just a

24   second.  He doesn't say to the government, we've got to amend

25   this plea agreement because it provides confusing misadvice.

**App. 194**

1         Isn't that ineffective assistance and isn't it

2    prejudicial if you care about not being deported?

3         MR. VICINANZO:  Your Honor, I would submit that

4    coupled with current legal advice this is not -- this doesn't

5    paint a picture of -- I understand your Honor's point.  The

6    defendant was not in fact misadvised, was correctly advised,

7    and then was told about potential immigration consequences

8    which encompassed the correct advice that the attorney gave to

9    the client that --

10        THE COURT:  As much as I'm enjoying the debate, I'm

11   not going to beat you up too much, but do you at least concede

12   that the advice in the written plea agreement was inconsistent

13   with Padilla v. Kentucky in this case?

14        MR. VICINANZO:  I'm trying to think of how to answer

15   this.

16        THE COURT:  Answer it honestly and forthrightly as

17   an officer of the court.

18        MR. VICINANZO:  Of course, your Honor.

19        I'm trying to think of how I could convey my point

20   that -- I would submit that --

21        THE COURT:  It's a legal question.  It's a law

22   school question.

23        MR. VICINANZO:  Yeah.  Exactly.

24        THE COURT:  You read the plea agreement's advice

25   with respect to potential immigration consequences, you read

**App. 195**

1    <u>Padilla v. Kentucky</u> and you understand it, and the question is

2    very simple.  As a matter of law, do you concede or do you not

3    concede that the language in the plea agreement was

4    inconsistent with the holding in <u>Padilla v. Kentucky</u>?

5         MR. VICINANZO:  Standing alone, perhaps.  But, your

6    Honor, taken in conjunction with correct legal advice, I think

7    that the overall advice given to the defendant --

8         THE COURT:  Yeah, but of course that's not my

9    question.  That's just a different argument.

10        The question is -- I'll break it down into little

11   pieces.  Do you think that in this case where mandatory

12   deportation is a fact, a virtual certainty, that the language

13   in the plea agreement is inconsistent with <u>Padilla v.</u>

14   <u>Kentucky</u>'s requirement?

15        MR. VICINANZO:  I would have to I would say --

16        THE COURT:  I'll let you off the hook.  I can see

17   you're having a big struggle with that.  I'll let you off the

18   hook.  I think I know the answer.

19        MR. VICINANZO:  Agreed, your Honor.  I don't know

20   that I'm willing to concede that <u>Padilla</u> says that you have

21   to --

22        THE COURT:  Mr. Vicinanzo, I really appreciate your

23   accommodation in this case and in just helping the Court

24   facilitate a prompt hearing in the case, so I'm not going to

25   put you to the test.  I'll figure the answer out.

**App. 196**

1          MR. VICINANZO:  Thank you, your Honor.

2          The last thing I would submit on that is <u>Padilla</u> --

3    I don't think it uses -- there are no magic words that <u>Padilla</u>

4    prescribes.  The overall prescription/description of <u>Padilla</u> is

5    that they have to be alerted as to immigration consequences.

6          THE COURT:  Well, I think I disagree.  I think it's

7    pretty clear <u>Padilla</u> requires where immigration is virtual

8    certainty that has to be communicated in no uncertain terms to

9    the defendant.  That's my view of it.

10          All right.  Anything else?

11          MR. VICINANZO:  And then I would add there's

12    additional evidence.  I understand that the sentencing memo and

13    the sentencing hearing, your Honor, is after the plea, but the

14    fact that Attorney Saxe is in both places saying "almost

15    certain deportation" and "will be deported" in the sentencing

16    transcript at docket 267 supports the record that he gave

17    accurate legal advice to the defendant regarding the

18    immigration consequences of her plea.

19          THE COURT:  Sure.  That's one view of it.

20          The other view of it might be that that highlights

21    the contradiction that was not brought to the Court's

22    attention.

23          MR. VICINANZO:  And a third view of it is that

24    counsel did not see those as inconsistent.

25          THE COURT:  Oh, right, sure, but of course that's

1    not the deciding point I don't think.

2              MR. VICINANZO:  That's all I would say about the

3    facts here, your Honor.  Then I would go to prejudice.

4              THE COURT:  Okay.

5              MR. VICINANZO:  With regards to prejudice, I would

6    point the Court to Williams, which was a mandatory deportation

7    case, the Williams case in the First Circuit from 2017.  That's

8    858 F.3d 708.  That case, which I've cited in my brief,

9    involved a mandatory deportation.  The defendant had filed a

10   coram nobis petition, and the Court there found that while

11   there was a factual record of misadvice, or a potential factual

12   record of misadvice, he did not address the prejudice question.

13   And this was in the wake of Padilla.  It was with respect to a

14   misadvice claim like we have here.  The Court cited the lower

15   Court's colloquy from the plea, and in that the Court said that

16   there was no prejudice regarding the alleged misadvice because

17   the Court had said:  Now do you understand as a consequence of

18   this offense it is possible that you could be deported?  The

19   petitioner replied:  Yes, sir.

20             There was a superseding indictment and a second

21   change of plea.  At that hearing the Court said:  As a result

22   of this conviction, do you understand you could face the

23   possibility of deportation?  And the petitioner replied:  Yes,

24   sir.

25             Again, the underlying offense was fraudulent, you

know, fraudulent statements in the obtaining of a passport

which rendered the person mandatorily deportable and could not

then reapply for U.S. citizenship based on that offense, and

the Court there found that because of that colloquy there was

no prejudice to the defendant in being misadvised of the

immigration consequences of his plea.

So notwithstanding -- I understand that there are

some Fourth Circuit cases with better records on the misadvice

and clear factual records that the defendant was in fact

misadvised beyond just the plea agreement.  We actually have

affirmative evidence of misadvice beyond an affidavit.

Those are Fourth Circuit cases.  Notwithstanding,

this is a First Circuit case that says there's no prejudice

when such a colloquy, including a possibility of deportation,

took place in a misadvice claim.

THE COURT:  Okay.  Thank you.  Appreciate it.

Attorney McClure, do you want to address the delay

issue?

MS. MCCLURE:  Yes, your Honor, I do.

What counsel had indicated was that Aceituno, it's a

2025 case, of course I'm familiar with it, would I suppose

negate the opportunity for relief.  In Aceituno I believe there

was over a ten year delay.

Notwithstanding that, we've had four witnesses now

testify, including an immigration attorney, the defendant, and

1    two witnesses who have all indicated to the Court that Ms.

2    Morillo did not know that there was going to be a problem

3    because she was laboring under the misadvice of counsel.

4            Niala Ismail, the immigration attorney, advised the

5    Court that she showed up in her office ready to fill out papers

6    for her green card, and that's when she referred her to me

7    because of the --

8            THE COURT:  Yeah, but that was long after she got

9    the notice of deportation though, wasn't it?

10           MS. MCCLURE:  It was.  But when your attorney tells

11   you, don't worry about it, you'll never be deported for this,

12   it bears upon you in the same way that -- well, it bears upon

13   you.  She thought all I have to do is hire an attorney and the

14   attorney will take care of this.

15           Now, we have an affidavit submitted by Angelina

16   which -- I didn't want to necessarily bring up the abuse

17   scenario because I don't want to be accused ever of trying to

18   invoke sympathy on a Court.  However, we have an affidavit

19   setting forth conditions that were absolutely beyond atrocious

20   in a home where this woman had what I feel very strongly are

21   claims to even actual innocence because she was so mentally

22   abused.  Daily -- I don't want to say daily strangulation, but

23   daily physical abuse.  Abuse that rose to strangulation,

24   unconsciousness.  Criminal charges that were filed that we have

25   proof of at that time.  Restraining orders from breaking into

**App. 200**

1    her home.

2              This was not a woman that got out of jail and had a

3    la-di-da life.  She was in jail after a lifetime of abuse and

4    it may have taken her a little time to get money and to get the

5    wherewithal to get to an attorney, but certainly we can't hold

6    it against someone as we wouldn't hold it against a cancer

7    patient for failure to seek radiation sooner until the cancer

8    was discovered.

9              In the same way what we have here is Aceituno

10   requiring reasonable diligence, and what we have is an action

11   of going to an immigration attorney, we had a plan of pursuing

12   immigration, and as soon as she got money to go to an attorney,

13   she did, and immediately after discovering the problem, to me

14   as an officer of the Court as I've represented, she immediately

15   hired me without any delay and borrowed money to do so, if I

16   could be so bold to say.  She did everything possible to be

17   able to hire me to address this issue.  So I think and I'm

18   certain that Aceituno would be satisfied with that.

19             There were a few other points I wanted to address

20   briefly.  May I, your Honor?

21             THE COURT:  Of course.

22             MS. MCCLURE:  Very well.

23             So in Padilla I think that answers the question that

24   your Honor had indicated earlier that you were struggling with

25   with regard to the CDS Act and the mandatory deportability

**App. 201**

1    versus certain deportation.  And fortunately for everyone,

2    Padilla actually concerned a CDS offense for trafficking.  It's

3    right there on page 369 of Padilla where Padilla looks at the

4    CDS offense, construes the applicable statute for deportation,

5    which is 8 U.S.C. 1227(a)(2)(B)(i), which is in my brief, and

6    on page 369 of Padilla indicates that due to that statute

7    bearing upon the CDS offense, it is certain deportation that

8    would follow.

9          So I hope that answers your Honor's question in that

10   regard.

11         What I will say with regard quickly to prejudice is

12   I don't think that after Padilla anyone could question that

13   deportation and separation from your family and your children

14   is prejudicial.  I think what the link there was missing is

15   that defendant in that case did not aver to the Court that he

16   would not have pleaded guilty but for the bad advice.

17         In this case, as in Padilla, we did, and we did so

18   under circumstances where there was an abuse scenario and even

19   a psychological report at some point that talked about terrible

20   life circumstances for this woman who even as she stood before

21   the Court in taking the plea was actively on medication for

22   panic attacks.  This is not an ordinary defendant here.

23         And I say all of that to say for this particular

24   person there could be no question that she is leaving multiple

25   children behind.  She's in custody, unable to get bond

```
 1   specifically because of this case, and she averred to the Court
 2   that I would have gone to trial had I known, I would not have
 3   taken this deal, and under her unique circumstances that is
 4   certainly reasonable to have done so.  So prejudice we do
 5   certainly have in this case.
 6               I also wanted to -- well, actually, I think I've
 7   covered my points unless your Honor has any other questions.
 8               THE COURT:  I don't.  Thank you very much.
 9               Mr. Vicinanzo, anything else?  Are we good?
10               MR. VICINANZO:  The last thing I would just
11   reiterate, your Honor, is that, you know, with respect to the
12   plea agreement and potential misadvice in the plea agreement,
13   that's not the allegation in this petition.
14               The allegation here based on the petitioner's
15   affidavit is that she was told by her counsel that she would be
16   able to remain in the United States and that there was a deal,
17   you know, and that's the record we have before us.  I would
18   just submit that that's the record that we have to decide in
19   this case, whether or not she was in fact misadvised by her
20   counsel, and I would submit that that's not the case.
21               THE COURT:  Okay.  Thank you very much.  I
22   appreciate it.
23               That will conclude the hearing.  I'll try to get
24   this out as promptly as I can.  Appreciate it.
25               MR. VICINANZO:  Thank you, your Honor.
```

**App. 203**

1            MS. MCCLURE:   Thank you, your Honor.

2            And thank you counsel and the Court for putting this

3   together in a jiff.

4            MR. VICINANZO:   Thank you.

5            (Conclusion of hearing at 11:36 a.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E

 2

 3          I, Susan M. Bateman, do hereby certify that the

 4   foregoing transcript is a true and accurate transcription of

 5   the within proceedings to the best of my knowledge, skill,

 6   ability and belief.

 7

 8

 9   Submitted:  11-25-25   /s/   Susan M. Bateman _____
                            SUSAN M. BATEMAN, RPR, CRR
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

UNITED STATES OF AMERICA        )
                                )
            v.                  )        No.  1:15-CR-00174-SM
                                )
MARA MORILLO                    )
_____)

## UNITED STATES' NOTICE OF APPEAL

Pursuant to 28 U.S.C. § 1291, the United States hereby provides notice to appeal the

district court's September 26, 2025 order granting the petitioner's petition for a writ of coram

nobis.

Respectfully submitted,

ERIN CREEGAN
United States Attorney

Dated:  October 23, 2025        By:     /s/ Matthew Vicinanzo
                                        Matthew Vicinanzo
                                        Assistant U.S. Attorney
                                        Bar No. NH 277123
                                        53 Pleasant Street, 4th floor
                                        Concord, New Hampshire 03301
                                        (603) 225-1552
                                        matt.vicinanzo@usdoj.gov

## Notice of Intent to Issue a Final Administrative Removal Order

### In removal proceedings under section 238(b) of the Immigration and Nationality Act

Event No: PHI1705000358
File Number 200 951 323

To: MARA ASTRID JAIMES MARTINEZ AKA: LOPEZ, FERNANDA; JAIMES, MARA; MORILLO, MARA

Address: Tallahassee FCI 501 Capital Circle NE Tallahassee, FLORIDA, 32301

(Number, Street, City, State and ZIP Code)

Telephone:

(Area Code and Phone Number)

Pursuant to section 238(b) of the Immigration and Nationality Act (Act) as amended, 8 U.S.C. 1228(b), the Department of Homeland Security (Department) has determined that you are amenable to administrative removal proceedings. The determination is based on the following allegations:

1. You are not a citizen or national of the United States.

2. You are a native of **VENEZUELA** and a citizen of **VENEZUELA**

3. You entered the United States (at)(near) NEW YORK CITY, NEW YORK on or about **October 27, 1996**

4. At that time you entered

5. You are not lawfully admitted for permanent residence.

6. You were, on _____, convicted in the **See I-831** _____ Court _____ for the offense of _____ in violation of _____ for which the term of imprisonment imposed was _____.

### Charge:
You are deportable under section 237(a)(2)(A)(iii) of the Act, 8 U.S.C. 1227(a)(2)(A)(iii), as amended, because you have been convicted of an aggravated felony as defined in section 101(a)(43)( *B/U* ) of the Act, 8 U.S.C. 1101(a)(43)( *B/U* ).

Based upon section 238(b) of the Act, 8 U.S.C. 1228(b), the Department is serving upon you this NOTICE OF INTENT TO ISSUE A FINAL ADMINISTRATIVE REMOVAL ORDER ("Notice of Intent") without a hearing before an Immigration Judge.

### Your Rights and Responsibilities:
You may be represented (at no expense to the United States government) by counsel, authorized to practice in this proceeding. If you wish legal advice and cannot afford it, you may contact legal counsel from the list of available free legal services provided to you.

You must respond to the above charges in writing to the Department address provided on the other side of this form within 10 calendar days of service of this notice (or 13 calendar days if service is by mail). **The Department must RECEIVE your response within that time period.**

In your response you may: request, for good cause, an extension of time; rebut the charges stated above (with supporting evidence); request an opportunity to review the government's evidence; admit deportability; designate the country to which you choose to be removed in the event that a final order of removal is issued (which designation the Department will honor only to the extent permitted under section 241of the Act, 8 U.S.C. 1231); and/or, if you fear persecution in any specific country or countries on account of race, religion, nationality, membership in a particular social group, or political opinion or, if you fear torture in any specific country or countries, you may request withholding of removal under section 241(b)(3) of the Act, 8 U.S.C. 1231(b)(3), or withholding/deferral of removal under the Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment (Convention Against Torture). A grant of withholding or deferral of removal would prohibit your return to a country or countries where you would be persecuted or tortured, but would not prevent your removal to a safe third country.

You have the right to remain in the United States for 14 calendar days so that you may file a petition for review of this order to the appropriate U.S. Circuit Court of Appeals as provided for in section 242 of the Act, 8 U.S.C. 1252. You may waive your right to remain in the United States for this 14-day period. If you do not file a petition for review within this 14-day period, you will still be allowed to file a petition from outside of the United States so long as that petition is filed with the appropriate U.S. Circuit Court of Appeals within 30 calendar days of the date of your final order of removal.

G8672 GONZALEZ - (A) SDDO

(Signature and Title of Issuing Officer)

Tallahassee, Florida

(City and State of Issuance)

August 23, 2021

(Date and Time)

Form I-851 (Rev. 08/01/07)

**App. 207**

# Final Administrative Removal Order

### In removal proceedings under section 238(b) of the Immigration and Nationality Act

Event No: PHI1705000358

File Number  200 951 323

Date  **September 18, 2017**

To: MARA ASTRID JAIMES MARTINEZ AKA: LOPEZ, FERNANDA; JAIMES, MARA; MORILLO, MARA

Address: FEDERAL DETENTION CENTER 700 ARCH STREET PHILADELPHIA, PENNSYLVANIA, 19107
(Number, Street, City, State and ZIP Code)

Telephone:
(Area Code and Phone Number)

## ORDER

Based upon the allegations set forth in the Notice of Intent to Issue a Final Administrative Removal Order and evidence contained in the administrative record, I, the undersigned Deciding Officer of the Department of Homeland Security, make the following findings of fact and conclusions of law. I find that you are not a citizen or national of the United States and that you are not lawfully admitted for permanent residence. I further find that you have a final conviction for an aggravated felony as defined in section 101(a)(43)(B/U) of the Immigration and Nationality Act (Act) as amended, 8 U.S.C. 1101(a)(43)(B/U), and are ineligible for any relief from removal that the Secretary of Homeland Security, may grant in an exercise of discretion. I further find that the administrative record established by clear, convincing, and unequivocal evidence that you are deportable as an alien convicted of an aggravated felony pursuant to section 237(a)(2)(A)(iii) of the Act, 8 U.S.C. 1227(a)(2)(A)(iii). By the power and authority vested in the Secretary of Homeland Security, and in me as the Secretary's delegate under the laws of the United States, I find you deportable as charged and order that you be removed from the United States to:

VENEZUELA

or to any alternate country prescribed in section 241 of the Act.

T 8606 B DECKER
(Signature of Authorized Official)

**(A) AFOD**
(Title of Official)

9/7/2021     TALLAHASSEE, FL
(Date and Office Location)

## Certificate of Service

I served this FINAL ADMINISTRATIVE REMOVAL ORDER upon the above named individual.

9/7/2021     13:00  Tallahassee, FL   via mail (UPS) &   In person thru BOP Personnel
(Date, Time, Place and Manner of Service)

- DO
(Signature and Title of Officer)

Form I-851A (Rev. 08/01/07)

**App. 208**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on February 27, 2026, I caused a true and correct copy of this appendix to be served through the Court's CM/ECF system upon the filing users:

Stephanie McClure, Esq.
*Counsel for Appellee*

s/ *Michael A. Rotker*
Michael A. Rotker
U.S. Department of Justice
