# No. 25-2027

IN THE

# United States Court of Appeals

FOR THE FIRST CIRCUIT

_____

MARA MORILLO,

*Petitioner-Appellee,*

v.

UNITED STATES OF AMERICA,

*Respondent-Appellant.*

_____

On Appeal from the United States District Court for the
District of New Hampshire, No. 1:15-cr-174
The Hon. Stephen A. McAuliffe

_____

## REPLY BRIEF FOR THE UNITED STATES

_____

ERIN CREEGAN
  *United States Attorney*
  *District of New Hampshire*

MATTHEW VICINANZO
  *Assistant U.S. Attorney*
  *District of New Hampshire*

A. TYSEN DUVA
  *Assistant Attorney General*
  *Criminal Division*

JOSH A. GOLDFOOT
  *Deputy Assistant Attorney General*
  *Criminal Division*

MICHAEL A. ROTKER
  *Attorney*
  *Criminal Division, Appellate Section*
  *United States Department of Justice*
  *950 Pennsylvania Ave NW, Suite 1264*
  *Washington, DC 20530*
  *michael.rotker@usdoj.gov*

**TABLE OF CONTENTS**

Pages

TABLE OF CONTENTS ............................................................... i

TABLE OF AUTHORITIES ........................................................ ii

INTRODUCTION .................................................................... 1

ARGUMENT ......................................................................... 3

I.    MORILLO DID NOT EXERCISE
REASONABLE DILIGENCE IN SEEKING
CORAM NOBIS RELIEF ............................................. 4

II.   MORILLO HAS NOT SHOWN THAT ANY
DEFICIENT PRE-PLEA ADVICE SHE MAY
HAVE RECEIVED WAS PREJUDICIAL ........................... 11

III.  MORILLO DOES NOT DEFEND THE
DISTRICT COURT'S FAULTY ANALYSIS
OF THE EQUITIES ................................................... 17

CONCLUSION ..................................................................... 22

CERTIFICATES OF COMPLIANCE AND SERVICE

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Aceituno* v. *United States*,
132 F.4th 563 (1st Cir. 2025)......................................................*passim*

*Lee* v. *United States*,
582 U.S. 357 (2017)...................................................2, 12, 14, 15

*Murray* v. *United States*,
704 F.3d 23 (1st Cir. 2013) ........................................................ 20

*Nissingbaum* v. *Jennings*,
148 F.4th 548 (7th Cir. 2025) ............................................... 16-17

*Padilla* v. *Kentucky*,
559 U.S. 356 (2010)................................................................. 11

*Saka* v. *Holder*,
741 F.3d 244 (1st Cir. 2013) .................................................... 17

*Smith* v. *Robbins*,
528 U.S. 259 (2000)................................................................. 11

*Strickland* v. *Washington*,
466 U.S. 667 (1984)................................................................. 11

*United States* v. *Bonilla*,
637 F.3d 980 (9th Cir. 2011)...................................................... 8

*United States* v. *Frederick*,
526 F. App'x 91 (2d Cir. 2013) ...................................... 14-15, 15

*United States* v. *George*,
676 F.3d 249 (1st Cir. 2012) ......................................2, 4, 19, 20

**Pages**

*United States* v. *Ladeaux*,
   61 F.4th 582 (8th Cir. 2023) ........................................................ 13-14

*United States* v. *Morgan*,
   346 U.S. 502 (1954)........................................................................ 4

*Watson* v. *United States*,
   37 F.4th 22 (1st Cir. 2022).............................................................. 11

**Statutes and Rules**

28 U.S.C. § 2255(a).................................................................4, 6, 8, 9, 10

Fed. R. Crim. P. 11(d)(2) .................................................................4, 6, 8

MARA MORILLO,

*Petitioner-Appellee,*

v.

UNITED STATES OF AMERICA,

*Respondent-Appellant.*

———————————

**REPLY BRIEF FOR THE UNITED STATES**

———————————

## INTRODUCTION

The district court committed three separate and independent errors in the course of granting Mara Morillo's petition for a writ of error coram nobis and vacating her guilty plea to, and conviction for, a charge of conspiracy to distribute drugs. *First*, the court erroneously concluded that Morillo adequately explained the eight-plus-year delay preceding her filing of her coram nobis petition. Gov't Op. Br. 27-38; see *Aceituno* v. *United States*, 132 F.4th 563, 570 (1st Cir. 2025) (holding that a coram nobis petitioner failed to adequately

explain the 10-year delay in challenging his guilty plea).  *Second*, the court erred as a matter of law by relying on Morillo's post-hoc assertions that she would not have pleaded guilty but for counsel's allegedly deficient pre-plea advice regarding the risk of deportation. Gov't Op. Br. 48-54; see *Lee* v. *United States*, 582 U.S. 357, 366-369 (2017) (holding that prejudice cannot be predicated on a defendant's post-hoc assertions and requires them to point to contemporaneous evidence).  And *third*, the court abused its discretion by failing to consider certain factors that inform the question of whether the equities warranted the issuance of this "hen's-teeth" rare remedy. Gov't Op. Br. 55-59; see *United States* v. *George*, 676 F.3d 249, 254 (1st Cir. 2012).

Morillo's answering brief does not engage with our arguments for reversal.  Nor does her brief make any meaningful effort to defend the district court's irreparably-flawed analyses on these three issues. Instead, Morillo's brief is largely devoted to setting forth her factual narrative of the case, ostensibly to substantiate the district court's finding that the pre-plea advice she received was deficient.  But her efforts are beside the point because, as we explained, even if counsel's

advice was deficient, the district court erred as a matter of law in concluding that Morillo suffered prejudice. And the few legal arguments embedded in Morillo's brief are contrary to, if not foreclosed by, binding Supreme Court and First Circuit precedent.

For these reasons, this Court, as it recently did in *Aceituno*, should "reverse the district court's grant of the writ of coram nobis, quash the writ, and dismiss the petition." 132 F.4th at 573.

## ARGUMENT

The analysis of whether a petitioner, like Morillo, is entitled to seek and obtain coram nobis relief proceeds in two separate phases. Gov't Op. Br. 5-7. The first phase proceeds to determine whether the petitioner is *eligible* for relief, while the second phase determines whether an otherwise-eligible petitioner is in fact *entitled* to such relief. *Id.*; see also *Aceituno*, 132 F.4th at 569. The district court here erred in its analysis of both phases. It erred in finding Morillo adequately explained the lengthy delay preceding her petition, and in finding prejudice from any alleged misadvice she received; as such, it erred in finding she was eligible for relief. And even were she eligible,

the district court erred by failing to consider certain relevant factors that inform her entitlement to this exceptional relief.

## I.  MORILLO DID NOT EXERCISE REASONABLE DILIGENCE IN SEEKING CORAM NOBIS RELIEF.

The threshold first-phase eligibility inquiry is governed by a three-part test.  See *George*, 676 F.3d at 254.  To satisfy the first component of this test, the petitioner must show that "sound reasons exist[ed]" for their "failure to seek appropriate earlier relief," *United States* v. *Morgan*, 346 U.S. 502, 512 (1954)—that is, for their failure to file a motion to withdraw their guilty plea under Fed. R. Crim. P. 11(d)(2) or a motion to vacate or set aside their conviction under 28 U.S.C. § 2255(a).  Gov't Op. Br. 27, 36; see *Aceituno*, 132 F.4th at 570; *George*, 676 F.3d at 254-255.  This inquiry "inherently includes consideration of whether the petitioner has exercised diligence." *Aceituno*, 132 F.4th at 570.

The district court erred in finding that Morillo adequately excused her eight-plus-year delay in seeking relief.  The record shows that Morillo could have sought relief from her plea and conviction, at the latest, when she was sentenced on May 11, 2017.  At her sentencing hearing, her lawyer straightforwardly told the court, as

part of his request for a below-guidelines sentence, that it should consider that Morillo was "going to be deported" after she completed her sentence, and that she was "not going to have any choice" but to return to Venezuela. App. 125; Gov't Op. Br. 14. Counsel's statements were made in open court and in Morillo's "presen[ce]" and, as the district court found, they "certainly informed [Morillo] * * * that her guilty plea would almost certainly lead to her deportation." Add. 18. If, as Morillo claims, her lawyer told her in 2016 before she pleaded guilty that deportation was merely a possible consequence of a conviction (and not that it was virtually certain), then it is reasonable to expect that Morillo would have said or done something when her lawyer dispelled any doubts about the matter by unequivocally stating in 2017 that she was going to be deported.

Yet Morillo said nothing and did nothing in response. She did not express any confusion to her lawyer or the court (or anyone else as far as the record shows) at the time of sentencing, or notify anyone that she was told something different about her deportability before pleading guilty. Gov't Op. Br. 28-30. And, most importantly, as a result of her silence and inaction, she did not ask to withdraw her plea

before sentence was imposed.  See Fed. R. Crim. P. 11(d)(2).  Nor did Morillo ever take any steps to collaterally challenge her plea and conviction under 28 U.S.C. § 2255(a) in the ensuing years while she was in prison (2017-2021) or on supervised release (2021-2024), and instead only first sought coram nobis relief in 2025.  Gov't Op. Br. 32-35.  Morillo's lack of diligence in protecting her rights renders her ineligible to seek coram nobis relief.  *Aceituno*, 132 F.4th at 570.

B.  Morillo raises two arguments in response, neither of which are persuasive.

*First*, Morillo claims that the government "mis-state[d] the law" by arguing that this coram-nobis prerequisite requires "a petitioner [to have] 'exercised reasonable diligence' to discover an error." Br. 15. Contrary to Morillo, we did not argue that the diligence requirement is tied to the petitioner's *discovery* of the underlying error; rather, we cited controlling precedent and asserted that this requirement focuses on whether Morillo exercised diligence in "seek[ing] *relief*" from the alleged error.  Gov't Op. Br. 27; see, *e.g.*, *Aceituno*, 132 F.4th at 569 (reiterating that a coram nobis petitioner must "adequately explain his delay *in seeking relief from his guilty plea and*

-6-

*conviction*") (emphasis added). Our lack-of-diligence argument correctly states the law.

*Second*, Morillo suggests she did exercise diligence. She argues that, after she pleaded guilty in 2016, she "had no reason to question [her] counsel's advice" until her current counsel told her in 2025 that she was going to be deported. Br. 8, 10, 32. And once current counsel told her she was virtually certain to be deported, she "knew the consequences triggered by her plea" and "acted immediately" by seeking coram nobis relief at that time. Br. 10, 32.

The record belies Morillo's revisionist effort to suggest she did not know the "consequences triggered by her plea" until 2025. As the district court expressly found (Add. 18), Morillo was on notice that she was going to be deported as far back as her May 2017, sentencing. Add. 18 ("[Morillo] was certainly informed—on two occasions—that her guilty plea would almost certainly lead to her deportation: in the sentencing memorandum counsel prepared on her behalf and at her sentencing hearing."). Morillo has never disputed that her lawyer made these statements, and she does not claim the district court's finding is erroneous. Nor has Morillo ever asserted she did not hear,

understand, or appreciate the import of these "unambiguous" statements (*id.*), which, as the district court again found, were made in her presence in open court at her sentencing. *Id.* ("[Morillo] was present at sentencing when counsel argued on her behalf.").

Accordingly, it was at that moment—at her May 11, 2017 sentencing hearing—that Morillo first learned "the consequences triggered by her plea," Br. 32, and it was at that time that she became responsible for diligently seeking relief from her plea and conviction. She Morillo did not do so, however: she registered no complaints, voiced no confusion, and made no attempt to withdraw her plea before sentence was imposed as permitted by Fed. R. Crim. P. 11(d)(2). Gov't Op. Br. 29-31; see, *e.g.*, *United States* v. *Bonilla*, 637 F.3d 980, 983-984 (9th Cir. 2011) (holding that the district court abused its discretion in denying a defendant's pre-sentencing motion to withdraw his plea based on his receipt of allegedly deficient pre-plea advice regarding the deportation consequences of his plea). Nor did Morillo make any effort during her years of incarceration to challenge her plea and conviction by raising an ineffective-assistance claim under Section 2255(a). Gov't Op. Br. 15, 32-33. And she likewise took no steps to

seek Section 2255 relief even after she was released from prison while she was serving her three-year term of supervised release. *Id.*

Morillo's suggestion that she did not know she was going to be deported until 2025 is further undermined by the undisputed fact that she was served with both a notice of intent to issue a final order of removal and a final order of removal in the fall of 2021, which referred to the fact that she had a prior conviction as the basis for her removal. App. 207-208; Gov't Op. Br. 15; Morillo Br. 9 ("At the very end of 2021, Ms. Morillo received a notice of deportation."). The existence of these documents conclusively refutes Morillo's claim that she only learned the consequences of her plea in 2025.

Morillo further suggests that she exercised at least some diligence by attempting to meet with lawyers after she received the immigration documents notifying her that she was going to be deported. Br. 17-18. But Morillo has not explained why she did not pursue Section 2255 relief while she was meeting with counsel: the two courses of actions were not mutually inconsistent, and therefore, her efforts to meet with counsel do not excuse her failure to seek Section 2255 relief. Gov't Op. Br. 30-36; cf. *Aceituno*, 132 F.4th at 570

(coram nobis petitioner who spent ten years seeking administrative relief from deportation before pursuing coram nobis relief never explained "why he did not during this [ten-year] period seek to attack his criminal conviction or seek to withdraw his plea").

Accordingly, the undisputed facts show that Morillo, far from acting diligently, idly stood by for more than eight years and bypassed opportunity after opportunity to challenge her plea and conviction. She has not plausibly explained the more than eight-year delay in seeking relief, and her years of inaction and indifference to her rights do not reflect reasonable diligence. See, *e.g.*, *Aceituno*, 132 F.4th at 570 (finding coram nobis petitioner who waited ten years to seek relief, and bypassed the chance to move to withdraw his plea or seek Section 2255 relief, had not exercised reasonable diligence).

For all of these reasons, Morillo has failed to rebut our arguments that she failed to present any sound reasons to excuse her failure to exercise reasonable diligence in seeking to challenge her plea and conviction. Her failure to do so itself provides a sufficient basis to reverse the district court's order.

II. MORILLO HAS NOT SHOWN THAT ANY DEFICIENT PRE-PLEA ADVICE SHE MAY HAVE RECEIVED WAS PREJUDICIAL.

The district court also erred in concluding that Morillo showed prejudice—that she would not have pleaded guilty but for the allegedly erroneous pre-plea advice. Gov't Op. Br. 38-47.[1]

---

[1] Before addressing the lack of prejudice, one factual matter on the performance question merits clarification. In granting relief, the district court specifically found that counsel performed deficiently by incorrectly advising Morillo that deportation was possible, and by not telling her it was virtually certain. Add. 3, 4, 6, 14, 29. On appeal, Morillo (citing only her affidavit, and not the court's findings) continues to assert that counsel was deficient in allegedly telling her he entered into a side deal with the government that would allow her to work out her immigration status after she served her sentence. Br. 7, 8, 20-31. The district court did not credit Morillo's side-deal assertion, however—perhaps because her counsel testified that he did not enter into any such deal, App. 166-1670—but instead rested its deficiency finding on counsel's failure to tell Morillo that deportation was virtually certain. Add. 3, 4, 6, 14, 29. And, while it is at least an open question whether pre-plea advice that deportation is a possibility is sufficient to satisfy *Padilla* v. *Kentucky*, 559 U.S. 356 (2010), see Gov't Op. Br. 39-47, there is no need to resolve that question here because the lack of prejudice is readily apparent. See, *e.g.*, *Smith* v. *Robbins*, 528 U.S. 259, 286 n.14 (2000) ("The performance component need not be addressed first. 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'") (quoting *Strickland* v. *Washington*, 466 U.S. 667, 697 (1984)); *Watson* v. *United States*, 37 F.4th 22, 27 (1st Cir. 2022) ("Courts do not need to assess the performance prong if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice.").

A. As we explained, the Supreme Court's decision in *Lee* compels the conclusion that Morillo suffered no prejudice. Morillo had no viable defense to the drug-conspiracy charge to present at trial, Gov't Op. Br. 48-52, and she presented no contemporaneous evidence to substantiate her claim that, but for the alleged misadvice she received, she would have foregone acceptance of the more favorable disposition she received by pleading guilty and stood trial, *id.* at 52-54.

B. Morillo recognizes that her ineffective-assistance claim requires her to show both deficient performance and prejudice, Br. 20, but her argument (save for one paragraph) is devoted to the deficient-performance prong, Br. 20-31, even though, as we have explained (Gov't Op. Br. 40-47; supra p. 11 n.1), the deficiency question need not be addressed. And the one paragraph in her brief that alludes to prejudice fails to address our no-prejudice arguments or the import of *Lee*.

1. Morillo's brief notes in passing the district court's mention of the fact that she might have opted to stand trial and forego a plea if she had been properly advised because she had "plausible defense[s]"

-12-

to raise at trial based on "coercion, diminished capacity, and/or battered wife syndrome." Add. 35. The court's general surmise in this regard is flawed because the court did not analyze, much less find, that any of these affirmative defenses would in fact have been viable defenses to present at trial. Gov't Op. Br. 50-53; cf. *United States* v. *Figueroa-Lugo*, 793 F.3d 179, 191 (1st Cir. 2015) ("[I]f the evidence in the record does not support a requested affirmative defense, a district court is not required to include it [in the jury instructions]."). And, as we further explained, these defenses would not have been viable. Gov't Op. Br. 50-53.

Morillo does not take issue with our arguments that these defenses were not viable and she does not defend the court's contrary speculation; instead, she merely (and irrelevantly) says that we "woefully mischaracterized" her defense as a "duress argument." Br. 39. This critique is baseless. Gov't Op. Br. 50-51 (explaining why any possible "coercion or duress-based defense" would fail); see also, *e.g.*, *United States* v. *Ladeaux*, 61 F.4th 582, 587 (8th Cir. 2023) (discussing the threshold showing that a defendant must make to warrant an

-13-

instruction on a "duress/coercion affirmative defense").  Accordingly, the conclusion that Morillo lacked a viable defense is undisputed.

2.  The absence of a viable defense, moreover, significantly undercuts Morillo's ability to meet her burden of showing that any alleged misadvice she received was prejudicial.  As the Supreme Court emphasized in *Lee*, "[a] defendant without any viable defense will be highly likely to lose at trial[,]" and therefore, "a defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial."  *Lee*, 582 U.S. at 367; Gov't Op. Br. 48-49.

Contrary to Morillo, this is not one of those "rare[]" cases (*Lee*, 582 U.S. at 367) where prejudice exists notwithstanding the lack of a viable defense.  Morillo's prejudice argument rests entirely on the attestations in her affidavit that she would not have pleaded guilty but for the claimed misadvice.  Br. 14 ("Ms. Morillo would not have pled guilty if she knew that it would lead to her deportation. Pa Mara Aff. at ¶ 18. Staying in the United States was her primary concern. Pa Mara Aff. at ¶ 16."); *id.* at 29 (repeating these assertions and citing to her 2025 affidavit).  And, citing *United States* v. *Frederick*, 526 F.

App'x 91, 93 (2d Cir. 2013) (unpub.), she argues that her affidavit is sufficient, in and of itself, to show prejudice, Br. 12-13, and that the district court thus properly credited her affidavit in finding prejudice. Add. 35 (court's order citing paragraphs 16 and 18 of Morillo's affidavit as the sole support for its finding of prejudice).

Insofar as Morillo is citing *Frederick* for the general proposition that courts may consider affidavits in deciding whether prejudice exists, it breaks no new ground. But if Morillo is citing *Frederick* for the proposition that courts may consider a defendant's after-the-fact assertions of prejudice in an affidavit in finding prejudice, then *Frederick* (beyond being an unpublished and non-precedential out-of-circuit decision) has been superseded by *Lee.* 582 U.S. at 369 ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."); see also Gov't Op. Br. 48-51.

Indeed, this case illustrates the salutary reasons why *Lee* disallowed reliance on post-hoc assertions and insisted on

contemporaneous evidence. Morillo's 2025 affidavit asserts that her "primary concern" has always been to remain in this country, Br. 29, but she does not make any effort to square her current claim with the contemporaneous evidence that undercuts it. Specifically, Morillo has not explained why, if her primary concern was to avoid deportation, she knowingly remained in this country illegally since her travel visa expired in 1997 and never took any steps to renew her visa or seek legal residency. S. App. 12 (¶ 46); Gov't Op. Br. 53-54. Nor has Morillo explained why, if her primary concern was to avoid deportation, she made no effort for eight-plus years to challenge her guilty plea and conviction—even though her counsel unambiguously stated in 2017 in open court that she was "going to be deported," App. 125, and even after she received a final order of removal in 2021, App. 208. Gov't Op. Br. 15-16, 35. This contemporaneous record evidence contradicts Morillo's current assertion that she would not have pleaded guilty if she had been properly advised. See *Nissenbaum* v. *Jennings*, 148 F.4th 548, 556 (7th Cir. 2025) (holding that the "contemporaneous evidence as to [the defendant's] preferences undermine[d]" his

current assertions about how he would have pleaded but for alleged misadvice).

## III. MORILLO DOES NOT DEFEND THE DISTRICT COURT'S FAULTY ANALYSIS OF THE EQUITIES.

Finally, even if Morillo were eligible for coram nobis relief, the district court's equitable analysis of her entitlement to this extraordinary remedy was tainted by legal error, and therefore, the court necessarily abused its discretion in granting relief. Gov't Op. Br. 55-59; see, *e.g.*, *Saka* v. *Holder*, 741 F.3d 244, 250 (1st Cir. 2013) ("Any error of law is, inherently, an abuse of discretion.").

A. The abuse-of-discretion standard is deferential, yet this Court in *Aceituno* held that the district court had abused its discretion in granting coram nobis relief without weighing all of the salient equitable factors. 132 F.4th at 572 ("[T]he district court abused its discretion in granting Aceituno's petition because the equities of this case do not justify issuance of the writ."). And, as we explained (Gov't Op. Br. 55-59), the three considerations that the *Aceituno* district court failed to consider—namely, that the defendant admitted his guilt in open court under oath, that it was inequitable to require the government to retry his case after the passage of so many years, and

-17-

that the granting of relief undermined the societal interest in finality, 132 F.4th at 572-573—are the same considerations that the district court here failed to consider.  Gov't Op. Br. 55-59.  The district court thus abused its discretion.[2/]

B.  Morillo, once again, has not addressed our arguments or attempted to defend the district court's faulty analysis.  While her brief includes an argument heading titled "the district court did not abuse its discretion in granting coram nobis relief," Br. 35 (capitalization altered), the accompanying prose does not address that issue.  Instead, it (1) reiterates that counsel's pre-plea advice was deficient, Br. 37-40, and (2) asserts that the district court properly granted relief after "fully address[ing] the tripartite test."  Br. 38-40. These arguments are misguided.

---

[2/]  Morillo contends that our reliance on *Aceituno* is misplaced because that case is factually distinguishable.  Br. 18, 35, 37.  That is true but irrelevant.  *Aceituno*, which reversed a grant of coram nobis relief, is relevant not because it is factually applicable, but because it reaffirms certain basic legal principles regarding coram nobis relief that are directly relevant here, one of which is that a district court abuses its discretion by conducting a truncated and incomplete assessment of the equities in deciding whether relief should issue. *Aceituno*, 132 F.4th at 569-571.  This principle is fully applicable here. Gov't Op. Br. 55-59.

1.  Morillo's argument regarding the pre-plea advice she received bear on the threshold eligibility question of whether she has shown that a fundamental error occurred—it concerns the performance prong of her ineffective-assistance claim. The question here is different, however: it is whether, assuming fundamental error occurred, "justice demands the extraordinary balm of coram nobis relief." *George*, 676 F.3d at 255. Morillo's merits arguments about deficient performance do not implicate this equitable question.

2.  Morillo's claim that the district court "fully addressed the tripartite test established to determine the propriety of coram nobis relief," Br. 38-40, misapprehends the function and purpose of the tripartite test, and the analysis of coram nobis petitions generally. In *George*, this Court reviewed prior precedent addressing coram nobis petitions and structured the considerations those cases identified into a cohesive and workable three-part framework that guides the threshold question of whether a petitioner is *eligible* to seek coram nobis relief. *Id*. at 253-255. As the Court further explained, satisfaction of this tripartite test "is a necessary, but not a sufficient, condition for the issuance of the writ," *id.* at 255, because coram nobis

is a flexible remedy whose issuance is entrusted to the district court's exercise of its discretion, to be informed by the equities of the case. *Id.*; see also *Aceituno*, 132 F.4th at 569 ("Even when these three requirements are satisfied, the court may exercise its discretion to deny the petition if the petitioner fails to show that justice demands the extraordinary balm of coram nobis relief.") (internal quotations omitted).

So understood, Morillo's argument—that the tripartite test governs "the propriety of coram nobis *relief*," Br. 38 (emphasis added)—is mistaken: as explained, this test relates to her eligibility to pursue such relief, not her entitlement to it. See, *e.g.*, *Murray* v. *United States*, 704 F.3d 23, 29-30 (1st Cir. 2013) ("This circuit has adopted a three-part test to determine whether a petitioner is eligible for coram nobis relief, along with a fourth part that addresses whether relief should actually be granted."); *George*, 676 F.3d at 255 ("[I]t is not enough for a coram nobis petitioner to show that he can satisfy the elements of the tripartite test: he must also show that justice demands the extraordinary balm of coram nobis relief.").

Morillo has not addressed our arguments that the district court failed to weigh the three aforementioned considerations that *Aceituno* identified as relevant to the equitable analysis of whether coram nobis relief should issue, Gov't Op. Br. 55-59, and therefore, our arguments on this point are unrebutted and independently justify reversal here, no less than in *Aceituno*. 132 F.4th at 572-573; see also *id.* at 569 ("Even if Aceituno had satisfied all three preconditions, he also failed to show that justice required coram nobis relief be granted in this case.").

# CONCLUSION

The district court's order granting Morillo's petition for a writ of error coram nobis should be reversed.

Respectfully submitted,

ERIN CREEGAN
  *United States Attorney*
  *District of New Hampshire*

A. TYSEN DUVA
  *Assistant Attorney General*
  *Criminal Division*

MATTHEW VICINANZO
  *Assistant U.S. Attorney*
  *District of New Hampshire*

JOSH A. GOLDFOOT
  *Deputy Assistant Attorney General*
  *Criminal Division*

*/s Michael A. Rotker*

By: _____

MICHAEL A. ROTKER
  *Attorney*
  *Appellate Section*
  *United States Department of Justice*
  *950 Pennsylvania Avenue, NW*
  *Suite 1264*
  *Washington, DC 20530*
  *(202) 514-3308*
  *michael.rotker@usdoj.gov*

**CERTIFICATE OF COMPLIANCE**

1.  This brief complies with the applicable rules of appellate procedure in that it contains 4,230 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Century ExpdBT MT 14-point type.

s/ *Michael A. Rotker*
Michael A. Rotker
U.S. Department of Justice

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on May 21, 2026, I caused a true and correct copy of the foregoing brief (corrected) to be served through the Court's CM/ECF system upon the filing user:

Stephanie McClure, Esq.
*Counsel for Appellee*

s/ *Michael A. Rotker*
Michael A. Rotker
U.S. Department of Justice
